# EXHIBIT 3

## Ground Lease and Option to Purchase

ROCKY TOP

Ford | LINCOLN

www.rockytopfordlincoln.com

<u>Via Email ONLY</u>
Ms. Stacy Champagne
Managing-Member, KARS, LLC
stacychampagnetn@gmail.com

RE: LETTER OF INTENT — COMMERCIAL LEASE OF 750 DOLLY PARTON PARKWAY, SEVIERVILLE, TENNESSEE 37862

Dear Ms. Champagne,

It is with great pleasure that we at Rocky Top Ford Lincoln, LLC, a Tennessee limited liability company ("Rocky Top Ford Lincoln," "We," "Our," or "Us") extend this Letter of Intent ("Letter") to KARS, LLC d/b/a The Bottle Shop, a Tennessee limited liability company ("KARS," "You," or "Your")) a for your review and execution regarding a commercial lease for the real property commonly known as 750 Dolly Parton Parkway, Sevierville, Tennessee 37862 ("Property"). The full terms of any lease agreement will be set forth in a separate document. In exchange of mutual consideration, the sufficiency of which is hereby acknowledged, the following provisions of this letter shall be binding upon the parties to the extent allowed under applicable law:

1. <u>Purchase Option</u>. Under Section 22 of Our Ground Lease Agreement with Whaley Property, Inc. ("WPI"), dated and effective April 1, 2019 ("Lease") We have an option to purchase the Property ("Purchase Option"). We represent to You that, in the event You are approved by the City of Sevierville and the Tennessee Alcoholic Beverage Commission for a retail package store license, we will: (1) exercise this Purchase Option, and (2) enter into a commercial lease agreement with You for your operation of a retail package store at the Property, which will be negotiated in good-faith. We represent to You that, as of the date of this Letter and through the period of time needed for our effectuation of the Purchase Option, that we have full right and authority to exercise the same.

2. <u>Lease Exclusivity</u>. We understand that Your application for a retail package store license is contingent upon securing property at which You will operate. Accordingly, We agree that We will not enter into any lease agreement or letter of intent with any other potential retail package store license at the Property while your application is pending. Similarly, You agree that You will not enter into any lease agreement or letter of intent with any other entity or individual regarding a retail package store license application in Sevierville, Tennessee during the pendency of the application process.

3. Authority. We represent to You, and You represent to Us, that the signatories below have full authority to execute and bind our respective entities to the terms of this Letter.

If Your find the terms and conditions of this Letter to be acceptable and an accurate reflection regarding both Our and Your intent as to the Property, please indicate by signing in the space provided below and returning a copy to us via hardcopy or email.

Sincerely,

ROCKY TOP FORD LINCOLN, LLC
a Tennessee limited liability company

By: H. Richard Llewellyn
Its: President

AGREED TO BY:

KARS, LLC d/b/a THE BOTTLE SHOP
a Tennessee limited liability company

By: Stacy Champagne
Its: Managing-Member

## GROUND LEASE AGREEMENT

This Ground Lease Agreement (this "**Lease**") is made and entered into as of April 1, 2019 (the "**Effective Date**") by and among **Whaley Properties, Inc.**, a Tennessee corporation, (the "**Lessor**"); **Rocky Top Ford Lincoln, LLC**, a Tennessee limited liability company, (the "**Lessee**"); and **H. Richard Llewellyn, Jr.** (the "**Guarantor**").

### BACKGROUND STATEMENT

A. The Lessor owns certain real property located in the Fifth Civil District of Sevier County, Tennessee, having an address of 750 Dolly Parton Parkway, Sevierville, TN 37862, being designated by the Sevier County Property Assessor as Tax Parcel 029.00 (Ctrl Map 049L, Group A) and Tax Parcel 011.00 (Ctrl Map 049L, Group A), being more particularly bounded and described on **Exhibit A** attached hereto and incorporated herein by this reference (the "**Leased Premises**").

B. The Lessor desires to lease the Leased Premises to the Lessee, and the Lessee desires to lease the same from the Lessor.

NOW, THEREFORE, in consideration of One Dollar ($1.00) and other good and valuable consideration and the further consideration of the payment of the rents as hereinafter set forth and the performance of the covenants and conditions to be performed by the respective parties hereto, the Lessor does hereby let and lease to the Lessee the Leased Premises upon the terms and conditions as set forth in this Lease:

### AGREEMENT

1. **Initial Term of Lease.** This Lease shall be for an initial term of five years commencing on the Effective Date and ending on the day before the fifth anniversary of the Effective Date, unless sooner terminated or extended as provided in this Lease (the "**Initial Term**").

2. **Option Terms.** Provided that (i) this Lease is still in effect and (ii) no state of facts then exist which constitute an Event of Default, or which, with the passing of time or the giving of notice, would constitute an Event of Default, the Lessee shall have an option to extend this Lease for two additional terms of five years each (each an "**Option Term**") beginning on the expiration of the Initial Term or the prior Option Term, as may be applicable, upon the terms and conditions herein contained. The Lessee may only exercise an Option Term by giving the Lessor written notice of such extension on or prior to a date which is not less than 180 days before the expiration of the expiring term. The

Initial Term and the exercised Option Term, or Option Terms, if any, are referred to collectively hereinafter as the "**Term**."

3. **One Hundred Percent Net Lease.** It is hereby declared to be the intention of the Lessor and the Lessee that the rent payable to the Lessor shall be 100% net to the Lessor and that all costs, expenses, and obligations of every kind relating to the Leased Premises which may arise or become due during the Term of this Lease shall be paid by the Lessee, and that the Lessor shall be indemnified by the Lessee against all such costs, expenses, and obligations. Notwithstanding anything to contrary contained herein, nothing in this Lease is intended to limit the foregoing general understanding to the effect that this is intended to be a 100% net lease.

4. **Rent.** The Lessee shall pay to the Lessor rental payments as follows: During the Initial Term, the Lessee shall pay, and the Lessor shall accept as annual rental for the Leased Premises, the sum of $158,175.00 (7.5% of the current appraised value), payable, in advance, in equal monthly installments of $13,181.25 each, with the first monthly installment due and payable on the Effective Date and subsequent monthly installments due and payable on the same date each following month until the expiration of the Initial Term. In the event that the Lessee exercises the first Option Term, the Lessee shall pay, and the Lessor shall accept as annual rental for the Leased Premises, the sum of $179,265.00 (8.5% of the current appraised value), payable, in advance, in equal monthly installments of $14,938.75 each, with the first monthly installment due and payable on the fifth anniversary of the Effective Date and subsequent monthly installments due and payable on the same date each following month until the expiration of the first Option Term. In the event that the Lessee exercises the second Option Term, the Lessee shall pay, and the Lessor shall accept as annual rental for the Leased Premises, the sum of $200,355.00 (9.5% of the current appraised value), payable, in advance, in equal monthly installments of $16,696.25 each, with the first monthly installment due and payable on the tenth anniversary of the Effective Date and subsequent monthly installments due and payable on the same date each following month until the expiration of the second Option Term. Monthly rental installments, and additional rent due under this Lease, not paid within 15 days following the due date shall be assessed a one-time late charge of 5% for the respective delinquent installment/amount and shall accrue interest at the rate of 15% per annum from the date due until paid; provided that in no event shall the Lessee be obligated to pay any portion of said interest that is in excess of applicable usury law. In the event this Lease is terminated pursuant to either party's termination rights set forth herein prior to a full month's end, any such Lease payment previously paid shall be prorated for the portion of the month prior to termination, and the Lessor shall return the balance of the rental payment to the Lessee.

5. **Use.** The Leased Premises shall be used by the Lessee as an automotive retail outlet, which shall include, but is not limited to the following uses: parking, car display, and business offices, and for no other use unrelated to an automotive retail outlet without the

Lessor's prior written consent, which shall not be unreasonably withheld, conditioned or delayed.

6. **Improvements to the Leased Premises.**

6.1 The Lessor hereby represents to the Lessee, to the extent of the Lessor's actual knowledge, that:

(A) The roof on the improvements located on the Leased Premises is in good condition with no known holes or leaks;

(B) All exterior lights located on the Leased Premises are in good condition and functioning properly;

(C) The HVAC and air compressor systems located on the Leased Premises have been regularly serviced, are functioning properly and are in good working order; and

(D) All equipment located on the Leased Premises, but not purchased by Lessee, is in good condition and proper working order for the use of each piece of equipment.

If any of the aforementioned representations proves to be false as of the Effective Date, the Lessor shall, at Lessor's sole cost and expense, repair or replace those items that are malfunctioning or broken within thirty (30) days of receipt of notice from the Lessee of the same.

6.2 **SUBJECT TO SECTION 6.1 ABOVE, THE LEASED PREMISES ARE LEASED TO THE LESSEE, AND THE LESSEE ACCEPTS THE SAME, IN THEIR "AS IS" CONDITION WITHOUT REPRESENTATION OR WARRANTY BY THE LESSOR AS TO THE CONDITION OF THE LEASED PREMISES.** The Lessor shall have no obligation to build or make any improvements on the Leased Premises whatsoever. It is specifically agreed and understood that the Lessee is under no obligation to further improve the Leased Premises; however, all improvements made by the Lessee, to the Leased Premises shall be at the Lessee's sole expense. Any permanent improvements built by the Lessee, or otherwise, on the Leased Premises shall, upon the expiration or lawful termination of the Term, become the Lessor's property.

