
Cincinnati Office Night View


# CROSKERY LAW OFFICES

Robert F. Croskery* Melinda E. Knisley**
**The Highland Towers No. 2200,**
1071 Celestial Street. Cincinnati, OH 45202
Tel. Cinti **513.232.5297** Tel. Tennessee **865.599.0821**
*Ohio, Florida, Kentucky Tennessee **Of counsel
rcroskery@croskerylaw.com mknisley@croskerylaw.com



Smoky Mountain Office

October 27, 2025

Hon. Robert W. Fox, Mayor
City of Sevierville
120 Gary R. Wade Blvd.
Sevierville, TN 37862
cc: Dustin Smith, City Administrator
City Attorney (Ed Owens)
Members, Sevierville Board of Mayor and Aldermen
via hand delivery and email

Subject: Formal Notice and Demand – Retail Package Store Ordinance Violation and Applicant Priority in Zone 3; and Request to Void Certificate in District 3 of Applicant number 1 and Award it to Applicant No. 5.

Dear Mayor Fox and Members of the Board:

I represent Ms. Jessica Strode, Applicant No. 5 for a retail package store certificate of compliance under Ordinance No. O-2023-015, adopted by the City of Sevierville in October 2023. This letter serves as formal notice and demand that the City correct its oversight in failing to revoke the certificate of compliance previously issued to Applicant No. 1 and to recognize Ms. Strode's eligibility as the next qualified applicant.

Possibly, the City of Sevierville is not officially aware of the fact that Applicant No, 1 lost its eligibility on April 1, 2024, by not having a legal control of the property, a fact made clear in a lawsuit being heard in District 8, in which, for reasons unknown, the City of Sevierville was never named as an interested party.

Now: the lawsuit, which Applicant number 1 lost (and is still under appeal) made clear that Applicant number one claims *equitable* title to the real state at issue, which, even if true, would not be sufficient for the ordinance. Furthermore, subsequent sales and resales further muddy the matter.

Because Applicant Number 1 has apparently failed to notify the City of its loss of eligibility based on these issues, it is incumbent upon my client to do so that the matter can be rectified, and that my client, a woman applicant unfairly denied the benefit of her winning application, may continue to proceed with readying her property to open the approved liquor store.

Because time is of the essence, I respectfully request that corrective action be taken by November 20th, 2025. Barring progress, it is my client's current intention to file suit in the United States District Court for the Eastern District of Tennessee to assert her rights.

**Background**

On October 16, 2023, the City enacted Ordinance No. O-2023-015, codified at Sevierville Municipal Code Title 8, Chapter 3 ("Retail Package Stores"). Section 8-315(3)(b) provides that a certificate of compliance may be signed only after the Board has approved the location as suitable, and Section 8-315(4) provides that any applicant who does not open within twelve months must have the certificate revoked.

Applicant No. 1 (represented by Plaintiffs KARS, LLC, Robert Henderson Development I, LLC, and Rocky Top Ford Lincoln, LLC in a lawsuit filed in Sevier County Chancery Court, Case No. 24-5-106, styled KARS, LLC et al. v. Ogle et al. ("KARS Complaint")) received a certificate to open a liquor store in Zone 3. However, the option to purchase the approved property at 750 Dolly Parton Parkway expired on April 1, 2024, without exercise or closing. This fact is confirmed in the pleading filed by Applicant No. 1 and its affiliates in Sevier County Chancery Court, Case No. 24-5-106, styled KARS, LLC et al. v. Ogle et al. ("KARS Complaint").

Specifically, at paragraph 53 of the KARS Complaint, Plaintiffs admit that "the Closing Date set forth in LD&S Exercise Notice was April 1, 2024, which date has now passed with neither a Closing nor satisfaction of my client's conditions for an extension ... Therefore, my client takes the

position that the Purchase Option ... is now expired." This admission conclusively establishes that Applicant No. 1 lost its contractual right to acquire the approved site, and that any interest it had at that point was only equitable. (See attachment).

