# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# KNOXVILLE DIVISION

| | | |
|---|---|---|
| **JESSICA STRODE,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | **No. 3:25-CV-00611** |
| **CITY OF SEVIERVILLE, TENNESSEE** | ) | |
| **Defendant.** | ) | |

## ANSWER

The Defendant City of Sevierville, Tennessee (the "City"), hereby appears, by and through counsel, and in answer to the Plaintiff's Complaint herein (the "Complaint") responds as follows:

1.      Responding to the allegations contained in Paragraph One (1) of the Complaint, the City admits only that the Plaintiff purports to bring this action under the Constitution of the United States (the "Constitution"), 42 U.S.C. §1983, and the Fourteenth Amendment of the Constitution, but it is denied that Plaintiff has stated any claim upon which relief can be granted.

2.      Responding to the allegations contained in Paragraph Two (2) of the Complaint, the City admits only that Plaintiff asserts claims that would be subject to the jurisdictional predicate of 28 U.S.C. §1331 and §1343, but for the reasons more fully explained *infra*, the City denies that Plaintiff has stated any claim upon which relief pursuant to the Constitution and 42 U.S.C. §1983 may be granted.

3.      Responding to the allegations contained in Paragraph Three (3) of the Complaint, the City denies that Plaintiff has stated any claims that would satisfy the core requirements of the exercise of supplemental jurisdiction over a state law claim.  For all of the reasons more fully explained below, including but not limited to the City's plea for this Court to abstain under the

*Burford* abstention doctrine,[1] the City affirmatively avers that supplemental federal jurisdiction of state law claims made in the Complaint must be denied pursuant to 28 U.S.C §1367(c).

4.      Responding to the allegations contained in Paragraph Four (4) of the Complaint, the City admits only that venue in this Court would be proper if Plaintiff had properly pled and supported federal claims.  For the reasons more fully explained herein, the City affirmatively avers that the Plaintiff has failed to plead and support independent federal claims upon which relief in this Court may be granted.

5.      Responding to the allegations contained in Paragraph Five (5) of the Complaint, the City admits on information and belief only that Plaintiff Jessica Strode is a Tennessee resident and a citizen of the United States.  For further answer to the remaining allegations contained in Paragraph Five (5) of the Complaint, the City denies that Plaintiff Jessica Strode has been at any time material a qualified applicant for a retail package store certificate of compliance, and it is affirmatively averred that Plaintiff lacks standing to bring this action.

6.      The allegations contained in Paragraph Six (6) of the Complaint are admitted.

7.      The allegations contained in Paragraph Seven (7) of the Complaint are admitted.

8.      The allegations contained in Paragraph Eight (8) of the Complaint are admitted.

9.      Responding to the allegations contained in Paragraph Nine (9) of the Complaint, the City denies those allegations.  For further answer to the allegations contained in Paragraph Nine (9) of the Complaint, the City affirmatively avers that Ordinance No. O-2023-015 (the "Ordinance"), a copy of which is attached as Exhibit 1 to the Complaint, is in writing, speaks for itself and contains certain mandatory requirements and certain discretionary requirements.  One example of a discretionary decision reserved to the City's Board of Mayor and Aldermen is found

---

[1] See **Burford v. Sun Oil Co.**, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

in Section 8-315(1) of the Ordinance which in part provides that "[I]f the number of previously issued outstanding certificates of compliance in a zone is fewer than the number authorized for that Zone, the Board of Mayor & Aldermen may in its discretion, direct the City Recorder to conduct an application lottery as set forth in Section 8-314 with such time limits for submission of applications as the Board may determine." Another example of a discretionary decision reserved to the Board of Mayor and Aldermen, pertinent to this case, is found in Section 8-315(4) of the Ordinance which provides that, "[A]ny applicant or applicant group who has obtained a certificate of compliance as provided herein must, ***unless an extension is granted by the Board of Mayor and Aldermen***, within twelve months open a retail package store in the City or said certificate will be revoked by the passage of this amount of time and a certification thereof will be sent to the Tennessee Alcoholic Beverage Commission." (Emphasis added).

