**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE (KNOXVILLE)**

| | |
|---|---|
| **JESSICA STRODE**<br>**Plaintiff,**<br><br>**v.**<br><br>**CITY OF SEVIERVILLE,**<br>**Defendant** | **: CASE NO. 3:25-cv-00611-KAC-DCP**<br><br>**: PLAINTIFF'S MOTION FOR PRELIMINARY**<br>**: AND PERMANENT INJUNCTIVE RELIEF**<br>**:** |

Plaintiff respectfully moves this Court pursuant to Rule 65 of the Federal Rules of Civil Procedure for the entry of a preliminary injunction prohibiting Defendant City of Sevierville from issuing, recognizing, or permitting the operation of any retail package store certificate of compliance within District 3 pending final disposition of this action, and, following trial on the merits, for the entry of a permanent injunction consistent with the relief requested in the Complaint. This Honorable Court should GRANT the Motion for the reasons stated in the accompanying Memorandum.

Respectfully submitted,


/s/ *Robert F. Croskery*
Robert F. Croskery (Tenn Bar #040689)
Attorney for Plaintiff
Croskery Law Offices
The Highland Towers, No. 2200
Cincinnati, Ohio 45202
(513)232-5297
rcroskery@croskerylaw.com

## I. INTRODUCTION

Plaintiff's instant Motion for Injunctive Relief arises not from a mere disagreement over public policy, but from the Defendant City's failure to administer and apply the very rules it adopted to govern the issuance of retail package store certificates of compliance, and the resulting immediate, irreparable harm to the Plaintiff if Defendant is not restrained.

The City of Sevierville enacted Ordinance O-2023-015 and Resolution R-2023-014 establishing an objective lottery process, mandatory eligibility requirements, and a succession procedure governing applicants for retail package store certificates of compliance. Plaintiff Jessica Strode entered that process, paid the required application fee, and relied upon the City's published rules.

Time and further inquiry has confirmed what Plaintiff reasonably suspected when this action was filed. After the legal predicate supporting Applicant No. 1's certificate materially failed, the City did not simply administer its previously enacted rules. Instead, it repeatedly acted to preserve Applicant No. 1's position while refusing to recognize Plaintiff's rights under the original Resolution. In the process, the City amended its governing Resolution, granted extensions, and continued recognizing Applicant No. 1 despite objective facts which Plaintiff contends triggered the mandatory revocation provisions of the City's own ordinance.

Construction of the proposed package store is now actively underway. Absent immediate injunctive relief, Defendant's continuing actions threaten to render this Court's ultimate judgment largely ineffectual by depriving this Court of its ability to afford meaningful relief.

Plaintiff satisfies each of the traditional prerequisites for injunctive relief. She has demonstrated a substantial likelihood of success on the merits, immediate and irreparable injury absent injunctive relief, that the balance of hardships favors preserving the status quo, and that

the requested injunction serves the public interest by ensuring that municipalities faithfully administer duly enacted ordinances according to their terms. Accordingly, Plaintiff respectfully requests that this Court issue a preliminary injunction preserving the status quo pending final adjudication and, following trial on the merits, enter a permanent injunction requiring Defendant to administer Ordinance O-2023-015 and Resolution R-2023-014 in accordance with their terms and consistent with Plaintiff's constitutional rights.

## II. STANDARD GOVERNING PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

Rule 65 of the Federal Rules of Civil Procedure authorizes federal courts to issue preliminary and permanent injunctive relief where necessary to preserve the parties' rights and prevent irreparable injury pending final adjudication. A preliminary injunction is "an extraordinary remedy" that should be granted only where the moving party demonstrates that the circumstances clearly warrant such relief.

In determining whether preliminary injunctive relief should issue, the Court balances four familiar factors: (1) whether the movant has demonstrated a strong likelihood of success on the merits; (2) whether the movant will suffer immediate and irreparable injury absent an injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the requested relief. ***Overstreet v. Lexington-Fayette Urban County Government***, 305 F.3d 566, 573 (6th Cir. 2002). These factors are not rigid prerequisites but are interrelated considerations to be balanced by the Court in exercising its equitable discretion. ***Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.***, 511 F.3d 535, 542 (6th Cir. 2007).

The purpose of a preliminary injunction is to preserve the relative positions of the parties

until the merits of the controversy can be fully adjudicated, thereby ensuring that the Court retains the ability to grant meaningful relief should the moving party ultimately prevail. ***University of Texas v. Camenisch***, 451 U.S. 390, 395 (1981).