6.3 The Lessee shall have the right to make minor improvements to the Leased Premises without the consent of the Lessor, such minor improvements may include, but are not limited to, temporary modifications or additions to the design of improvements, improvements to sidewalks, driveways, and landscaping presently located on the Leased Premises. The Lessor shall have the right to

approve or reject the design of any new construction on the Leased Premises or any permanent modifications or additions to the design of improvements presently located on the Leased Premises. The Lessee agrees that for any improvements requiring the Lessor's consent, no work shall commence until the Lessor has approved the designs, plans, and specifications for such construction, modification, or addition in writing, such approval shall not be unreasonably withheld, conditioned or delayed. The Lessee shall not demolish or remove any improvements placed on the Leased Premises unless the Lessee has obtained the Lessor's prior written approval for such demolition or removal, such approval shall not be unreasonably withheld, conditioned or delayed. In connection with all required approvals, the Lessee shall submit to the Lessor a written request for approval, together with (i) the plans and specifications for any improvement, remodeling, modification, or addition and (ii) evidence of the Lessee's ability to pay the cost of the same. If within 30 days after the Lessee submits such request and the required supporting documentation to the Lessor for approval and the Lessor has not given the Lessee notice of the Lessor's rejection of such request stating the reason for such rejection, such request shall be considered approved by the Lessor.

6.4 The Lessee shall be responsible for, and agrees to obtain, all building permits, other permits, utility services, and certificates of occupancy required in connection with the use and occupancy of any buildings or other improvements to be constructed on the Leased Premises.

6.5 The Lessor does hereby give notice that the Lessee shall never, under any circumstances, have the power to subject the present or residual estate of the Lessor in the Leased Premises or any improvements thereon to any mechanics' or materialmen's lien or liens of any kind. All persons who may hereafter during the Term of this Lease furnish work, labor, services, or materials to the Leased Premises upon the request or order of the Lessee or any persons claiming under, by, or through the Lessee, must look wholly to the interest of the Lessee, and not to that of the Lessor.

6.6 The Lessee shall indemnify and save harmless the Lessor against any and all claims, demands or obligations which may be had against the Lessor by reason of any construction on, or alteration of, the Leased Premises, and the Lessee shall cause to be written at its sole expense a general liability policy for not less than $1,000,000.00 which shall name the Lessee and the Lessor as an additional insureds as their respective interests may appear. A duplicate copy or a certificate of such policy shall be delivered by the Lessee to the Lessor promptly upon the writing of such policy and upon each renewal date, together with adequate evidence of the fact that the premiums therefore are paid.

6.7 The Lessee shall not permit any mechanic's, materialmen's, or other lien based on any contract with the Lessee to stand unreleased for more than 90 days in connection with any such construction, alterations, demolition, or removal; provided, that the Lessee shall have the right to permit any such lien to remain unreleased in order to contest the validity of such lien or claim if the Lessee shall first have posted a bond (or provided other security satisfactory to the Lessor) sufficient to insure that upon final determination of the validity of such lien or claim, the Lessee shall immediately pay any judgment rendered against it with all proper costs and charges, and shall have such lien released without cost to the Lessor. In the event it becomes necessary for the Lessor to enforce this provision, then the Lessee shall pay all costs incident to same, including the Lessor's reasonable attorneys' fees, as additional rent.

7. **Taxes.** The Lessee shall be responsible for and shall timely pay all property taxes imposed by the City, County, and any other taxes that might be imposed in the future for the Leased Premises. If at any time in the future the State of Tennessee or any other governmental entity shall impose a tax on rents or assess against the Lessor tax on rents or against the rents received as a substitute, in whole or in part, for taxes assessed by such State or political subdivision on land or buildings, such tax shall be deemed to be included within the amount which the Lessee is required to pay under this paragraph. Likewise, if a sale or gross receipts tax is levied against the rents received by the Lessor, such tax shall be deemed to be included within the amount the Lessee is required to pay under this paragraph. The Lessee shall provide the Lessor with a copy of a receipt or shall otherwise timely present proof of payment of such taxes to the Lessor. The Lessor shall have the right (but not the obligation), if the Lessee fails to do so timely, to pay taxes on the Leased Premises and charge the Lessee the cost thereof as additional rent. Despite the foregoing, the 2019 property taxes shall be prorated between the Lessor and the Lessee as of the Effective Date when the bill for said taxes is received.

8. **Utilities.** The Lessee shall have all utilities used on the Leased Premises listed in its own name, and the Lessee shall pay for the same as they become due and payable. The Lessor shall, be entitled to recover the present deposits held by utility companies, the Lessee being required to pay its own such deposits.

9. **Insurance.** Throughout the Term of this Lease, the Lessee shall pay all premiums for insurance coverage on the improvements now or hereafter erected on the Leased Premises covering such hazards and in such amounts as the Lessor may reasonably require; in addition, the Lessee shall pay all premiums on all public liability insurance as the Lessor may reasonably require. The fire and casualty insurance policy or policies shall give coverage for the full replacement value of the buildings. It is now contemplated that comprehensive general public liability coverage will initially be at least $1,000,000.00 per occurrence. All insurance required to be maintained by the Lessee shall be effected by valid and enforceable policies issued by insurers of recognized responsibility satisfactory to the Lessor. Promptly upon the execution of this Lease, and thereafter not

less than 30 days prior to the expiration dates of the expiring policies theretofore furnished pursuant to this paragraph, true copies of the policies for such insurance shall be delivered by the Lessee to the Lessor. All premiums shall be paid promptly when due. All such policies shall name the Lessor and the Lessee as the insureds, as their respective interests may appear, and shall, to the extent obtainable, contain an agreement by the insurers that they may not be cancelled without at least 10 days' prior written notice to the Lessor. The Lessor shall have the right (but not the obligation), if the Lessee fails to do so, to obtain such policies of insurance and charge the Lessee the cost thereof as additional rent.

10. **Indemnification by Lessee.** The Lessee shall indemnify the Lessor against all liabilities, expenses, and losses incurred by the Lessor as a result of (a) failure by the Lessee to perform any covenant required to be performed by the Lessee under this Lease; (b) any accident, injury, or damage which may happen, due to the negligence of the Lessee, in or about the Leased Premises or appurtenances or on the adjoining streets, sidewalks, or curbs, or resulting from the condition, maintenance, or operation of the Leased Premises or of the adjoining streets, sidewalks, or curbs, and against which accident, injury, or damage the Lessee is entitled to insure under the laws of the State of Tennessee; and (c) failure of the Lessee to comply with any requirements of any governmental authority.

11. **Casualty Losses.** In the event of damage to, or destruction of, any of the Leased Premises by fire or other casualty-type loss of a type reasonably coverable by insurance, the Lessee shall be required promptly to repair, restore, or replace the damaged improvements (or property), using the insurance proceeds received by the Lessor and the Lessee for the same. All such proceeds so received by the Lessor and the Lessee shall be held by them in trust for the purpose of said repair, restoration, or replacement and applied by them for said purposes as reasonably requited. There shall be no abatement or reduction of the rent due on account of any such loss.

12. **Repairs and Maintenance.** Throughout the Term of this Lease, the Lessee shall, at its own expense, make all necessary repairs and replacements to the improvements presently existing on the Leased Premises and to all improvements made thereon by the Lessee. Such repairs and replacements, interior and exterior, ordinary as well as extraordinary, and structural as well as nonstructural, shall be made promptly, as and when necessary. All repairs and replacements shall be in quality and class at least equal to the original work. In the event the Lessee fails to make such repairs or replacements, the Lessor may, but shall not be required to, make such repairs and replacements for the Lessee's account, and the expense thereof shall constitute and be collectible as additional rent. Similarly to the provisions in Section 6 of this Lease, the Lessee shall not permit any mechanic's, materialman's, supplier's, or other lien to encumber the interest of the Lessor, or the Lessee in the Leased Premises for costs of repairs or otherwise. In the event such lien is filed, the Lessee shall reimburse the Lessor for its reasonable attorneys' fees and other costs, and the Lessee shall indemnify the Lessor for any loss due to the lien or filing hereof.

13. **Condemnation.**

13.1 **Complete Taking.** If, during the Term of this Lease, the whole or any material portion of the Leased Premises shall be taken as a result of the exercise of the power of eminent domain, this Lease shall terminate as of the date of vesting of title of the Leased Premises pursuant to such proceeding. For the purposes of this paragraph, "any material portion of the Leased Premises" shall be deemed to mean such an area, whether it be improved with building or be utilized for a parking area or for other use, that the Lessee cannot reasonably operate in the remainder of the Leased Premises, in an economically viable or safe manner, the business being conducted on the Leased Premises at the time of such taking.

13.2 **Partial Taking.** If during the Term of this Lease, less than any material portion of the Leased Premises shall be taken in any eminent domain proceeding, this Lease shall not terminate. The annual rent thereafter due and payable by the Lessee shall be equitably reduced by the Lessor in proportion to the portion of the Leased Premises which has been subject to the partial taking (provided, however, no rent shall be reduced in the event none of the building improvements or parking space of the Leased Premises are affected by such partial taking).

13.3 **Award.** Any award granted for either partial or total taking regarding the Leased Premises shall be the property of the Lessor and the Lessee with Lessor being entitled to that portion of the award attributable to taking of or damage to Lessor's fee simple title to the Leased Premises. The Lessee shall be entitled to the Lessee's cost of relocation. As to any leasehold improvements upon the Leased Premises, the Lessee shall be entitled to only that portion of an award attributable to the leasehold improvements made by the Lessee, if any, to the extent of its remaining interest therein at the time of taking.

14. **Assignment or Subletting.** The Lessee shall not assign this Lease or sublease the whole, or any part of, the Leased Premises without the prior written consent of the Lessor, such consent shall not be unreasonably withheld, conditioned, or delayed. Any purported assignment of rights or delegation of performance in violation of this paragraph shall be void. The term "assign" shall include the transfer of any ownership interest in the Lessee, or any constituent entity of the Lessee, to parties other than the current owners of the Lessee, excluding, however, transfers by devise or intestate succession. In the event of any permitted assignment of this Lease, the Lessee shall be released from the performance of the terms and conditions hereof. The Lessor shall have the right to transfer and assign, in whole or in part, all and every feature of the Lessor's rights and obligations under this Lease or the Leased Premises. In such event, the Lessor shall be released from any further obligation under this Lease, and the Lessee shall attorn to and look solely to the Sublessor's successor for the performance of such obligation.