Despite this loss of site control and the expiration of the one-year opening period under §8-315(4), the City has continued to treat the certificate issued to Applicant No. 1 as valid. Applicants 2, 3, and 4 were disqualified for violations of distance from church and school, a fact which my client only discovered last week by filing a Freedom of Information Act Request, and Ms. Strode is therefore the next qualified applicant under the ordinance.

**Reasons that Legally, the City Must Void the Certificate of the Original Applicant:**

1. Violation of Ordinance: Continuing to recognize Applicant No. 1's certificate violates Sevierville Municipal Code §8-315(3) and (4). Applicant No. 1 no longer held a 'suitable location' as approved by the Board as of April 1, 2024, and its certificate was automatically subject to revocation after twelve months. Any extension made by Council ***did not address*** the uncurable failure to timely secure legal title.

2. Arbitrary and Capricious Conduct: The City's failure to enforce its own ordinance while is arbitrary and capricious in violation of the Fourteenth Amendment's Due Process Clause and Tennessee constitutional law.

3. Equal Protection Violation: The City's selective application of its rules to favor Applicant No. 1 while denying Ms. Strode equal treatment violates the Equal Protection Clause (U.S. Const. amend. XIV; Tenn. Const. art. I, §8).

4. Equitable Estoppel and Fair Dealing: The City represented that a liquor store must have legal control over real estate and be opened within one year or lose its license. Ms. Strode reasonably relied on that rule in her role as

the next winning applicant. The City is equitably estopped from disregarding its own ordinance.

**Requested Action**

Accordingly, Ms. Strode respectfully requests that the City of Sevierville, in Council:

1. Revoke the certificate of compliance issued to Applicant No. 1 for Zone 3;

2. Recognize Ms. Strode's application as the next qualified applicant; and

3. Confirm by November 20, 2025, that corrective action will be taken.

This notice is provided in good faith to give the City an opportunity to correct its own error and avoid unnecessary litigation. Absent a timely response, Ms. Strode will proceed with filing a federal complaint seeking declaratory, injunctive, and monetary relief, including attorney's fees under 42 U.S.C. §1988.

I trust that your compliance with the law will make litigation unnecessary. I stand ready to assist in any manner that will expedite this process, and I trust that you will, out of basic fairness as well as respect for the law, act favorably towards Ms. Strode's request.

Very Respectfully,

Robert F. Croskery
Lieutenant Colonel, Retired, US Army
Attorney at Law

encl:

IN THE CHANCERY COURT FOR SEVIER COUNTY TENNESSEE

KARS, LLC, ROBERT HENDERSON DEVELOPMENT 1, LLC, ROCKY TOP FORD LINCOLN, LLC,

Plaintiffs,

-against-

RONALD W. OGLE, BETTY M. OGLE, WHALEY PROPERTIES INC., LD&S TN, LLC, DANIEL L. WEBB, LYNN T. WEBB,

Defendants.

Case No. 24-5-106

CHANCERY COURT
FILED
HOUR:______________M.
MAY 29 2024
[signature]
CLERK & MASTER
SEVIER COUNTY, TN

## COMPLAINT

KARS, LLC ("KARS"), Robert Henderson Development 1, LLC ("RH1") and Rocky Top Ford Lincoln, LLC ("Rocky Top") (collectively, "Plaintiffs"), by and through their undersigned counsel, for their Complaint against Ronald W. Ogle, Betty M. Ogle, Lynn T. Webb, Daniel L. Webb, Whaley Properties, Inc. ("Whaley") and LD&S TN, LLC ("LD&S") (collectively "Defendants"), respectfully allege upon information and belief as follows:

### PRELIMINARY STATEMENT

1. This action arises from Defendants' predatory and unfair scheme to obstruct Plaintiffs' development of a commercial business complex on three parcels of property located at 750 Dolly Parton Parkway, Sevierville, TN 37862 (the "DP Property"), with the intent to undermine Plaintiffs' business and unlawfully seize property, profits and business prospects for their own unlawful gain. Defendants' actions make clear that they do not think the rules apply to them, and that they can bully their way through the City of Sevierville, trampling Plaintiffs and

5. With their legal challenge foreclosed, the Ogles took matters into their own hands and conspired to interfere with Plaintiffs' contract for the DP Property by plotting with Lynn Webb, the Vice Chairman of Board of Directors of Citizens National Bank ("CNB"), and the President of Whaley, and his son Daniel Webb, the Secretary of the Board of CNB and the President of LD&S, to deprive Plaintiffs of the DP Property.

6. Whaley and LD&S were contractually bound to sell their respective parcels of the DP Property to Rocky Top, which leased the land and had a contractual option to purchase it for its appraised value. Rocky Top exercised its option, and the parties spent weeks conducting due diligence, performing Phase I and Phase II environmental studies (at significant cost to Plaintiffs), and exchanging draft Purchase and Sale Agreements ("PSAs").

7. But when Plaintiffs discovered environmental issues at the site, which Whaley and LD&S failed to disclose to Plaintiffs and the relevant Tennessee authorities, the Webbs refused to negotiate or bear any additional cost of cleanup or accept a lower appraised value. Instead, they schemed to avoid the costs of the necessary cleanup and extract extra profit from the sale by conspiring to sell the land to the Ogles, who agreed to pay a premium above the appraised value and to indemnify Whaley and LD&S for the environmental issues at the site.

8. To carry out their scheme, the Webbs temporized for weeks with Plaintiffs' attorney—feigning that they were negotiating in good faith—and delayed the closing as long as they could to run out the clock on the option period, including by asking for the appraisal date to be pushed back. The Webbs waited until the initial April 1, 2024 closing date for the purchase option to pass (which the parties had agreed to extended to May 1, 2024), and on April 2, 2024, pretextually terminated the agreement, inexplicably claiming that they "desire[d] to terminate any further discussions regarding the Lessee's desire to purchase the premises."

53. Whaley and LD&S asserted similar bad-faith justifications for terminating the LD&S Agreement. In the Termination Letter, Whaley and LD&S claimed that "[t]he Purchase Option set forth in Section 22 of the LD&S Lease was exercised by that certain letter dated June 7, 2023 from Kacie McRee on behalf of the Lessee (the 'LD&S Exercise Notice'). The Closing Date set forth in said LD&S Exercise Notice was April 1, 2024, which date has now passed with neither a Closing nor satisfaction of my client's conditions for an extension of said Closing Date. Therefore, my client takes the position that the Purchase Option in the LD&S Lease is now expired as well." But as Whaley and LD&S well know, they had agreed to extend the Closing Date until May 1, 2024 and circulated draft PSAs memorializing that understanding.

54. The Webbs' decision to terminate these agreements in bad faith was done with the intent to harm Plaintiffs and punish them for having the audacity of asking the Webbs to split the cleanup fee to remediate the environmental issues on the property, and they did so with Ron and Betty Ogle, who had been scheming for weeks to sabotage Plaintiffs' business objectives and were all too eager to assist.

## III. The Ogles Announce Their Plan to Stop Plaintiffs' Development to Take the Land for Themselves

55. Ron and Betty Ogle are business owners and, upon information and belief, some of the largest landowners in Sevier County, with public records indicating that the Ogles own over 190 properties.

56. The Ogles own property at the corner of Middle Creek Road and Dolly Parton Parkway, including the Shell gas station, which sells alcohol and tobacco products, and the Parkway Plaza office/retail complex, both of which are near the DP Property. And from the outset, the Ogles were determined to prevent Plaintiffs from developing their business complex and opening a liquor store that would draw alcohol sales away from the Ogles' Shell station.