10. The City denies the allegations contained in Paragraph Ten (10) of the Complaint. For further answer and explanation, the City affirmatively avers that, as stated in the City's answer to Paragraph Nine (9) of the Complaint, the Board of Mayor and Aldermen has discretionary, administrative decisionmaking power. Additionally, Section 8-306 of the Ordinance gives discretionary, administrative decisionmaking authority to codes officials and/or the City's Planning Commission for review and approval of building, fire and other codes compliance as well site plan approval by the Planning Commission.

11. Responding to the allegations contained in Paragraph Eleven (11) of the Complaint, and assuming that Plaintiff is referring to Zone 3 as the "relevant zone," it is admitted that the lottery resulted in Plaintiff Strode being designated as Applicant No. 5 in Zone 3.

12. Responding to the allegations contained in Paragraph Twelve (12) of the Complaint, the City denies that it "disqualified" any of the applicants. For further answer, the City

affirmatively avers that Plaintiff misapprehends the process by which an applicant was to be awarded a Certificate of Compliance. The lottery process was designed to first select an order in which an applicant's application would be reviewed and considered. The City reviewed the application of the first applicant drawn in the lottery and if that applicant qualified for the Certificate, the other applicants' applications simply were not vetted. In the case of Zone 3, the lottery applicant selected, KARS, LLC (Applicant No. 1), met the qualifications for the Certificate of Compliance in that zone, and the City did not formally review and determine the qualifications of Applicant Nos. 2 – 5. For further answer, the e-mail attached as Exhibit 2 to the Complaint, dated September 25, 2025 from the City to Plaintiff Strode[2] was sent more than a year and a half after KARS, LLC was issued the Certificate of Compliance effective February 12, 2024. A true and correct copy of the February 12, 2024 Certificate of Compliance issued to KARS, LLC (the Certificate") is attached hereto as Exhibit A. The e-mail attached as Exhibit 2 to the Complaint was in response to an inquiry from Plaintiff Strode. Said e-mail is in writing, speaks for itself, and does not state that Applicant Nos. 2, 3 and 4 were "disqualified." Nor does the e-mail state that Plaintiff Strode was a qualified applicant.[3]

13. Responding to the allegations contained in Paragraph Thirteen (13) of the Complaint, the City admits only that at the time its application was submitted, KARS, LLC did not have a fee simple ownership interest in the property at 750 Dolly Parton Parkway that is the site of the proposed liquor store (the "Property"). For further answer and explanation, the City affirmatively avers that proof of fee simple ownership of the property where the liquor store is to be sited is not required. The application process outlined in the Retail Package Store Online

---

[2] The e-mail to Plaintiff Strode was from Bob Stahlke, the City's Public Information Officer, with a copy being shown to Dustin Smith, City Administrator.
[3] For the reasons stated *infra*, Plaintiff Strode would not have been a qualified applicant had all prior applicants been disqualified.

Application Process and Retail Package Store Certificate of Compliance Application contemplates that the applicant provide to the City proof of "the right to possess the premises." A true and correct copy of the Retail Package Store Online Application Process and Retail Package Store Certificate of Compliance Application is attached hereto as Collective Exhibit B.

14.      Responding to the allegations in Paragraph Fourteen (14) of the Complaint, the City denies said allegations and adopts, restates and incorporates herein its answer to Paragraph Thirteen (13) above. For further answer, the City affirmatively avers that the following items were furnished to it by KARS, LLC as support for KARS, LLC's right to possess the premises:

> a.      the Ground Lease Agreement entered into between Whaley Properties, Inc. (the "Lessor"), Rocky Top Ford Lincoln, LLC (the "Lessee") and H. Richard Lewellen, Jr. (the "Guarantor") on April 1, 2019 (see Exhibit 3 to the Complaint), and the Letter of Intent between Rocky Top Ford, LLC and KARS, LLC d/b/a The Bottle Shop, a true and correct copy of which is attached hereto as Exhibit C;