As demonstrated below, Plaintiff satisfies each of these factors. Discovery has substantially clarified the factual record since the filing of the Complaint, confirming Plaintiff's substantial likelihood of success on the merits. Ongoing construction and the imminent opening of another retail package store within District 3 threaten irreparable harm that cannot be adequately remedied through monetary damages alone. The balance of equities favors preserving the status quo while this Court determines the legality of Defendant's actions, and the public interest is served by requiring governmental entities to faithfully administer their duly enacted ordinances according to their terms.

## III. THE UNDISPUTED FACTS RELEVANT TO PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF

This Motion follows preliminary discovery, including Defendant's Answer, Rule 26 disclosures, production of public records, and additional investigation conducted after the filing of the Complaint. Those materials materially clarify the factual record and establish the need for immediate injunctive relief.

### A. The City Adopted the Governing Ordinance and Resolution

In October 2023, Defendant City enacted Ordinance O-2023-015 authorizing retail package stores within designated zones of the City. Thereafter, the City adopted Resolution R-2023-014 establishing the administrative application and lottery process governing issuance of retail package store certificates of compliance. The City admits both enactments govern the application process at issue in this litigation and attached Resolution R-2023-014 to its Answer. See

ANSWER (doc 10, ¶¶. 9,10.)

The City acknowledges that Ordinance O-2023-015 contains both mandatory provisions and provisions reserving discretion to the Board of Mayor and Aldermen, including the authority to conduct the application lottery and to grant extensions under specified circumstances. See ANSWER (doc 10, Para 12.)

**B. The Lottery Established Plaintiff's Position**

Plaintiff timely submitted her application, paid the required application fee, and entered the lottery in reliance upon the City's published procedures. Strode Aff. I, ¶¶ 2-3. The City admits that a lottery was conducted pursuant to the Resolution and that Plaintiff Jessica Strode was designated Applicant No. 5 within Zone 3. The City further states that the lottery was intended to establish the order in which applications would be reviewed and considered. See ANSWER (doc 10, ¶¶. 11,12.) Following the lottery, Plaintiff reasonably understood that if higher-ranked applicants became ineligible or otherwise failed to satisfy the City's requirements, the Resolution governed the order in which remaining applicants would be considered. Strode Aff. I, ¶¶ 4-5.

**C. Applicant No. 1 Received the Certificate of Compliance**

The City issued a Certificate of Compliance to Applicant No. 1, KARS, LLC, effective February 12, 2024. See ANSWER (doc 10, ¶ 13.) The City further admits that KARS, LLC did not possess fee simple ownership of the proposed property when its application was submitted, but contends that the application process required only proof of the applicant's "right to possess the premises." See ANSWER (doc 10, ¶ 13.) The City identifies the Ground Lease Agreement, the recorded Memorandum of Leased Premises, and the subsequently filed Chancery Court litigation as the documents supporting its position. See ANSWER (doc 10, ¶ 14.)

**D. Subsequent Events**

The City admits that litigation concerning Applicant No. 1's interest in the proposed property was filed in Sevier County Chancery Court and further acknowledges that the existence of that litigation formed the basis for the extensions subsequently granted to Applicant No. 1. See ANSWER (doc 10, ¶ 15).

The City further admits that it granted extensions permitting Applicant No. 1 additional time to open the proposed retail package store and contends those extensions were authorized under Section 8-315(4) of the Ordinance. See ANSWER (doc 10, ¶¶ 20, 21.) Plaintiff thereafter undertook substantial efforts to prepare for operation of a retail package store, including completing required management training, forming an LLC, obtaining architectural revisions, soliciting contractor estimates, and interviewing prospective employees. Strode Aff. I, ¶ 6.

**E. Plaintiff's Inquiry and the City's Position**

After learning of the developments concerning Applicant No. 1, Plaintiff repeatedly contacted City officials regarding the status of her application and the remaining lottery applicants. Strode Aff. I, ¶¶ 7-9. On September 25, 2025, the City's Public Information Officer, relaying information from City Administrator Dustin Smith, advised Plaintiff that Applicants Nos. 2, 3, and 4 "did not meet the distance requirements from a church and/or school." See Affidavit of Jessica Strode, ¶ 9.