15. **No Partnership.** This Lease shall not be construed to create a partnership or joint venture between the Lessor and the Lessee.

16. **Events of Default Defined.** Each of the following shall be deemed an "**Event of Default**" by the Lessee and a breach of this Lease:

16.1 Failing to pay the rent (whether base, adjusted base, or additional), the taxes, or the premiums on the insurance required, all as provided for in this Lease, or any part thereof, within 15 days after written notice, addressed and properly mailed to the Lessee;

16.2 Failure to do, observe, keep, and perform any of the other terms, covenants, requirements, and provisions of this Lease which are the duty of the Lessee to do, observe, keep, or perform for a period of 30 days after similar written notice to the Lessee; provided, however, if the Lessee should be diligently endeavoring to correct any such default (non-monetary in nature), the 30 day period shall be extended by whatever reasonable time is required to cure such default.

16.3 The abandonment of the Leased Premises by the Lessee; the adjudication of the Lessee as bankrupt; the making by the Lessee of a general assignment for the benefit of creditors; the taking by the Lessee of the benefit of any insolvency act or law; the appointment of a permanent receiver or trustee in bankruptcy for the Lessee's property; the appointment of a temporary receiver of the Lessee's property if the appointment be not vacated or set aside within 30 days from the time of such appointment.

17. **Lessor's Remedy in Event of Default.** Upon the occurrence of an Event of Default, the Lessor may, at its option, and without any additional notice of any kind, terminate this Lease and go back into possession of the Leased Premises at any time thereafter. In such event, the Term of this Lease shall wholly cease and expire in the same manner and with the same effect as if the date of said termination decided upon by the Lessor had been the date originally fixed in this Lease for the termination of the Term, and the Lessor shall thereupon be entitled to the immediate possession of the Leased Premises and may institute summary proceedings for the same against the Lessee or may take any other suitable proceedings or actions to obtain possession of the Leased Premises. The Lessee is to remain liable for any and all damages resulting to the Lessor from such default, including, but not limited to, any difference in rent which the Lessor may receive for the rental of the Leased Premises prior to the expiration of the Term of this Lease. It is further agreed that the Lessor may, upon default and expiration of any cure period as herein set forth, without otherwise being obligated so to do and without terminating this Lease, retake the possession of the Leased Premises and rent the same for such rent and upon such conditions as the Lessor may deem best, giving credit for the amount of the rent so received, less all expenses of such repairs, and the Lessee shall remain liable for the difference, if any, between the amount so received by the Lessor for such reletting and

the amounts of rentals herein reserved, until the expiration date of the Term. In the case of an Event of Default attributable to the Lessee's abandonment of the Leased Premises, Lessor may immediately thereafter take possession of the Leased Premises.

18. **Attorney Fees; Costs; Etc.** In the event the Lessor is reasonably required to employ the services of an attorney, or attorneys, to enforce any provision of this Lease because of the Lessee's non-compliance, the Lessee shall reimburse the Lessor for its reasonable attorneys' fees and other reasonable costs incurred due to the Lessee's non-compliance.

19. **Covenants and Warranties**. Lessor covenants and warrants that its has the right to Lease the Leased Premises, that the Lessee will enjoy quiet possession of said Leased Premises during the Term of this Lease, and that it will defend the same against the claims of all persons.

20. **Surrender by Lessee of Leased Premises**. The Lessee shall, on the expiration or the sooner termination of the Term, surrender to the Lessor the Leased Premises, including all buildings, replacements, changes, additions, and improvements constructed or placed by the Lessee thereon, with all equipment in or appurtenant thereto (not including movable trade fixtures) installed by the Lessee, broom-clean, free of subtenancies, and in good condition and repair, reasonable wear and tear excepted. Any trade fixtures or personal property belonging to the Lessee or to any permitted sub-sublessee, if not removed at such termination and if the Lessor shall so elect, shall be deemed abandoned and shall become the property of the Lessor without any payment or offset therefor. If the Lessor shall not so elect, the Lessor may, at its election require the Lessee to remove any remaining trade fixtures, personal property or improvements, both above and below ground, from the Leased Premises and remove the same at their sole risk and expense; provided, however, in the event the Lessee fails and refuses to remove such items as required by the Lessor, the Lessor may remove such fixtures, property or improvements from the Leased Premises and reasonably dispose of them at the Lessee's risk and expense.

21. **No Waiver of Remedy by Lessor**. The failure of the Lessor to insist upon a strict performance of any of the terms, conditions, and covenants set forth in this Lease shall not be deemed a waiver of any subsequent breach or default in the terms, conditions, and covenants contained in this Lease.

22. **Right to Purchase Property**.

22.1 **Right to Purchase**. Provided that (i) the Term of this Lease has yet to expire and (ii) no state of facts then exist which constitute an Event of Default, or which, with the passing of time or the giving of notice, would constitute an Event of Default, the Lessee shall have the right (at any time during the Term of this Lease) to purchase the fee simple interest of the Lessor in the Leased Premises (the "**Fee**

**Interest**"), together with the Equipment (defined below) (the Fee Interest and the Equipment being referred to herein collectively as the "**Property**"), by tendering written notice to the Lessor of the Lessee's exercise of this right (the "**Exercise Notice**") and specifying the proposed closing date (the "**Closing Date**") on which the Lessee intends to close the purchase of the Property (the "**Closing**"), which Closing Date must occur after determination of the Property Appraised Value. The Lessee's right to purchase the Property, pursuant to the terms and conditions of this Section 22, shall be referred to as the "**Purchase Option**."

22.2 **Amount and Payment of Purchase Price**. The purchase price for the Property (the "**Purchase Price**") shall be the Property Appraised Value. The Lessee shall pay the Purchase Price at the Closing in cashier's check or other immediately available funds. The phrase "**Property Appraised Value**" shall mean the appraised value of the Property determined pursuant to the following procedure: After the Lessee tenders the Exercise Notice to the Lessor, the Lessee and the Lessor shall make a good faith effort to select an independent appraiser to conduct an appraisal of the Property. If the Lessee and the Lessor are unable to agree on an appraiser, then the Lessor and the Lessee shall each select an appraiser within ten (10) days following the Lessor's receipt of the Exercise Notice. The appraisers so selected shall mutually agree upon a third independent MAI appraiser within five (5) days thereafter. The independent MAI appraiser so selected shall, within thirty days of its selection, submit to the Lessor and the Lessee a written appraisal of the fair market value of the Property. The fair market value of the Property as determined by the selected appraiser shall be final and binding. The Lessor and the Lessee shall bear all costs related to the appraiser and appraisal equally. In the event the fair market value of the Property, as determined by the independent appraiser, is unacceptable to the Lessee, in the Lessee's sole discretion, the Lessee shall have the right to rescind its Exercise Notice and thereby be released from its obligation to purchase the Property; provided, however, any such rescission of the Exercise Notice shall result in the Lessee's automatic and permanent forfeiture of the Purchase Option.

22.3 **Procedures of Purchase**. On the Closing Date, the Lessee shall tender the Purchase Price to the Lessor. On the Closing Date, the Lessor shall tender to the Lessee (i) a General Warranty Deed conveying the Fee Interest in form and content reasonably satisfactory to the Lessee executed and duly acknowledged by the Lessor subject only to those title exceptions consented to by the Lessee; (ii) a Bill of Sale conveying the Equipment in form and content reasonably satisfactory to the Lessee executed and duly acknowledged by the Lessor subject only to those title exceptions consented to by the Lessee; (iii) such proof of the Lessor's authority and authorization to enter into and perform the transactions contemplated by this Section 22, and such proof of power and authority of the individuals executing or delivering any instruments, documents, or certificates on

behalf of the Lessor to act for and bind the Lessor as may reasonably be required by the Lessee; and (iv) such additional documents as may be necessary or desirable to convey the Property in accordance with this Section 22.

22.4 **Lessee's Conditions**. All obligations of the Lessee to complete the purchase of the Property after giving the Exercise Notice are subject to the fulfillment, before or at the Closing, of each of the following conditions (collectively, the "**Lessee's Closing Conditions**"):

(A) There must exist no actions, suits, arbitrations, claims, attachments, proceedings, assignments for the benefit of creditors, insolvency, bankruptcy, reorganization, or other proceedings, pending or threatened, against the Lessor or regarding the Property that would materially and adversely affect the Lessor's ability to perform its obligations under this Section 22 or the Lessor's title to the Property, and there must exist no pending or threatened action, suit, or proceeding regarding the Lessor before or by any court or administrative agency that seeks to restrain or prohibit, or to obtain damages or a discovery order with respect to the consummation of the transactions contemplated by this Section 22;

(B) No event will have occurred nor will any condition have arisen after the Exercise Notice that as of the Closing Date materially and adversely affects all or any part of the Leased Premises or its current or prospective operation, use, value, income, expenses, or occupancy; and

(C) All necessary agreements and consents of all parties to consummate the transactions contemplated by this Section 22 will have been obtained and furnished by the Lessor to the Lessee.

The Lessee's Closing Conditions are solely for the Lessee's benefit and any or all of the Lessee's Closing Conditions may be waived in writing by the Lessee in whole or in part without prior notice.

23. **Equipment Lease**. All equipment located on the Leased Premises, but not purchased by Lessee, as more fully described on **Exhibit B** attached hereto (the "**Equipment**"), shall be deemed leased to Lessee by Lessor pursuant to this Lease at no additional cost beyond the rental payment listed in Section 4 hereof. Should Lessee elect to purchase the Property pursuant to Section 22 hereof, all Equipment shall be conveyed with the Fee Interest to the Lessee at Closing in consideration for the Purchase Price established pursuant to Section 22 hereof. During the Term of the Lease, the Lessee shall (i) keep and maintain the Equipment in good working order and repair, at its own expense, and (ii) not remove the Equipment from the Leased Premises.