> b.      a fully executed Memorandum of Leased Premises dated February 16, 2024 recorded in the Sevier County, Tennessee at Bk/PG:6463/120-121, a true and correct copy of which is attached hereto as Exhibit D;

> c.      a true and correct copy of the complete lawsuit styled ***KARS, LLC, Robert Henderson Development 1, LLC, Rocky Top Ford Lincoln, LLC v. Ronald W. Ogle, Betty M. Ogle, Whaley Properties, Inc., LD&S TN, LLC, Daniel L. Webb, Lynn T. Webb;*** Sevier County Chancery Court No. 24-5-106 filed

5

May 25, 2024, less the exhibits thereto (hereinafter referred to as the "KARS, LLC Lawsuit"), is attached hereto as Exhibit E;[4] and

d.    General Warranty Deed from Grantor Betty Ogle to Robert Henderson Development 1, LLC dated July 23, 2025 and recorded in the Sevier County Register of Deeds Office as Instrument #25020004, a true and correct copy of which is attached hereto was Exhibit F.

15.    The allegations contained in Paragraph Fifteen (15) of the Complaint are denied. For further answer, the City affirmatively avers that the KARS, LLC Lawsuit was filed by the Plaintiffs, all of whom share common owners, to vindicate their ownership and/or leasehold rights in the Property. The KARS, LLC Lawsuit forms the basis for the two extensions of time given to KARS, LLC by the City and ultimately resulted in Plaintiff Robert Henderson Development 1, LLC securing ownership of the Property in which KARS, LLC is to have a leasehold interest. (See Paragraph Fourteen (14) of this Answer and Exhibit F hereto).

16.    The City denies the allegations contained in Paragraph Sixteen (16) of the Complaint. For further answer and explanation, the City denies that any rights, legal, equitable or otherwise of KARS, LLC, Robert Henderson Development 1, LLC and/or Rocky Top Ford Lincoln expired on April 1, 2024. What Plaintiff erroneously claims in Paragraph Sixteen (16) is an admission made by KARS, LLC in paragraph 53 of the KARS, LLC Lawsuit is incorrect and misleading as said paragraph 53 is a quote from a questionable and contested Termination Letter issued by Whaley Properties, Inc. and LD&S, TN, LLC and not an admission.

---

[4] This is the same lawsuit referred to in Paragraph Sixteen (16) of the Complaint to which three excerpted pages are attached as Exhibit 4 thereto. The complete copy of the KARS, LLC Lawsuit (without the exhibits) attached as Exhibit E hereto explains that Plaintiffs KARS, LLC, Robert Henderson Development 1, LLC, and Rocky Top Ford, LLC share common owners. (See KARS, LLC Lawsuit, Paragraph 2).

17.     Responding to the allegations contained in Paragraph Seventeen (17) of the Complaint, the City admits only that the recorded Memorandum of Leased Premises identified Whaley Properties, Inc. as the Owner, Rocky Top Ford Lincoln, LLC as the Landlord and KARS, LLC as a tenant under a ground lease.  For further answer, the City avers that subsequent actions by Whaley Properties, Inc. and that other defendants named in the KARS, LLC Lawsuit, occurring after the Memorandum of Leased Premises was entered into and recorded, resulted in the necessity of KARS, LLC and the other plaintiffs in the KARS, LLC Lawsuit having to file suit to vindicate their rights.

18.     Responding to the allegations contained in Paragraph Eighteen (18) of the Complaint, the City admits only that it responded to a public records request made by Robert F. Croskery on or about November 12, 2025.  For further answer, the City affirmatively avers that the documents provided in response to the public records request are in writing and speak for themselves.  For the reasons more fully disclosed herein, the City denies that Applicant No. 1, KARS, LLC, ever lost control of the Property and further denies that KARS, LLC at any time material failed to notify the City of its filing of the KARS, LLC Lawsuit.