In its Answer, however, the City explains that those applicants were never formally reviewed because Applicant No. 1 was selected first in the lottery and issued the Certificate of Compliance. The City therefore disputes Plaintiff's characterization that Applicants Nos. 2 through 4 were formally "disqualified." See ANSWER (doc 10, ¶ 12.)

## F. Current Status

The City maintains Plaintiff never became a qualified applicant. See Answer (Doc. 10, ¶ 23). The City claims that the Board lawfully exercised its authority in granting extensions. See Answer (Doc. 10, ¶¶ 20-22). Moreover, the City claims that Plaintiff's exclusive remedy was review by writ of certiorari. See Answer (Doc. 10, ¶¶ 29, 38, 56).

Since the filing of the Complaint, however, construction of the proposed retail package store has substantially progressed. Plaintiff's supplemental affidavit and accompanying exhibits demonstrate that construction is actively underway and that, absent immediate injunctive relief, completion of the project threatens to impair this Court's ability to afford meaningful relief should Plaintiff prevail. Plaintiff has personally observed that construction of the proposed retail package store has advanced substantially since this action was filed, with footers being poured, under the plans filed with the City. Strode Aff. II, ¶¶ 3, 4 and Ex. B.

# IV. LAW AND ARGUMENT

The operative facts underlying Plaintiff's request for injunctive relief are now largely undisputed. The principal issues before the Court concern the legal consequences of those facts under Ordinance O-2023-015, Resolution R-2023-014, and the United States Constitution.

## A. The Plaintiff Demonstrates that She is Likely to Succeed on the Merits

### 1. The City Exercised Its Legislative Discretion When It Enacted Ordinance O-2023-015 and Resolution R-2023-014.

Municipal governments possess broad legislative discretion to determine whether retail package stores should be authorized, how many certificates should be issued, the districts in which such stores may operate, and the procedures governing the selection of successful applicants. Plaintiff does not challenge the City's authority to make those legislative judgments.

Indeed, the City properly exercised that discretion when it enacted Ordinance O-2023-015 and adopted Resolution R-2023-014, based upon a public vote. Those enactments established the governing legal framework for issuance of retail package store certificates of compliance, including the lottery process, applicant eligibility requirements, the circumstances under which certificates could be revoked or extended, and the procedures governing the succession of applicants. See Answer (Doc. 10, ¶¶ 9-12).

Having exercised its legislative discretion by adopting those objective rules, the City assumed the corresponding obligation to administer them according to their terms. Those rules reflected the legislative policy adopted by the City's elected representatives pursuant to the authority granted by the voters. While the Ordinance expressly reserves discretion in certain limited circumstances—including whether to grant extensions—it likewise imposes mandatory duties once specified objective conditions occur. The existence of discretionary authority in one portion of the Ordinance does not authorize the City to disregard mandatory provisions contained elsewhere in the same enactment.

Plaintiff's claims therefore do not challenge the wisdom of the City's legislative decisions. Rather, they challenge Defendant's subsequent administration of the legal framework the City itself adopted. The central issue before this Court is not whether the City possessed legislative discretion in 2023. It plainly did. The question is whether, after exercising that discretion by adopting Ordinance O-2023-015 and Resolution R-2023-014, the City could later depart from those governing enactments when the objective events prescribed therein occurred.

**2. The Original Resolution Established an Objective Lottery and Order of Succession.**

Having determined that retail package stores would be authorized within designated

districts, the City chose to allocate those opportunities through an objective lottery rather than through subjective evaluation of competing applicants. Resolution R-2023-014 established a numerical ranking of applicants within each district and prescribed the manner in which certificates of compliance would thereafter be administered. See Resolution R-2023-014; Answer (Doc. 10, ¶¶ 9-12).

The significance of the lottery extended beyond the initial selection of Applicant No. 1. The Resolution established an ordered sequence of applicants that governed the administration of certificates as later events occurred. Indeed, the City's own Answer acknowledges that the lottery "was intended to establish the order in which applications would be reviewed and considered." See Answer (Doc. 10, ¶ 12). Plaintiff entered the lottery in reliance upon that published process and reasonably understood that, should higher-ranked applicants fail to satisfy the City's requirements, the Resolution governed the order in which remaining applicants would be considered. Strode Aff. I, ¶¶ 2-5.

This objective structure served important governmental purposes. It promoted transparency, eliminated favoritism in the selection process, and ensured that all applicants competed under the same published rules. Once the lottery established each applicant's position, the Resolution supplied an objective framework for administering subsequent events, including the revocation of certificates and the succession of applicants.