24. **Notices.**

24.1 **Requirement of a Writing; Permitted Methods of Delivery.** Each party giving or making any notice, request, demand, or other communication (each, a "**Notice**") under this Lease shall give the Notice in writing and use one of the following methods of delivery: (i) Registered or Certified Mail (in each case, return receipt requested and postage prepaid) or (ii) nationally recognized overnight courier (with all fees prepaid). Except as provided elsewhere in this Lease, each of these methods of delivery is a writing for purposes of this Lease.

24.2 **Addressees and Addresses.** Any party giving a Notice shall address the Notice to the appropriate person at the receiving party (the "**Addressee**") at the address of the receiving party listed below:

Notices to the Lessor shall be sent to:

Whaley Properties, Inc.
P.O. Box 4250
Sevierville, TN 37864

Notices to the Lessee shall be sent to:

Rocky Top Ford Lincoln, LLC
3315 Winfield Dunn Parkway
Kodak, TN 37764

Notices to the Guarantor shall be sent to:

H. Richard Llewellyn, Jr.
3315 Winfield Dunn Parkway
Kodak, TN 37764

Any party may change the address at which it is to receive Notices by so advising the other party in a Notice under this Section 24.

24.3 **Effectiveness of a Notice.** Except as provided elsewhere in this Lease, a Notice is effective only if (i) the party giving the Notice has complied with Sections 24.1 and 24.2 and (ii) the Notice is actually delivered to the Addressee. If the Addressee refuses to accept delivery of a Notice, delivery of such Notice shall be deemed made when delivery is attempted.

25. **Holding Over.** Any holding over by the Lessee beyond the expiration of the Term of this Lease, whether by expiration of the Term of this Lease, or otherwise, and continued

payment of rental by the Lessee without written agreement shall be holding over from month to month, and all of the terms, covenants and conditions hereof, except the Term and the Purchase Option, shall remain in full force and effect; provided, however, the monthly rental installment due and payable during any such period of holding over shall be twice the amount of the monthly rental installment that was due and payable during the last year of the Term.

26. **Memorandum of Lease.** This Lease shall be evidenced of record by a Memorandum of Lease to be executed by the Lessor and the Lessee which Memorandum of Lease shall include a description of the Leased Premises and the Term, but this Lease shall not be recorded by either party.

27. **Miscellaneous Provisions.** This Lease constitutes the final agreement among the parties and is the exclusive expression of the parties' agreement on the matters contained in this Lease. Neither this Lease nor any provision of it may be changed or waived orally but only by an agreement in writing, duly executed by or on behalf of the party or parties against whom enforcement of any waiver, change, modification, consent, or discharge is sought. All earlier and contemporaneous negotiations and agreements between the parties on the matters contained in this Lease are expressly merged into and superseded by this Lease. Time is of the essence in this Lease. The provisions contained in this Lease shall be severable. If any provision shall be found to be void, illegal, or unenforceable, then the remaining provisions shall continue in full force and effect and shall be so construed as to give effect, as nearly as possible, to the original intent of the parties. This Lease shall bind and inure to the benefit of the parties and their respective heirs, executors, administrators, successors, permitted assigns, and personal representatives. The captions and paragraph headings used in this Lease are for convenience and reference purposes only and shall in no event be deemed to add to, limit, or in any manner affect the subject matter. In this Lease, any gender includes all other genders; the singular includes the plural; and the plural includes the singular. Each party to this Lease and their respective legal counsel have had an opportunity to review and revise (or request revision of) this Lease; therefore, any usual rules of construction requiring that ambiguities are to be resolved against a particular party shall not be applicable in the construction and interpretation of this Lease. In this Lease, the term "or" is not exclusive and means one or the other or both, or any one or more or all of the things or persons or alternatives in connection with which the conjunction is used. Whenever the words "include," "includes," or "including" are used in this Lease, they shall be deemed to be followed by the words "without limitation." In computing any period of time pursuant to this Lease, the day of the act or event from which the designated period of time begins to run will not be included. The last day of the period so computed will be included, unless it is a Saturday, Sunday, or legal holiday in Tennessee, in which event the period runs until the end of the next day which is not a Saturday, Sunday, or such legal holiday.

28. **Guaranty by the Guarantor.** The Guarantor for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, joins in this Lease for the purpose of guaranteeing, and does hereby unconditionally guarantee to the Lessor, the timely payment and performance of all of the Lessee's obligations under this Lease, as this Lease may be renewed, assigned, or modified from time to time. The Guarantor shall reimburse the Lessor on demand for all reasonable attorneys' fees and expenses that the Lessor incurs in enforcing this guaranty provision. The Guarantor waives notice of any default by the Lessee under this Lease and any requirement that the Lessor proceed first against the Lessee. The Guarantor's liability is primary and direct. The Guarantor shall not be released from liability by any modification of this Lease, by any assignment of this Lease, or any subletting of the Leased Premises. Notwithstanding anything to the contrary contained herein, the Guarantor shall be released from all liability and obligations under the Guaranty and this Lease upon provision of a replacement guarantor reasonably acceptable to the Lessor. The Lessor may waive any of the terms of this Lease, consent to any matter relating to this Lease, or grant extensions of time to the Lessee without notice to the Guarantor and without releasing the Guarantor from liability under this guaranty. Until all of the Lessee's obligations under this Lease are fully performed, the Guarantor shall have no right of subrogation against the Lessee, and the Guarantor subordinates any obligation of the Lessee to the Guarantor to the obligations of the Lessee to the Lessor under this Lease. The liability of the Guarantor under this guaranty shall not be affected by the discharge of the Lessee in any bankruptcy or similar proceeding, the rejection of this Lease in any such proceeding, any defense available to the Lessee, or the termination or diminution for any other reason of the liability of the Lessee or of the Lessor's remedies against the Lessee. This guaranty may not be modified except by an agreement in writing signed by the Guarantor and the Lessor. The Guarantor acknowledges that the Lessor is relying on this guaranty and that the Lessor would not be entering into this Lease without this guaranty.

29. **GOVERNING LAW & LITIGATION. The undersigned acknowledge that this Lease was negotiated, executed, and delivered in the State of Tennessee, that this Lease is to be performed in the State of Tennessee and shall be governed and construed in accordance with the laws of the State of Tennessee. This Lease and all matters arising under or relating to it (including torts) shall be governed, interpreted, construed, and regulated exclusively by the laws of the State of Tennessee without application of any conflict of laws principles. If a dispute arises that involves this Lease or any matter arising under or relating to it (including torts), the undersigned expressly understand and agree that the Tennessee State Courts of Sevier County, Tennessee, or, if there is exclusive Federal jurisdiction, the United States District Court for the Eastern District of Tennessee sitting in Knoxville (the "Approved Courts") shall have exclusive jurisdiction and venue over any dispute involving this Lease or any matter arising under or relating to it (including torts). The undersigned hereby consent to personal and subject-matter jurisdiction in and venue of the Approved Courts. The undersigned waive any and all rights under the laws of any state to object to the jurisdiction of the Approved**

Courts or to institute a claim of *forum non conveniens* to divest any Approved Court of jurisdiction. THE UNDERSIGNED HEREBY IRREVOCABLY AND ABSOLUTELY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY SUIT OR ACTION ARISING OUT OF OR IN ANY WAY RELATING TO THIS LEASE. THE UNDERSIGNED AGREE THAT A COPY OF THIS PARAGRAPH MAY BE FILED WITH ANY APPROVED COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY, AND BARGAINED AGREEMENT OF THE UNDERSIGNED TO IRREVOCABLY AND ABSOLUTELY WAIVE ALL RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE BETWEEN THE UNDERSIGNED SHALL INSTEAD BE TRIED IN AN APPROVED COURT BY A JUDGE SITTING WITHOUT A JURY. THE UNDERSIGNED AGREE THAT THIS PARAGRAPH MAY NOT BE ORALLY AMENDED AND STIPULATE THAT NO AGENT OF EITHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH PARTY WOULD NOT SEEK TO ENFORCE THE PROVISIONS OF THIS PARAGRAPH. THE UNDERSIGNED ACKNOWLEDGE THAT THE LESSOR HAS, IN PART, BEEN INDUCED TO ENTER INTO THIS LEASE IN RELIANCE ON THE PROVISIONS OF THIS PARAGRAPH.

IN WITNESS WHEREOF, the parties have executed and delivered this Lease as of the Effective Date.

THE LESSOR:

WHALEY PROPERTIES, INC.

By: [signature]
Lynn T. Webb
Its: President

THE LESSEE:

ROCKY TOP FORD LINCOLN, LLC

By: [signature]
H. Richard Llewellyn, Jr.
Its: President

THE GUARANTOR:

[signature]
H. Richard Llewellyn, Jr.

STATE OF TENNESSEE
COUNTY OF ~~SEVIER~~ Knox

Before me, the undersigned authority, a Notary Public in and for the State and County aforesaid, personally appeared **Lynn T. Webb**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence) and who, upon oath, acknowledged himself to be the **President of Whaley Properties, Inc.**, the within named bargainor, a Tennessee corporation, and that he as such President, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as President.

WITNESS my hand and Official Seal at office in said State and County this 27 day of March, 2019.

Nancy J. Woodhead
Notary Public

My Commission Expires: 2-23-2021

NANCY J. WOODHEAD STATE OF TENNESSEE NOTARY PUBLIC SEVIER COUNTY

STATE OF TENNESSEE
COUNTY OF SEVIER

Before me, the undersigned authority, a Notary Public in and for the State and County aforesaid, personally appeared **H. Richard Llewellyn, Jr.**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence) and who, upon oath, acknowledged himself to be the **President of Rocky Top Ford Lincoln, LLC**, the within named bargainor, a Tennessee limited liability company, and that he as such President, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the limited liability company by himself as President.