19.     Responding to the allegations contained in Paragraph Nineteen (19) of the Complaint, the City denies that the Certificate of Compliance was issued to KARS, LLC on January 12, 2024.  It is affirmatively averred that the Certificate of Compliance was issued on February 12, 2024 to KARS, LLC by the City after approval by the City's Board of Mayor and Aldermen on February 12, 2024.  (See Exhibit A attached hereto).  For further answer, the City denies that the exercise of an option to purchase was required to demonstrate proof of the "right to control the premises."  Moreover, as previously discussed, KARS, LLC timely and expeditiously acted to vindicate its rights by filing the KARS, LLC Lawsuit on May 25, 2024 against several

defendants who it believed conspired to collaterally attack and deprive KARS, LLC and the other plaintiffs of their existing rights to own and/or control the premises.

20.     The allegations contained in Paragraph Twenty (20) of the Complaint are denied. The City affirmatively avers that prior to February 12, 2025, KARS, LLC requested an extension of time permitted under Section 8-315(4) of the Ordinance on January 8, 2025, wherein it advised the City Administrator that it was engaged in litigation (the KARS, LLC Lawsuit) to vindicate its right to control the premises. The request for extension for one (1) year to February 12, 2026 was granted by the Board of Mayor and Aldermen on January 17, 2025. True and correct documents evidencing KARS, LLC's request for an extension and the City's approval of said request are attached hereto as Collective Exhibit G.

21.     The allegations contained in Paragraph Twenty-One (21) of the Complaint are denied by the City. For further answer, the City affirmatively avers that KARS, LLC requested a second extension of time well prior to the expiration of the first extension on the basis that it had successfully vindicated and ratified its right to control the premises and could proceed with construction. The second request was made on July 11, 2025 and approved for a one (1) year extension to February 12, 2027 by the Board of Mayor and Aldermen at its regularly scheduled meeting on August 4, 2025. True and correct documents evidencing the second request for extension and the City's approval of said extension are attached hereto as Collective Exhibit H.

22.     The allegations contained in Paragraph Twenty-Two (22) of the Complaint are denied. For further answer, the City affirmatively maintains that Section 8-315(4) of the Ordinance contains language granting discretion to the Board of Mayor and Aldermen to grant extensions of time and that the extensions were providently granted by the City.

23.     Responding to the allegations in Paragraph Twenty-Three (23) of the Complaint, the City denies that it violated any terms of the Ordinance and denies that Plaintiff was the "next qualified applicant."  For further answer, the City adopts, restates and incorporates its answer to Paragraph Twelve (12) of the Complaint.  For further answer, the City affirmatively avers that Plaintiff would not have been considered a qualified applicant had KARS, LLC and Applicant Nos. 2, 3 and 4 been disqualified because Plaintiff's application was not complete at the time the application deadline had passed.  Plaintiff's application did not provide the following required information as set out in the Retail Package Store Online Application Process and Retail Package Store Certificate of Compliance Application (See Collective Exhibit B):

- Proof of right to possess the premises
- Copy of government-issued ID
- Personal finance statement
- Credit check for each owner
- Previous two years of tax returns
- Previous three months of bank statements

24.     Responding to the allegations contained in Paragraph Twenty-Four (24) of the Complaint, the City denies any alleged "non compliance," any violations of the Ordinance and/or otherwise committing an error in granting KARS, LLC the Certificate of Compliance and/or granting extensions to open a retail package store on the Property.

25.     Responding to the allegations contained in Paragraph Twenty-Five (25) of the Complaint, the City denies that it had a duty to award Plaintiff a liquor store license.  For further answer, the City is without sufficient knowledge or information to form a belief as to the truth and/or accuracy of the allegations of certain actions allegedly taken by the Plaintiff in reliance on the Ordinance, and strict proof of said allegations is demanded if deemed relevant.  The City

affirmatively avers that any alleged reliance on the Ordinance by the Plaintiff to be awarded a liquor store license was unreasonable and unwarranted.