The City itself recognized the continuing legal significance of that framework when it later adopted Resolution R-2025-002. Rather than creating an entirely new procedure, the City expressly characterized the amendments as a "clarification" of Resolution R-2023-014 while simultaneously superseding portions of the original Resolution. Plaintiff contends those subsequent amendments confirm that the original Resolution continued to govern the rights and

obligations of the parties after the lottery had concluded and after Applicant No. 1 had been selected.

3. **Once the Objective Conditions Established by the Ordinance Occurred, the City's Duties Became Ministerial Rather Than Discretionary.**

Tennessee courts recognize a fundamental distinction between a municipality acting in its legislative capacity when enacting ordinances and acting in its administrative capacity when implementing those ordinances. A municipal governing body possesses broad discretion when enacting ordinances and establishing public policy. Accordingly, while a municipal governing body possesses broad discretion in enacting ordinances and establishing public policy, once it has exercised that discretion its role becomes one of administering the enacted framework according to its terms. See ***Waste Connections of Tenn., Inc. v. Metro. Gov't of Nashville & Davidson County***, No. M2012-02290-COA-R3-CV (Tenn. Ct. App. Mar. 27, 2013). Having exercised its legislative discretion by adopting Ordinance O-2023-015 and Resolution R-2023-014, the City's role became one of administering those enactments according to their terms.

Where, as here, an ordinance establishes objective standards governing future administrative action, it is axiomatic that the occurrence of those objective conditions limits administrative discretion and requires faithful implementation of the governing enactment.

That principle is apparent in the case *sub judice*. The City exercised its legislative judgment when it adopted Ordinance O-2023-015 and Resolution R-2023-014. Those enactments established objective eligibility requirements, mandatory grounds for revocation, procedures governing extensions, and an ordered lottery system governing the succession of applicants. Plaintiff does not contend that the City lacked discretion to enact those provisions. Rather, Plaintiff contends that once the City chose those objective rules, it became obligated to

administer them consistently and uniformly.

The City argues that it retained continuing discretion to preserve Applicant No. 1's certificate notwithstanding subsequent events affecting Applicant No. 1's qualifications. Plaintiff respectfully disagrees. The Ordinance expressly distinguishes between discretionary authority and mandatory duties. While the Board retained discretion in certain defined circumstances—including whether to grant extensions—it likewise imposed mandatory consequences when specified objective conditions occurred. A municipality cannot rely upon one discretionary provision while disregarding mandatory provisions contained elsewhere within the same legislative framework.

Nor does Plaintiff's position depend upon proving when City officials subjectively learned of the events affecting Applicant No. 1's qualifications. Under Ordinance O-2023-015, the legal consequences flowed from the occurrence of the objective conditions listed in the ordinance. The City's later awareness of problems in KARS' title may explain its subsequent actions, but it does not determine the legal operation of the Ordinance or the Resolution.

Accordingly, the principal issue before this Court is not whether Defendant possessed discretion in the abstract at the outset (it did), but whether the City could continue exercising discretion after the governing enactments themselves prescribed the legal consequences of the events that had occurred. Plaintiff is likely to demonstrate that, at that point, Defendant's obligation became one of administration rather than policy making. Having established an objective framework for the issuance, revocation, and succession of certificates of compliance, the City was required to apply that framework according to its terms. See, e.g.**,** ***Lind v. Beaman Dodge, Inc.*****,** 356 S.W.3d 889, 895 (Tenn. 2011) ("shall" is generally mandatory unless context indicates otherwise.)

**4. Resolution R-2025-002 Cannot Be Applied to Alter the Legal Consequences of Events Already Governed by the Original Resolution.**

Plaintiff's challenge does not arise because the City amended Resolution R-2023-014. Municipal legislative bodies remain free to amend their enactments prospectively. Rather, Plaintiff challenges Defendant's attempt to rely upon Resolution R-2025-002 after the objective events giving rise to Plaintiff's claims had already occurred under the original legislative framework. Plaintiff contends that, once the lease option was not exercised and the objective conditions prescribed by Ordinance O-2023-015 occurred, the original Resolution required the City to recognize Plaintiff as the next eligible applicant in the established order of succession. Whether Plaintiff ultimately prevails on that contention is the principal legal question presented by this action. Resolution R-2025-002 cannot retroactively answer that question in Defendant's favor.