WITNESS my hand and Official Seal at office in said State and County this 29th day of March, 2019.

Jamie L Spangler
Notary Public

My Commission Expires: ______

JAMIE L. SPANGLER STATE OF TENNESSEE NOTARY PUBLIC Comm. Exp. 1-29-2022 KNOX COUNTY

STATE OF TENNESSEE
COUNTY OF SEVIER

Before me, the undersigned authority, personally appeared the within named bargainor, **H. Richard Llewellyn, Jr.**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that he executed the foregoing instrument for the purposes therein contained.

WITNESS my hand and Official Seal at office in said State and County this 29th day of March, 2019.

Jamie L. Spangler
Notary Public

My Commission Expires:

JAMIE L. SPANGLER
STATE OF TENNESSEE NOTARY PUBLIC
Comm. Exp. 1-29-2022
KNOX COUNTY

G:\WP8 Docs\CLIENTS (MISC.)\Whaley Properties Inc\Ground Lease-Whaley Properties Inc.-031819-RLR.wpd

14. **Assignment or Subletting**. The Lessee shall not assign this Lease or sublease the whole, or any part of, the Leased Premises without the prior written consent of the Lessor, such consent shall not be unreasonably withheld, conditioned, or delayed. Any purported assignment of rights or delegation of performance in violation of this paragraph shall be void. The term "assign" shall include the transfer of any ownership interest in the Lessee, or any constituent entity of the Lessee, to parties other than the current owners of the Lessee, excluding, however, transfers by devise or intestate succession. In the event of any permitted assignment of this Lease, the Lessee shall be released from the performance of the terms and conditions hereof. The Lessor shall have the right to transfer and assign, in whole or in part, all and every feature of the Lessor's rights and obligations under this Lease or the Leased Premises. In such event, the Lessor shall be released from any further obligation under this Lease, and the Lessee shall attorn to and look solely to the Sublessor's successor for the performance of such obligation.

15. **No Partnership**. This Lease shall not be construed to create a partnership or joint venture between the Lessor and the Lessee.

16. **Events of Default Defined**. Each of the following shall be deemed an "**Event of Default**" by the Lessee and a breach of this Lease:

16.1 Failing to pay the rent (whether base, adjusted base, or additional), the taxes, or the premiums on the insurance required, all as provided for in this Lease, or any part thereof, within 15 days after written notice, addressed and properly mailed to the Lessee;

16.2 Failure to do, observe, keep, and perform any of the other terms, covenants, requirements, and provisions of this Lease which are the duty of the Lessee to do, observe, keep, or perform for a period of 30 days after similar written notice to the Lessee; provided, however, if the Lessee should be diligently endeavoring to correct any such default (non-monetary in nature), the 30 day period shall be extended by whatever reasonable time is required to cure such default.

16.3 The abandonment of the Leased Premises by the Lessee; the adjudication of the Lessee as bankrupt; the making by the Lessee of a general assignment for the benefit of creditors; the taking by the Lessee of the benefit of any insolvency act or law; the appointment of a permanent receiver or trustee in bankruptcy for the Lessee's property; the appointment of a temporary receiver of the Lessee's property if the appointment be not vacated or set aside within 30 days from the time of such appointment.

17. **Lessor's Remedy in Event of Default**. Upon the occurrence of an Event of Default, the Lessor may, at its option, and without any additional notice of any kind, terminate this Lease and go back into possession of the Leased Premises at any time thereafter. In such event, the Term of this Lease shall wholly cease and expire in the same manner and with

the same effect as if the date of said termination decided upon by the Lessor had been the date originally fixed in this Lease for the termination of the Term, and the Lessor shall thereupon be entitled to the immediate possession of the Leased Premises and may institute summary proceedings for the same against the Lessee or may take any other suitable proceedings or actions to obtain possession of the Leased Premises. The Lessee is to remain liable for any and all damages resulting to the Lessor from such default, including, but not limited to, any difference in rent which the Lessor may receive for the rental of the Leased Premises prior to the expiration of the Term of this Lease. It is further agreed that the Lessor may, upon default and expiration of any cure period as herein set forth, without otherwise being obligated so to do and without terminating this Lease, retake the possession of the Leased Premises and rent the same for such rent and upon such conditions as the Lessor may deem best, giving credit for the amount of the rent so received, less all expenses of such repairs, and the Lessee shall remain liable for the difference, if any, between the amount so received by the Lessor for such reletting and the amounts of rentals herein reserved, until the expiration date of the Term. In the case of an Event of Default attributable to the Lessee's abandonment of the Leased Premises, Lessor may immediately thereafter take possession of the Leased Premises.

18. **Attorney Fees; Costs; Etc.** In the event the Lessor is reasonably required to employ the services of an attorney, or attorneys, to enforce any provision of this Lease because of the Lessee's non-compliance, the Lessee shall reimburse the Lessor for its reasonable attorneys' fees and other reasonable costs incurred due to the Lessee's non-compliance.

19. **Covenants and Warranties**. Lessor covenants and warrants that its has the right to Lease the Leased Premises, that the Lessee will enjoy quiet possession of said Leased Premises during the Term of this Lease, and that it will defend the same against the claims of all persons.

20. **Surrender by Lessee of Leased Premises**. The Lessee shall, on the expiration or the sooner termination of the Term, surrender to the Lessor the Leased Premises, including all buildings, replacements, changes, additions, and improvements constructed or placed by the Lessee thereon, with all equipment in or appurtenant thereto (not including movable trade fixtures) installed by the Lessee, broom-clean, free of subtenancies, and in good condition and repair, reasonable wear and tear excepted. Any trade fixtures or personal property belonging to the Lessee or to any permitted sub-sublessee, if not removed at such termination and if the Lessor shall so elect, shall be deemed abandoned and shall become the property of the Lessor without any payment or offset therefor. If the Lessor shall not so elect, the Lessor may, at its election require the Lessee to remove any remaining trade fixtures, personal property or improvements, both above and below ground, from the Leased Premises and remove the same at their sole risk and expense; provided, however, in the event the Lessee fails and refuses to remove such items as required by the Lessor, the Lessor may remove such fixtures, property or improvements from the Leased Premises and reasonably dispose of them at the Lessee's risk and expense.

21. **No Waiver of Remedy by Lessor**. The failure of the Lessor to insist upon a strict performance of any of the terms, conditions, and covenants set forth in this Lease shall not be deemed a waiver of any subsequent breach or default in the terms, conditions, and covenants contained in this Lease.

22. **Right to Purchase Fee Interest.**

22.1 **Right to Purchase**. Provided that (i) the Term of this Lease has yet to expire and (ii) no state of facts then exist which constitute an Event of Default, or which, with the passing of time or the giving of notice, would constitute an Event of Default, the Lessee shall have the right (at any time during the Term of this Lease) to purchase the fee simple interest of the Lessor in the Leased Premises (the "**Fee Interest**") by tendering written notice to the Lessor of the Lessee's exercise of this right (the "**Exercise Notice**") and specifying the proposed closing date (the "**Closing Date**") on which the Lessee intends to close the purchase of the Fee Interest (the "**Closing**"), which Closing Date must occur after determination of the Fee Interest Appraised Value. The Lessee's right to purchase the Fee Interest, pursuant to the terms and conditions of this Section 22, shall be referred to as the "**Purchase Option**."

22.2 **Amount and Payment of Purchase Price**. The purchase price for the Fee Interest (the "**Purchase Price**") shall be the Fee Interest Appraised Value. The Lessee shall pay the Purchase Price at the Closing in cashier's check or other immediately available funds. The phase "**Fee Interest Appraised Value**" shall mean the appraised value of the Fee Interest determined pursuant to the following procedure: After the Lessee tenders the Exercise Notice to the Lessor, the Lessee and the Lessor shall make a good faith effort to select an independent appraiser to conduct an appraisal of the Fee Interest. If the Lessee and the Lessor are unable to agree on an appraiser, then the Lessor and the Lessee shall each select an appraiser within ten (10) days following the Lessor's receipt of the Exercise Notice. The appraisers so selected shall mutually agree upon a third independent MAI appraiser within five (5) days thereafter. The independent MAI appraiser so selected shall, within thirty days of its selection, submit to the Lessor and the Lessee a written appraisal of the fair market value of the Fee Interest. The fair market value of the Fee Interest as determined by the selected appraiser shall be final and binding. The Lessor and the Lessee shall bear all costs related to the appraiser and appraisal equally. In the event the fair market value of the Fee Interest, as determined by the independent appraiser, is unacceptable to the Lessee, in the Lessee's sole discretion, the Lessee shall have the right to rescind its Exercise Notice and thereby be released from its obligation to purchase the Fee Interest; provided, however, any such rescission of the Exercise Notice shall result in the Lessee's automatic and permanent forfeiture of the Purchase Option.

22.3 **Procedures of Purchase.** On the Closing Date, the Lessee shall tender the Purchase Price to the Lessor. On the Closing Date, the Lessor shall tender to the Lessee (i) a General Warranty Deed in form and content reasonably satisfactory to the Lessee executed and duly acknowledged by the Lessor subject only to those title exceptions consented to by the Lessee; (ii) such proof of the Lessor's authority and authorization to enter into and perform the transactions contemplated by this Section 22, and such proof of power and authority of the individuals executing or delivering any instruments, documents, or certificates on behalf of the Lessor to act for and bind the Lessor as may reasonably be required by the Lessee; and (iii) such additional documents as may be necessary or desirable to convey the Fee Interest in accordance with this Section 22.