26.     The allegations contained in Paragraph Twenty-Six (26) of the Complaint are denied.

27.     The allegations contained in Paragraph Twenty-Seven (27) of the Complaint are admitted.

28.     Responding to the allegations contained in Paragraph Twenty-Eight (28) of the Complaint, the City admits only that the City attorney, Ed Owens, wrote a letter to Plaintiff's attorney dated November 19, 2025 (the "Owens Letter"), a copy of which is attached to the Complaint as Exhibit 9.  For further answer, the City affirmatively avers that the Owens Letter is in writing and speaks for itself.  The City denies Plaintiff's claims alleged in the October 27, 2025 letter from Plaintiff's counsel to the City were not investigated.  The City affirmatively avers that the October 27, 2025 letter from Plaintiff's counsel contained multiple misstatements of fact and conclusions of law, several of which misstatements have been pointed out in this Answer.  The City denies any and all allegations that KARS, LLC (Applicant No. 1) ever lost control of the premises upon which the liquor store is approved to be located.

29.     The allegations contained in Paragraph Twenty-Nine (29) of the Complaint are denied.  For further answer, the City affirmatively avers the decisions made by the City's Board of Mayor and Aldermen approving and granting a Certificate of Compliance to KARS, LLC d/b/a The Bottle Shop and two extensions of time permitted in Section 8-315(4) of the Ordinance for

KARS, LLC to open a retail package store are administrative decisions, judicial review of which is authorized under state law certiorari review statutes.[5]

30.     Responding to the allegations contained in Paragraph Thirty (30) of the Complaint, the City adopts and reaffirms its answers to Paragraphs One (1) through Twenty-Nine (29) of this Answer the same as if restated verbatim herein.

31.     The allegations contained in Paragraph Thirty-One (31) of the Complaint are denied.

32.     The allegations contained in Paragraph Thirty-Two (32) of the Complaint are denied.

33.     The allegations contained in Paragraph Thirty-Three (33) of the Complaint are denied.

34.     The allegations contained in Paragraph Thirty-Four (34) of the Complaint are denied.

35.     Responding to the allegations contained in Paragraph Thirty-Five (35) of the Complaint, the City adopts and reaffirms its answers to Paragraphs One (1) through Thirty-Four (34) of this Answer the same as if restated verbatim herein.

36.     The allegations contained in Paragraph Thirty-Six (36) of the Complaint are denied.

---

[5] The City's Board of Mayor and Aldermen was acting in an administrative and quasi-judicial capacity, and not in a legislative capacity, when the approvals were made, and the exclusive remedy in such an instance is certiorari review.  "A variety of agency decisions not necessarily made in conformity with judicial conventions have been deemed administrative or quasi-judicial decisions reviewable via a petition for writ of certiorari." **McFarland v. Pemberton**, 530 S.W.3d 76, 104 (Tenn. 2017) See also **McCallen v. City of Memphis**, 786 S.W.2d 640-41 (holding that decision of city council approving zoning of development was administrative or quasi-judicial and thus reviewable under a common law writ of certiorari… .);  **Rama, Inc. v. City of Chattanooga**, No. E2022-01506-COA-R3-CV, 2023 WL 6532679 at *3 (Tenn. Ct. App. Oct 6, 2023) ("This Court concludes that the City Council was performing an administrative function rather than a legislative one by denying the Special Exceptions Permit [to operate a liquor store], because it applied existing law rather than making new law… .").

37.     The allegations contained in Paragraph Thirty-Seven (37) of the Complaint are denied.

38.     The allegations contained in Paragraph Thirty-Eight (38) of the Complaint are denied.  For further answer, the City affirmatively avers Plaintiff at all times material had the state law remedy of certiorari review of the City's Board of Mayor and Aldermen actions taken in approving the Certificate of Compliance and the two extensions of time pursuant to Tenn. Code Ann. §27-8-101, *et seq*. and/or Tenn. Code Ann. §27-9-101, *et seq*. within the prescribed time period set out therein.

39.     The allegations contained in Paragraph Thirty-Nine (39) of the Complaint are denied.

40.     Responding to the allegations contained in Paragraph Forty (40) of the Complaint, the City adopts and reaffirms its answers to Paragraphs One (1) through Thirty-Nine (39) of this Answer the same as if restated verbatim herein.