Were the rule otherwise, a municipality could substantially alter the legal consequences of completed administrative proceedings whenever subsequent events revealed dissatisfaction with the operation of the original enactment. Such a rule would undermine the predictability, transparency, and equal application of objectively established administrative procedures upon which both applicants and the public are entitled to rely.

Plaintiff does not contend that Resolution R-2025-002 is invalid in every application. Rather, Plaintiff contends that it cannot be applied to alter the legal consequences of events already governed by Resolution R-2023-014. Because Defendant continued to administer Plaintiff's application under the original Resolution until after the operative events had occurred, Plaintiff is likely to demonstrate that Resolution R-2025-002 cannot lawfully extinguish whatever rights accrued under the City's previously enacted legislative framework.

**5. Plaintiff Has Demonstrated a Substantial Likelihood of Success on Her Procedural Due Process Claim.**

Property interests protected by the Fourteenth Amendment are not created by the Constitution itself, but "stem from an independent source such as state law". ***Board of Regents v. Roth,*** 408 U.S. 564, 577 (1972). Having adopted objective standards governing the issuance and succession of certificates of compliance, Defendant could not deprive Plaintiff of the benefit of that statutory framework without affording constitutionally adequate process, as the right to due process is conferred, not by legislative grace, but by constitutional guarantee. ***Cleveland Board of Education v. Loudermill***, 470 U.S. 532, 541 (1985). Plaintiff is likely to demonstrate that Tennessee law and the City's enacted Ordinance and Resolution meaningfully constrained governmental discretion once the prescribed objective conditions occurred, thereby creating a constitutionally protected property interest. ***EJS Properties, LLC v. City of Toledo***, 698 F.3d 845 (6th Cir. 2012). Defendant, as outlined above, departed from its own enacted procedures while providing Plaintiff no notice, hearing, administrative review, or meaningful opportunity to challenge that departure. Whether the procedures afforded satisfy due process is evaluated under the balancing test set forth in ***Mathews v. Eldridge***, 424 U.S. 319, 333-35 (1976). ***Mathews*** instructs courts to balance the private interest affected, the risk of erroneous deprivation under the procedures employed, and the governmental interest in the challenged procedure. Under that test, Plaintiff has a substantial likelihood of success on her procedural due process claim.

6. **Plaintiff Has Also Demonstrated a Substantial Likelihood of Success on Her Equal Protection Claim.**

Finally, discovery further supports Plaintiff's "class of one" Equal Protection claim. The City acknowledges that Applicants Nos. 2 through 4 were not permitted to proceed in the

application process, while Applicant No. 1 repeatedly received accommodations, extensions, and continued recognition despite Plaintiff's contention that the objective conditions prescribed by Ordinance O-2023-015 required a different result. Based upon the City's admissions and the September 25, 2025 communication from the City's Public Information Officer, Plaintiff contends she became the next eligible applicant under the City's legislative framework but was afforded no comparable consideration. On the present record, Plaintiff has demonstrated a substantial likelihood of establishing that Defendant intentionally treated similarly situated applicants differently without a rational basis, in violation of the Equal Protection Clause.

**B. Failure to Grant Injunctive Relief Will Cause Plaintiff Irreparable Injury**

Plaintiff has demonstrated that, absent immediate injunctive relief, she will suffer irreparable injury that cannot be adequately remedied through an award of money damages. Rule 65 exists precisely to preserve the Court's ability to afford meaningful relief pending final adjudication. Where the challenged conduct continues during the pendency of the litigation and threatens to render the Court's ultimate judgment ineffectual, preliminary injunctive relief is particularly appropriate.

The evidence establishes that construction of Applicant No. 1's proposed retail package store is actively underway. Plaintiff has personally observed substantial progress in the construction, including the completion of footers and continuing site development, all in accordance with plans approved by the City. Strode Aff. II, ¶¶ 3-4, Ex. B. If construction is permitted to continue to completion and the proposed retail package store commences operations before this action is resolved, Plaintiff's requested relief will become substantially more difficult to implement. The Court would then be faced not merely with reviewing an administrative decision, but with the practical consequences of disrupting an operating business established

while this litigation remained pending. Equity does not require the Court to permit circumstances to change so dramatically that effective relief becomes impracticable before the merits are decided.