22.4 **Lessee's Conditions.** All obligations of the Lessee to complete the purchase of the Fee Interest after giving the Exercise Notice are subject to the fulfillment, before or at the Closing, of each of the following conditions (collectively, the "**Lessee's Closing Conditions**"):

(A) There must exist no actions, suits, arbitrations, claims, attachments, proceedings, assignments for the benefit of creditors, insolvency, bankruptcy, reorganization, or other proceedings, pending or threatened, against the Lessor or regarding the Fee Interest that would materially and adversely affect the Lessor's ability to perform its obligations under this Section 22 or the Lessor's title to the Fee Interest, and there must exist no pending or threatened action, suit, or proceeding regarding the Lessor before or by any court or administrative agency that seeks to restrain or prohibit, or to obtain damages or a discovery order with respect to the consummation of the transactions contemplated by this Section 22;

(B) No event will have occurred nor will any condition have arisen after the Exercise Notice that as of the Closing Date materially and adversely affects all or any part of the Leased Premises or its current or prospective operation, use, value, income, expenses, or occupancy; and

(C) All necessary agreements and consents of all parties to consummate the transactions contemplated by this Section 22 will have been obtained and furnished by the Lessor to the Lessee.

The Lessee's Closing Conditions are solely for the Lessee's benefit and any or all of the Lessee's Closing Conditions may be waived in writing by the Lessee in whole or in part without prior notice.

23. **Notices.**

23.1 **Requirement of a Writing; Permitted Methods of Delivery.** Each party giving or making any notice, request, demand, or other communication (each, a "**Notice**") under this Lease shall give the Notice in writing and use one of the following methods of delivery: (i) Registered or Certified Mail (in each case, return receipt requested and postage prepaid) or (ii) nationally recognized overnight courier (with all fees prepaid). Except as provided elsewhere in this Lease, each of these methods of delivery is a writing for purposes of this Lease.

23.2 **Addressees and Addresses.** Any party giving a Notice shall address the Notice to the appropriate person at the receiving party (the "**Addressee**") at the address of the receiving party listed below:

Notices to the Lessor shall be sent to:

LD&S, LLC
P.O. Box 4250
Sevierville, TN 37864

Notices to the Lessee shall be sent to:

Rocky Top Ford Lincoln, LLC
3315 Winfield Dunn Parkway
Kodak, TN 37764

Notices to the Guarantor shall be sent to:

H. Richard Llewellyn, Jr.
3315 Winfield Dunn Parkway
Kodak, TN 37764

Any party may change the address at which it is to receive Notices by so advising the other party in a Notice under this Section 23.

23.3 **Effectiveness of a Notice.** Except as provided elsewhere in this Lease, a Notice is effective only if (i) the party giving the Notice has complied with Sections 23.1 and 23.2 and (ii) the Notice is actually delivered to the Addressee. If the Addressee refuses to accept delivery of a Notice, delivery of such Notice shall be deemed made when delivery is attempted.

24. **Holding Over.** Any holding over by the Lessee beyond the expiration of the Term of this Lease, whether by expiration of the Term of this Lease, or otherwise, and continued payment of rental by the Lessee without written agreement shall be holding over from month to month, and all of the terms, covenants and conditions hereof, except the Term

and the Purchase Option, shall remain in full force and effect; provided, however, the monthly rental installment due and payable during any such period of holding over shall be twice the amount of the monthly rental installment that was due and payable during the last year of the Term.

25. **Memorandum of Lease.** This Lease shall be evidenced of record by a Memorandum of Lease to be executed by the Lessor and the Lessee which Memorandum of Lease shall include a description of the Leased Premises and the Term, but this Lease shall not be recorded by either party.

26. **Miscellaneous Provisions.** This Lease constitutes the final agreement among the parties and is the exclusive expression of the parties' agreement on the matters contained in this Lease. Neither this Lease nor any provision of it may be changed or waived orally but only by an agreement in writing, duly executed by or on behalf of the party or parties against whom enforcement of any waiver, change, modification, consent, or discharge is sought. All earlier and contemporaneous negotiations and agreements between the parties on the matters contained in this Lease are expressly merged into and superseded by this Lease. Time is of the essence in this Lease. The provisions contained in this Lease shall be severable. If any provision shall be found to be void, illegal, or unenforceable, then the remaining provisions shall continue in full force and effect and shall be so construed as to give effect, as nearly as possible, to the original intent of the parties. This Lease shall bind and inure to the benefit of the parties and their respective heirs, executors, administrators, successors, permitted assigns, and personal representatives. The captions and paragraph headings used in this Lease are for convenience and reference purposes only and shall in no event be deemed to add to, limit, or in any manner affect the subject matter. In this Lease, any gender includes all other genders; the singular includes the plural; and the plural includes the singular. Each party to this Lease and their respective legal counsel have had an opportunity to review and revise (or request revision of) this Lease; therefore, any usual rules of construction requiring that ambiguities are to be resolved against a particular party shall not be applicable in the construction and interpretation of this Lease. In this Lease, the term "or" is not exclusive and means one or the other or both, or any one or more or all of the things or persons or alternatives in connection with which the conjunction is used. Whenever the words "include," "includes," or "including" are used in this Lease, they shall be deemed to be followed by the words "without limitation." In computing any period of time pursuant to this Lease, the day of the act or event from which the designated period of time begins to run will not be included. The last day of the period so computed will be included, unless it is a Saturday, Sunday, or legal holiday in Tennessee, in which event the period runs until the end of the next day which is not a Saturday, Sunday, or such legal holiday.

27. **Guaranty by the Guarantor.** The Guarantor for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, joins in this Lease for the purpose of guaranteeing, and does hereby unconditionally guarantee to the Lessor, the

timely payment and performance of all of the Lessee's obligations under this Lease, as this Lease may be renewed, assigned, or modified from time to time. The Guarantor shall reimburse the Lessor on demand for all reasonable attorneys' fees and expenses that the Lessor incurs in enforcing this guaranty provision. The Guarantor waives notice of any default by the Lessee under this Lease and any requirement that the Lessor proceed first against the Lessee. The Guarantor's liability is primary and direct. The Guarantor shall not be released from liability by any modification of this Lease, by any assignment of this Lease, or any subletting of the Leased Premises. Notwithstanding anything to the contrary contained herein, the Guarantor shall be released from all liability and obligations under the Guaranty and this Lease upon provision of a replacement guarantor reasonably acceptable to the Lessor. The Lessor may waive any of the terms of this Lease, consent to any matter relating to this Lease, or grant extensions of time to the Lessee without notice to the Guarantor and without releasing the Guarantor from liability under this guaranty. Until all of the Lessee's obligations under this Lease are fully performed, the Guarantor shall have no right of subrogation against the Lessee, and the Guarantor subordinates any obligation of the Lessee to the Guarantor to the obligations of the Lessee to the Lessor under this Lease. The liability of the Guarantor under this guaranty shall not be affected by the discharge of the Lessee in any bankruptcy or similar proceeding, the rejection of this Lease in any such proceeding, any defense available to the Lessee, or the termination or diminution for any other reason of the liability of the Lessee or of the Lessor's remedies against the Lessee. This guaranty may not be modified except by an agreement in writing signed by the Guarantor and the Lessor. The Guarantor acknowledges that the Lessor is relying on this guaranty and that the Lessor would not be entering into this Lease without this guaranty.

28. **GOVERNING LAW & LITIGATION. The undersigned acknowledge that this Lease was negotiated, executed, and delivered in the State of Tennessee, that this Lease is to be performed in the State of Tennessee and shall be governed and construed in accordance with the laws of the State of Tennessee. This Lease and all matters arising under or relating to it (including torts) shall be governed, interpreted, construed, and regulated exclusively by the laws of the State of Tennessee without application of any conflict of laws principles. If a dispute arises that involves this Lease or any matter arising under or relating to it (including torts), the undersigned expressly understand and agree that the Tennessee State Courts of Sevier County, Tennessee, or, if there is exclusive Federal jurisdiction, the United States District Court for the Eastern District of Tennessee sitting in Knoxville (the "Approved Courts") shall have exclusive jurisdiction and venue over any dispute involving this Lease or any matter arising under or relating to it (including torts). The undersigned hereby consent to personal and subject-matter jurisdiction in and venue of the Approved Courts. The undersigned waive any and all rights under the laws of any state to object to the jurisdiction of the Approved Courts or to institute a claim of *forum non conveniens* to divest any Approved Court of jurisdiction. THE UNDERSIGNED HEREBY IRREVOCABLY AND ABSOLUTELY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY SUIT OR**

**ACTION ARISING OUT OF OR IN ANY WAY RELATING TO THIS LEASE. THE UNDERSIGNED AGREE THAT A COPY OF THIS PARAGRAPH MAY BE FILED WITH ANY APPROVED COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY, AND BARGAINED AGREEMENT OF THE UNDERSIGNED TO IRREVOCABLY AND ABSOLUTELY WAIVE ALL RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE BETWEEN THE UNDERSIGNED SHALL INSTEAD BE TRIED IN AN APPROVED COURT BY A JUDGE SITTING WITHOUT A JURY. THE UNDERSIGNED AGREE THAT THIS PARAGRAPH MAY NOT BE ORALLY AMENDED AND STIPULATE THAT NO AGENT OF EITHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH PARTY WOULD NOT SEEK TO ENFORCE THE PROVISIONS OF THIS PARAGRAPH. THE UNDERSIGNED ACKNOWLEDGE THAT THE LESSOR HAS, IN PART, BEEN INDUCED TO ENTER INTO THIS LEASE IN RELIANCE ON THE PROVISIONS OF THIS PARAGRAPH.**

IN WITNESS WHEREOF, the parties have executed and delivered this Lease as of the Effective Date.