41.     The allegations contained in Paragraph Forty-One (41) of the Complaint are denied.

42.     The allegations contained in Paragraph Forty-Two (42) of the Complaint are denied.

43.     The allegations contained in Paragraph Forty-Three (43) of the Complaint are denied.

44.     Responding to the allegations contained in Paragraph Forty-Four (44) of the Complaint, the City adopts and reaffirms its answers to Paragraphs One (1) through Forty-Three (43) of this Answer the same as if stated verbatim herein.

45.     The allegations contained in Paragraph Forty-Five (45) of the Complaint are denied.  For further answer, the City affirmatively avers that the Ordinance is in writing and speaks

for itself, and the City denies any allegations, conclusory or otherwise, stated in the Complaint that are contrary to and/or inconsistent with the plain and ordinary meaning of the Ordinance and/or Resolution R-2023-014 passed by the Board of Mayor and Aldermen on November 20, 2023 establishing an administrative application and selection process for approval of liquor stores in the City of Sevierville. A true and correct copy of Resolution R-2023-014 is attached hereto as Exhibit I.

46.     The allegations contained in Paragraph Forty-Six (46) of the Complaint are denied. For further answer, the City affirmatively avers that the Ordinance is in writing and speaks for itself, and the City denies any allegations, conclusory or otherwise stated in the Complaint that are contrary to and/or inconsistent with the plain and ordinary meaning of the Ordinance and/or Resolution R-2023-014 passed by the Board of Mayor and Aldermen on November 20, 2023 establishing an administrative application and selection process for approval of liquor stores in the City of Sevierville. A true and correct copy of Resolution R-2023-014 is attached hereto as Exhibit I.

47.     Responding to the allegations contained in Paragraph Forty-Seven (47) of the Complaint, the City denies that Plaintiff's alleged reliance was reasonable or warranted. For further answer, the City affirmatively avers it complied with the Ordinance, Resolution R-2023-014 and the administration of the application process by which KARS, LLC was awarded a Certificate of Compliance and extensions of time to open a retail package store on the Property.

48.     The allegations contained in Paragraph Forty-Eight (48) of the Complaint are denied.

49.     The allegations contained in Paragraph Forty-Nine (49) of the Complaint are denied.

50.     Responding to the allegations contained in Paragraph Fifty (50) of the Complaint, the City denies Plaintiff is entitled to any declaratory relief.  For further answer, the City denies that Plaintiff is entitled to any relief of any kind in this action.

51.     Responding to the allegations contained in Paragraph Fifty-One (51) of the Complaint, the City denies that Plaintiff is entitled to an injunction of any kind, preliminary or otherwise.

52.     Responding to the allegations contained in Paragraph Fifty-Two (52) of the Complaint, the City denies that Plaintiff is entitled to any injunctive relief whatsoever.

53.     The City affirmatively avers that Plaintiff lacks standing to bring this action inasmuch as Plaintiff's application was incomplete and insufficient at the time the application deadline had passed for the reasons set forth in Paragraph Twenty-Three (23) of this Answer and, as such, Plaintiff was never a qualified applicant and has no standing to bring this suit.

54.     The City affirmatively avers that Plaintiff's Complaint fails to state a claim upon which relief can be granted pursuant to the due process clause of the Fourteenth Amendment. There is no cause of action under federal law premised upon the theory that a governmental entity or governmental actor purportedly failed to comply with provisions of state and local law.[6]

---

[6] The Plaintiff appears to be predicating her due process claims upon the City's supposed failure to follow certain provisions of the Ordinance by approving KARS, LLC's Certificate of Compliance and/or approving two extensions of time for KARS, LLC to open a retail package store on the Property.  However, there can be no due process claim where a plaintiff relies on a state actor's failure to comply with state law. The Sixth Circuit in Huron Valley Hosp., Inc. v. City of Pontiac, 887 F.2d 710 (6th Cir. 1989) considered whether a plaintiff could proceed under § 1983 alleging a violation of due process where Michigan officials failed to abide by Michigan statutory requirements in evaluating a hospital's certificate of need application. The Sixth Circuit held:

> Section 1983 authorizes the courts to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws" that occur under color of state law. The statute is thus limited to deprivations of *federal* statutory and constitutional rights. It does not cover official conduct that allegedly violates *state* law. See *Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979) (dealing with state tort law). Section 1983 also does not cover state constitutional violations that are not also federal constitutional deprivations.