Moreover, Plaintiff's injury cannot be fully compensated through money damages. This case concerns the opportunity to obtain and operate a unique governmental authorization governed by a limited statutory allocation within a specific geographic district. Plaintiff seeks enforcement of the City's governing legislative framework, not merely compensation for lost profits. The loss of that opportunity, together with the impairment of Plaintiff's constitutional rights, constitutes irreparable harm for purposes of Rule 65. See, e.g., ***Connection Distributing Co. v. Reno***, 154 F.3d 281, 288 (6th Cir. 1998) (constitutional deprivations for even short periods can constitute irreparable injury).

Accordingly, because Defendant's continuing actions threaten to alter the status quo in a manner that may substantially impair this Court's ability to grant meaningful final relief, Plaintiff has demonstrated that immediate injunctive relief is necessary.

**C. The Balance of Equities Strongly Favors Injunctive Relief**

The balance of equities weighs decisively in Plaintiff's favor. Plaintiff seeks only to preserve the status quo while this Court determines the parties' respective rights under Ordinance O-2023-015, Resolution R-2023-014, and the United States Constitution. Plaintiff does not ask the Court to award her a certificate of compliance at this stage or to resolve the ultimate merits of this dispute. She asks only that Defendant be temporarily restrained from taking actions that may substantially impair the Court's ability to grant meaningful relief following final adjudication. By contrast, the hardship to Defendant from preserving the status quo is comparatively slight.

The City possesses no legitimate interest in continuing governmental action that Plaintiff

has demonstrated is likely inconsistent with its own governing enactments. A temporary injunction pending resolution of this litigation merely requires the City to refrain from permitting further implementation of the challenged administrative decision until the legality of that decision has been determined.

Nor does the balance of equities favor Applicant No. 1 merely because construction has progressed. Any hardship resulting from continued construction while the legality of the certificate remains under judicial review arises from the decision to proceed despite the pendency of this action and the risk that the challenged governmental action might ultimately be found unlawful. Equity does not favor allowing ongoing construction to create practical obstacles to effective judicial relief. Conversely, denial of injunctive relief threatens substantial prejudice to Plaintiff. If construction proceeds to completion and the retail package store commences operation before this Court rules, Plaintiff's opportunity to obtain the specific equitable relief requested may be materially diminished. The balance of hardships therefore strongly favors preserving the status quo until the merits can be decided.

Defendant insists that Defendant's sole remedy is a writ of certiorari without considering the unavoidable adverse implications in this case. Defendant cannot persuasively argue that Plaintiff's remedies are limited to that writ while permitting events to proceed that may effectively eliminate meaningful relief before the Court determines what remedy is actually available.

**D. Issuing an Injunction Preserves the Public Interest By Preserving the Integrity of the System**

The public has a compelling interest in ensuring that municipal governments faithfully administer the ordinances and resolutions they enact. Public confidence in local government

depends not only upon the wisdom of legislative decisions, but upon the consistent, impartial, and transparent application of those decisions after they are adopted. Plaintiff's request for injunctive relief advances that fundamental public interest.

This case does not ask the Court to substitute its judgment for that of the City's elected officials regarding whether retail package stores should be authorized or how applications should be evaluated. Those policy decisions were made when the City enacted Ordinance O-2023-015 and Resolution R-2023-014. Plaintiff asks only that the City be required to administer its own legislative framework according to its terms until this Court determines the parties' respective rights.

The public likewise has a substantial interest in the fair and even-handed administration of objective governmental procedures. Citizens who invest time, money, and effort in reliance upon duly enacted ordinances are entitled to expect that similarly situated applicants will be treated according to the same published standards. Preserving the status quo pending judicial review promotes confidence in the rule of law and ensures that governmental entities remain accountable to the legal standards they have chosen to adopt.

Accordingly, the public interest strongly favors the issuance of preliminary injunctive relief. The public interest is not served when courts defer to municipalities that disregard their own enacted rules; it is served when municipalities are held to the same rule of law they require of their citizens.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court issue a preliminary injunction preserving the status quo pending final adjudication, and thereafter enter a permanent injunction together with such other relief as the Court deems just and proper.

**CERTIFICATE OF SERVICE**

I hereby certify that I placed the foregoing on the Court's electronic server for service through ECF to all parties of record this 10th day of July, 2026.

Respectfully submitted,

/s/ *Robert F. Croskery*
Robert F. Croskery
Attorney for Plaintiff