THE LESSOR:

LD&S, LLC

By: ______________________
Daniel L. Webb
Its: President

THE LESSEE:

ROCKY TOP FORD LINCOLN, LLC

By: ______________________
H. Richard Llewellyn, Jr.
Its: President

THE GUARANTOR:

______________________
H. Richard Llewellyn, Jr.

STATE OF TENNESSEE
COUNTY OF KNOX

Before me, the undersigned authority, a Notary Public in and for the State and County aforesaid, personally appeared **Daniel L. Webb**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence) and who, upon oath, acknowledged himself to be the **President of LD&S, LLC**, the within named bargainor, a Tennessee limited liability company, and that he as such President, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the limited liability company by himself as President.

WITNESS my hand and Official Seal at office in said State and County this 29th day of March, 2019.

Jamie L. Spangler
Notary Public

JAMIE L. SPANGLER STATE OF TENNESSEE NOTARY PUBLIC Comm. Exp. 1-29-2022 KNOX COUNTY

My Commission Expires:

STATE OF TENNESSEE
COUNTY OF KNOX

Before me, the undersigned authority, a Notary Public in and for the State and County aforesaid, personally appeared **H. Richard Llewellyn, Jr.**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence) and who, upon oath, acknowledged himself to be the **President of Rocky Top Ford Lincoln, LLC**, the within named bargainor, a Tennessee limited liability company, and that he as such President, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the limited liability company by himself as President.

WITNESS my hand and Official Seal at office in said State and County this 29th day of March, 2019.

Jamie L. Spangler
Notary Public

JAMIE L. SPANGLER STATE OF TENNESSEE NOTARY PUBLIC Comm. Exp. 1-29-2022 KNOX COUNTY

My Commission Expires:

STATE OF TENNESSEE
COUNTY OF KNOX

Before me, the undersigned authority, personally appeared the within named bargainor, **H. Richard Llewellyn, Jr.**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that he executed the foregoing instrument for the purposes therein contained.

WITNESS my hand and Official Seal at office in said State and County this 29th day of March, 2019.

Jamie L. Spangler
Notary Public

JAMIE L. SPANGLER STATE OF TENNESSEE NOTARY PUBLIC Comm. Exp. 1-29-2022 KNOX COUNTY

My Commission Expires:________

G:\WP8 Docs\CLIENTS (MISC.)\Whaley Properties Inc\Ground Lease-LD&S, LLC-032719-RLR.wpd

# GROUND LEASE AGREEMENT

This Ground Lease Agreement (this "**Lease**") is made and entered into as of April 1, 2019 (the "**Effective Date**") by and among **LD&S, LLC**, a Tennessee limited liability company, successor to LD&S, L.P. pursuant to entity conversion, (the "**Lessor**"); **Rocky Top Ford Lincoln, LLC**, a Tennessee limited liability company, (the "**Lessee**"); and **H. Richard Llewellyn, Jr.** (the "**Guarantor**").

## BACKGROUND STATEMENT

A. The Lessor owns certain real property located in the Fifth Civil District of Sevier County, Tennessee, located on the corner of Dolly Parton Parkway and Robert Henderson Road, being designated by the Sevier County Property Assessor as Tax Parcel 001.00 (Ctrl Map 049M, Group D) and Tax Parcel 058.01 (Ctrl Map 049M, Group D), being more particularly bounded and described on **Exhibit A** attached hereto and incorporated herein by this reference (the "**Leased Premises**").

B. The Lessor desires to lease the Leased Premises to the Lessee, and the Lessee desires to lease the same from the Lessor.

NOW, THEREFORE, in consideration of One Dollar ($1.00) and other good and valuable consideration and the further consideration of the payment of the rents as hereinafter set forth and the performance of the covenants and conditions to be performed by the respective parties hereto, the Lessor does hereby let and lease to the Lessee the Leased Premises upon the terms and conditions as set forth in this Lease:

## AGREEMENT

1. **Initial Term of Lease**. This Lease shall be for an initial term of five years commencing on the Effective Date and ending on the day before the fifth anniversary of the Effective Date, unless sooner terminated or extended as provided in this Lease (the "**Initial Term**").

2. **Option Terms**. Provided that (i) this Lease is still in effect and (ii) no state of facts then exist which constitute an Event of Default, or which, with the passing of time or the giving of notice, would constitute an Event of Default, the Lessee shall have an option to extend this Lease for two additional terms of five years each (each an "**Option Term**") beginning on the expiration of the Initial Term or the prior Option Term, as may be applicable, upon the terms and conditions herein contained. The Lessee may only exercise an Option Term by giving the Lessor written notice of such extension on or prior

to a date which is not less than 180 days before the expiration of the expiring term. The Initial Term and the exercised Option Term, or Option Terms, if any, are referred to collectively hereinafter as the "**Term.**"

3. **One Hundred Percent Net Lease.** It is hereby declared to be the intention of the Lessor and the Lessee that the rent payable to the Lessor shall be 100% net to the Lessor and that all costs, expenses, and obligations of every kind relating to the Leased Premises which may arise or become due during the Term of this Lease shall be paid by the Lessee, and that the Lessor shall be indemnified by the Lessee against all such costs, expenses, and obligations. Notwithstanding anything to contrary contained herein, nothing in this Lease is intended to limit the foregoing general understanding to the effect that this is intended to be a 100% net lease.

4. **Rent.** The Lessee shall pay to the Lessor rental payments as follows: During the Initial Term, the Lessee shall pay, and the Lessor shall accept as annual rental for the Leased Premises, the sum of $119,325.00 (7.5% of the current appraised value), payable, in advance, in equal monthly installments of $9,943.75 each, with the first monthly installment due and payable on the Effective Date and subsequent monthly installments due and payable on the same date each following month until the expiration of the Initial Term. In the event that the Lessee exercises the first Option Term, the Lessee shall pay, and the Lessor shall accept as annual rental for the Leased Premises, the sum of $135,235.00 (8.5% of the current appraised value), payable, in advance, in equal monthly installments of $11,269.58 each, with the first monthly installment due and payable on the fifth anniversary of the Effective Date and subsequent monthly installments due and payable on the same date each following month until the expiration of the first Option Term. In the event that the Lessee exercises the second Option Term, the Lessee shall pay, and the Lessor shall accept as annual rental for the Leased Premises, the sum of $151,145.00 (9.5% of the current appraised value), payable, in advance, in equal monthly installments of $12,595.42 each, with the first monthly installment due and payable on the tenth anniversary of the Effective Date and subsequent monthly installments due and payable on the same date each following month until the expiration of the second Option Term. Monthly rental installments, and additional rent due under this Lease, not paid within 15 days following the due date shall be assessed a one-time late charge of 5% for the respective delinquent installment/amount and shall accrue interest at the rate of 15% per annum from the date due until paid; provided that in no event shall the Lessee be obligated to pay any portion of said interest that is in excess of applicable usury law. In the event this Lease is terminated pursuant to either party's termination rights set forth herein prior to a full month's end, any such Lease payment previously paid shall be prorated for the portion of the month prior to termination, and the Lessor shall return the balance of the rental payment to the Lessee.

5. **Use.** The Leased Premises shall be used by the Lessee as an automotive retail outlet, which shall include, but is not limited to the following uses: parking, car display, and business offices, and for no other use unrelated to an automotive retail outlet without the

Lessor's prior written consent, which shall not be unreasonably withheld, conditioned or delayed.

6. **Improvements to the Leased Premises.**

6.1 **THE LEASED PREMISES ARE LEASED TO THE LESSEE, AND THE LESSEE ACCEPTS THE SAME, IN THEIR "AS IS" CONDITION WITHOUT REPRESENTATION OR WARRANTY BY THE LESSOR AS TO THE CONDITION OF THE LEASED PREMISES.** The Lessor shall have no obligation to build or make any improvements on the Leased Premises whatsoever. It is specifically agreed and understood that the Lessee is under no obligation to improve the Leased Premises; however, all improvements made by the Lessee, to the Leased Premises shall be at the Lessee's sole expense. Any permanent improvements built by the Lessee, or otherwise, on the Leased Premises shall, upon the expiration or lawful termination of the Term, become the Lessor's property.

6.2 The Lessor shall have the right to approve or reject the design of any new construction on the Leased Premises or any permanent modifications or additions to the design of improvements located on the Leased Premises. The Lessee agrees that no work shall commence until the Lessor has approved the designs, plans, and specifications for such construction, modification, or addition in writing, such approval shall not be unreasonably withheld, conditioned or delayed. The Lessee shall not demolish or remove any improvements placed on the Leased Premises unless the Lessee has obtained the Lessor's prior written approval for such demolition or removal, such approval shall not be unreasonably withheld, conditioned or delayed. In connection with all required approvals, the Lessee shall submit to the Lessor a written request for approval, together with (i) the plans and specifications for any improvement, remodeling, modification, or addition and (ii) evidence of the Lessee's ability to pay the cost of the same. If within 30 days after the Lessee submits such request and the required supporting documentation to the Lessor for approval and the Lessor has not given the Lessee notice of the Lessor's rejection of such request stating the reason for such rejection, such request shall be considered approved by the Lessor.

6.3 The Lessee shall be responsible for, and agrees to obtain, all building permits, other permits, utility services, and certificates of occupancy required in connection with the use and occupancy of any buildings or other improvements to be constructed on the Leased Premises.

6.4 The Lessor does hereby give notice that the Lessee shall never, under any circumstances, have the power to subject the present or residual estate of the Lessor in the Leased Premises or any improvements thereon to any mechanics' or materialmen's lien or liens of any kind. All persons who may hereafter during the

Term of this Lease furnish work, labor, services, or materials to the Leased Premises upon the request or order of the Lessee or any persons claiming under, by, or through the Lessee, must look wholly to the interest of the Lessee, and not to that of the Lessor.