55.     The City further affirmatively avers that, to the extent the Plaintiff seeks to use the due process claim as a conduit to litigate over novel issues of Tennessee law, it is appropriate for this Court to abstain pursuant to ***Burford v. Sun Oil Co.***, 319 U.S.315 (1943).[7]

56.     The City affirmatively avers that Plaintiff failed to pursue the state law remedy of certiorari review of the City's Board of Mayor and Aldermen's actions taken in approving the Certificate of Compliance and the two extensions of time pursuant to Tenn. Code Ann. §27-8-101,

---

Id. at 714 (emphasis present in original). The Sixth Circuit held that claims alleging a state actor's negligent noncompliance with state law and procedure would sound under state rather than federal law and could not be remedied under § 1983. Id. at 716.  Plaintiffs may not bring suit under § 1983 based upon the allegation that a state actor failed to abide by state law in effectuating a seizure of property. For example, in Neinast v. Bd. of Trustees of Columbus Metro. Library, 190 F. Supp. 2d 1040 (S.D. Ohio 2002) aff'd, 346 F.3d 585 (6th Cir. 2003), the District Court held:

> Plaintiff's remaining procedural [due process] argument is that the Board exceeded its statutory authority under O.R.C. § 3375.40, which is its authorizing statute. But this is a question of state law, and mere allegations of state law are not sufficient to state a claim under § 1983. *See Huron Valley Hosp. Inc. v. Pontiac,* 887 F.2d 710, 714 (6th Cir.1989) (section 1983 "does not cover official conduct that allegedly violates state law"). As Neinast's procedural due process arguments are based not on a constitutional right but on state statutory interpretation, they fail to state a claim upon which relief can be granted under § 1983.

Id. at 1047-48; see also Graham v. Tennessee Secondary Sch. Athletic Ass'n, No. 1:95-CV-044, 1995 WL 115890, at *3 (E.D. Tenn. Feb. 20, 1995) ("Section 1983 does not apply to official conduct that allegedly violates only state law.").

[7] This Court should abstain under the *Burford* abstention doctrine if it involves adjudication of important questions of state law. "When the exercise of federal jurisdiction is so disruptive of state efforts to establish a coherent, unified regulatory policy over a subject of weighty enough importance to the state, the federal court should decline to decide the case." *William Powell Co. v. Nat'l Indem. Co.,* 18 F.4th 856, 864 (6th Cir. 2021). "*Burford* established a discretionary rule of federal abstention that reflects 'principles of federalism and comity.'" *Id.* (citing *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 562 (6th Cir. 2010)). *Burford* applies where the matter primarily concerns questions regarding state law. *Id.* at 865 (citing *Tucker v. First Md. Sav. & Loan, Inc.*, 942 F.2d 1401, 1407 (9th Cir. 1991) ("Burford abstention is designed to limit federal interference with the development of state policy. It is justified where the issues sought to be adjudicated in federal court are primarily questions regarding that state's laws.")).

*et seq.*, and/or Tenn. Code Ann. §27-9-101, *et seq.* within the prescribed time period set out therein. The City affirmatively avers that certiorari review is the exclusive remedy in this case.[8]

57. To the extent the Plaintiff attempts to maintain any action pursuant to the Tennessee Constitution, it is affirmatively averred that there is no private right of action for damages under the terms of the Tennessee Constitution.

58. To the extent the Plaintiff maintains any claims pursuant to the Tennessee common law, the same are governed by the terms of the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. §29-20-101, *et seq.* and are restricted by the immunities contained therein.

59. To the extent the Plaintiff maintains any claims pursuant to the Tennessee common law, the same are barred by the doctrine of sovereign immunity.

60. The City affirmatively avers that the claims maintained by the Plaintiff are without merit, and this action should be dismissed.