6.5 The Lessee shall indemnify and save harmless the Lessor against any and all claims, demands or obligations which may be had against the Lessor by reason of any construction on, or alteration of, the Leased Premises, and the Lessee shall cause to be written at its sole expense a general liability policy for not less than $1,000,000.00 which shall name the Lessee and the Lessor as an additional insureds as their respective interests may appear. A duplicate copy or a certificate of such policy shall be delivered by the Lessee to the Lessor promptly upon the writing of such policy and upon each renewal date, together with adequate evidence of the fact that the premiums therefore are paid.

6.6 The Lessee shall not permit any mechanic's, materialmen's, or other lien based on any contract with the Lessee to stand unreleased for more than 90 days in connection with any such construction, alterations, demolition, or removal; provided, that the Lessee shall have the right to permit any such lien to remain unreleased in order to contest the validity of such lien or claim if the Lessee shall first have posted a bond (or provided other security satisfactory to the Lessor) sufficient to insure that upon final determination of the validity of such lien or claim, the Lessee shall immediately pay any judgment rendered against it with all proper costs and charges, and shall have such lien released without cost to the Lessor. In the event it becomes necessary for the Lessor to enforce this provision, then the Lessee shall pay all costs incident to same, including the Lessor's reasonable attorneys' fees, as additional rent.

7. **Taxes.** The Lessee shall be responsible for and shall timely pay all property taxes imposed by the City, County, and any other taxes that might be imposed in the future for the Leased Premises. If at any time in the future the State of Tennessee or any other governmental entity shall impose a tax on rents or assess against the Lessor tax on rents or against the rents received as a substitute, in whole or in part, for taxes assessed by such State or political subdivision on land or buildings, such tax shall be deemed to be included within the amount which the Lessee is required to pay under this paragraph. Likewise, if a sale or gross receipts tax is levied against the rents received by the Lessor, such tax shall be deemed to be included within the amount the Lessee is required to pay under this paragraph. The Lessee shall provide the Lessor with a copy of a receipt or shall otherwise timely present proof of payment of such taxes to the Lessor. The Lessor shall have the right (but not the obligation), if the Lessee fails to do so timely, to pay taxes on the Leased Premises and charge the Lessee the cost thereof as additional rent. Despite the foregoing, the 2019 property taxes shall be prorated between the Lessor and the Lessee as of the Effective Date when the bill for said taxes is received.

8. **Utilities**. The Lessee shall have all utilities used on the Leased Premises listed in its own name, and the Lessee shall pay for the same as they become due and payable. The Lessor shall, be entitled to recover the present deposits held by utility companies, the Lessee being required to pay its own such deposits.

9. **Insurance**. Throughout the Term of this Lease, the Lessee shall pay all premiums for insurance coverage on any improvements hereafter erected on the Leased Premises covering such hazards and in such amounts as the Lessor may reasonably require; in addition, the Lessee shall pay all premiums on all public liability insurance as the Lessor may reasonably require. The fire and casualty insurance policy or policies shall give coverage for the full replacement value of the buildings. It is now contemplated that comprehensive general public liability coverage will initially be at least $1,000,000.00 per occurrence. All insurance required to be maintained by the Lessee shall be effected by valid and enforceable policies issued by insurers of recognized responsibility satisfactory to the Lessor. Promptly upon the execution of this Lease, and thereafter not less than 30 days prior to the expiration dates of the expiring policies theretofore furnished pursuant to this paragraph, true copies of the policies for such insurance shall be delivered by the Lessee to the Lessor. All premiums shall be paid promptly when due. All such policies shall name the Lessor and the Lessee as the insureds, as their respective interests may appear, and shall, to the extent obtainable, contain an agreement by the insurers that they may not be cancelled without at least 10 days' prior written notice to the Lessor. The Lessor shall have the right (but not the obligation), if the Lessee fails to do so, to obtain such policies of insurance and charge the Lessee the cost thereof as additional rent.

10. **Indemnification by Lessee**. The Lessee shall indemnify the Lessor against all liabilities, expenses, and losses incurred by the Lessor as a result of (a) failure by the Lessee to perform any covenant required to be performed by the Lessee under this Lease; (b) any accident, injury, or damage which may happen, due to the negligence of the Lessee, in or about the Leased Premises or appurtenances or on the adjoining streets, sidewalks, or curbs, or resulting from the condition, maintenance, or operation of the Leased Premises or of the adjoining streets, sidewalks, or curbs, and against which accident, injury, or damage the Lessee is entitled to insure under the laws of the State of Tennessee; and (c) failure of the Lessee to comply with any requirements of any governmental authority.

11. **Casualty Losses**. In the event of damage to, or destruction of, any of the Leased Premises by fire or other casualty-type loss of a type reasonably coverable by insurance, the Lessee shall be required promptly to repair, restore, or replace the damaged improvements (or property), using the insurance proceeds received by the Lessor and the Lessee for the same. All such proceeds so received by the Lessor and the Lessee shall be held by them in trust for the purpose of said repair, restoration, or replacement and applied by them for said purposes as reasonably requited. There shall be no abatement or reduction of the rent due on account of any such loss.

12. **Repairs and Maintenance**. Throughout the Term of this Lease, the Lessee shall, at its own expense, make all necessary repairs and replacements to all improvements made on the Leased Premises by the Lessee. Such repairs and replacements, interior and exterior, ordinary as well as extraordinary, and structural as well as nonstructural, shall be made promptly, as and when necessary. All repairs and replacements shall be in quality and class at least equal to the original work. In the event the Lessee fails to make such repairs or replacements, the Lessor may, but shall not be required to, make such repairs and replacements for the Lessee's account, and the expense thereof shall constitute and be collectible as additional rent. Similarly to the provisions in Section 6 of this Lease, the Lessee shall not permit any mechanic's, materialman's, supplier's, or other lien to encumber the interest of the Lessor, or the Lessee in the Leased Premises for costs of repairs or otherwise. In the event such lien is filed, the Lessee shall reimburse the Lessor for its reasonable attorneys' fees and other costs, and the Lessee shall indemnify the Lessor for any loss due to the lien or filing hereof.

13. **Condemnation.**

13.1 **Complete Taking**. If, during the Term of this Lease, the whole or any material portion of the Leased Premises shall be taken as a result of the exercise of the power of eminent domain, this Lease shall terminate as of the date of vesting of title of the Leased Premises pursuant to such proceeding. For the purposes of this paragraph, "any material portion of the Leased Premises" shall be deemed to mean such an area, whether it be improved with building or be utilized for a parking area or for other use, that the Lessee cannot reasonably operate in the remainder of the Leased Premises, in an economically viable or safe manner, the business being conducted on the Leased Premises at the time of such taking.

13.2 **Partial Taking**. If during the Term of this Lease, less than any material portion of the Leased Premises shall be taken in any eminent domain proceeding, this Lease shall not terminate. The annual rent thereafter due and payable by the Lessee shall be equitably reduced by the Lessor in proportion to the portion of the Leased Premises which has been subject to the partial taking (provided, however, no rent shall be reduced in the event none of the building improvements or parking space of the Leased Premises are affected by such partial taking).

13.3 **Award**. Any award granted for either partial or total taking regarding the Leased Premises shall be the property of the Lessor and the Lessee with Lessor being entitled to that portion of the award attributable to taking of or damage to Lessor's fee simple title to the Leased Premises. The Lessee shall be entitled to the Lessee's cost of relocation. As to any leasehold improvements upon the Leased Premises, the Lessee shall be entitled to only that portion of an award attributable to the leasehold improvements made by the Lessee, if any, to the extent of its remaining interest therein at the time of taking.

**EXHIBIT A**
*The Leased Premises*

**PARCEL I:**

SITUATED in the Fifth (5th) Civil District of Sevier County, Tennessee, within the City of Sevierville, Tennessee, being all of **Lots 2, 3, 4 and 5 of the Irene Sharp Burchfiel Estate Property**, as shown on map of record in Map Book 26, Page 133, Register's Office, Sevier County, Tennessee, to which map specific reference is hereby made for a more particular description; and,

**PARCEL II:**

SITUATED in the Fifth (5th) Civil District of Sevier County, Tennessee, within the City of Sevierville, Tennessee, being **a portion of Lot 1 of the Irene Sharp Burchfiel Estate Property**, a map of said subdivision being of record in Map Book 26, Page 133, Register's Office, Sevier County, Tennessee, being more particularly bounded and described as follows:

BEGINNING on an iron pin located in the eastern right of way line of Robert Henderson Road, said iron pin marking a common corner with Lot 3; THENCE FROM SAID POINT OF BEGINNING, and with the eastern right of way line of Robert Henderson Road, North 26 deg 30 min 24 sec East 210.0 feet, more or less, to an iron pin; thence leaving said right of way line of Robert Henderson Road and with the new division line of Lot 1, South 71 deg 37 min 56 sec East 282.06 feet to an iron pin in the line of Lot 14; thence with the line of Lot 14, South 24 deg 29 min 00 sec West 210.0 feet to an iron pin marking a common corner of Lots 1, 14, 8 and 9; thence with the line of Lots 8, 7, 6, 5, 4 and 3, North 71 deg 27 min 00 sec West 289.42 feet to the point of BEGINNING, containing 1.367 acres, more or less, as shown on survey of James F. Hatcher, Jr., RLS, No 149, of 807 Mize Lane, Sevierville, Tennessee 37862, dated September 12, 1994, bearing drawing number 940912.

BEING THE SAME property conveyed to LD&S, L.P., a Tennessee limited partnership, by Quitclaim Deed dated December 31, 1996 from Lynn T. Webb and wife, Penny S. Webb, of record in Warranty Deed Book 588, Page 376, Register's Office, Sevier County, Tennessee. LD&S, L.P., a Tennessee limited partnership, converted into LD&S, LLC, a Tennessee limited liability company, on September 28, 2009 pursuant to a Certificate of Conversion filed with the Office of the Tennessee Secretary of State as Image No. 6605-2128.