---

[8] Plaintiff had the right to seek review via common law certiorari in Tennessee state court. Common law certiorari is the appropriate remedy to review the decision of an administrative official or body making a quasi-judicial or administrative decision. See footnote 5, *supra*. See also *State ex rel. Moore & Assoc., Inc. v. West*, 246 S.W.3d 569, 575 (Tenn. Ct. App. 2005). A quasi-judicial or administrative decision of a governmental body of official must be challenged by the common law writ of certiorari, and is subject to the time limitations and procedural requirements of that statute. *Duracap Asphalt Paving Co. Inc. v. City of Oak Ridge*, 574 S.W.3d 859, 864 (Tenn. Ct. App. 2018). A declaratory judgment action is not a substitute for certiorari, but is available only to challenge legislative rather than administrative decisions. *Duracap*, 574 S.W.3d at 863-871. Plaintiff did not timely seek certiorari review, and has waived her right to obtain judicial review under Tennessee law. A strictly applied sixty day statute of limitations period applies to common law certiorari review, and litigants must comply with specific pleading and verification requirements. *See Bd. of Prof'l Responsibility of Tennessee Supreme Court v. Cawood*, 330 S.W.3d 608, 609 (Tenn. 2010); *Blair v. Tennessee Bd. of Prob. & Parole*, 246 S.W.3d 38, 41 (Tenn. Ct. App. 2007). Plaintiff had an ample state remedy available, but chose not to pursue it, and the time to do so has now expired. It may not repair to federal court, seeking to constitutionalize state administrative law and avoid the application of state statute of limitations and procedural requirements. The Complaint itself is deficient. It does not contain the foundational allegation that state remedies were inadequate. Even if the claim were adequately pled, it would be of no avail to Plaintiff because Tennessee's common law writ of certiorari, which permits a stay of the administrative decision through the writ of supersedeas, is an adequate state remedy. *See Project Reflect, Inc. v. Metro. Nashville Bd. of Pub. Educ.*, 947 F. Supp. 2d 868, 876-77 (M.D. Tenn. 2013); *Adams v. Galloway*, No. 04-2605-B/AN, 2006 WL 1645252, at *1 (W.D. Tenn. June 8, 2006). Plaintiff cannot meet an essential element of her claim, and her due process claim should be dismissed.

61.     The City affirmatively avers that it should be awarded its attorney fees pursuant to 42 U.S.C. §1988.

62.     The City affirmatively avers Plaintiff has failed to join an indispensable party. KARS, LLC is an indispensable party because it has been granted a Certificate of Compliance and, upon information and belief, has begun site preparation and construction of the premises upon the Property where the approved liquor store is to be built.  Paragraph Fifty (50), subparagraph B, seeks a declaration that KARS, LLC's Certificate of Compliance should be declared void.  Fed R. Civ. P. 19 applies in this case making KARS, LLC an indispensable party, and Plaintiff's failure to bring KARS, LLC in as a party defendant should result in dismissal of the Complaint.

63.     The City affirmatively avers that this action fails to state a claim upon which relief can be granted and should be dismissed.

64.     To the extent any allegations in this Complaint have not been fully responded to, the same are denied as if explicitly set out herein.

Respectfully submitted this 5th day of February, 2026.

CITY OF SEVIERVILLE, TENNESSEE


By: /s/John T. Batson, Jr., BPR No. 009890
      JOHN T. BATSON, JR, BPR NO. 009890
      Attorney for Defendant
      Watson, Roach, Batson, & Lauderback, P.L.C.
      P.O. Box 131
      Knoxville, TN 37901-0131
      (865) 637-1700
      jbatson@watsonroach.com

17

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system:

Robert F. Croskery
Croskery Law Offices
The Highland Towers No. 2200
1017 Celestial Street
Cincinnati, OH 45202
rcroskery@croskerylaw.com

Dated this 5th day of February, 2026.

/s/John T. Batson, Jr., BPR No. 009890
JOHN T. BATSON, JR, BPR NO. 009890
Attorney for Defendant
Watson, Roach, Batson, & Lauderback, P.L.C.
P.O. Box 131
Knoxville, TN 37901-0131
(865) 637-1700
jbatson@watsonroach.com