**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

| | | |
|---|---|---|
| **JESSICA STRODE,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | **No. 3:25-CV-00611** |
| **CITY OF SEVIERVILLE, TENNESSEE** | ) | |
| **Defendant.** | ) | |

## RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

Defendant City of Sevierville, Tennessee hereby appears, by and through counsel, and for its Response in Opposition to the Plaintiff's Motion for Preliminary and Permanent Injunctive Relief (Doc. 20) states as follows:

## INTRODUCTION

This is a disappointed applicant's attempt to unwind, through extraordinary equitable relief, a retail package store licensing process that was conducted openly and in accordance with procedures the City of Sevierville adopted before any application was filed. Plaintiff drew the fifth of five positions in a public lottery, submitted an application that remained incomplete when every applicable deadline passed, and was never formally reviewed for qualifications because the first-drawn applicant, KARS, LLC, submitted a complete and qualified application and received the only Certificate of Compliance available in Zone 3. More than two years after that Certificate issued, Plaintiff asks this Court to halt KARS's ongoing construction and to bar the City from recognizing KARS's Certificate, all without ever joining KARS, the party whose rights her requested injunction would extinguish.

The Motion fails at every step of the analysis. Plaintiff cannot establish a strong likelihood of success on the merits. The relief aimed at KARS's Certificate cannot be entertained in KARS's absence under Rule 19. The Plaintiff had no constitutionally protected property interest in a certificate for which she never qualified. Her core theory, that the City failed to follow its own ordinance, alleges at most a violation of municipal law that is not actionable under § 1983. Finally, Tennessee afforded her an adequate remedy by common law writ of certiorari that she allowed to lapse. Her equal protection and equitable estoppel theories fare no better. Nor can Plaintiff demonstrate irreparable harm. Her claimed injury is economic, is compensable in the damages her own Complaint demands, and is undercut by her decision to wait nearly seven months after filing suit before seeking preliminary relief. The balance of harms and the public interest weigh decisively against freezing a lawfully authorized project at the behest of an applicant who never qualified under the very process she invokes. The Motion should be denied.

## **FACTUAL AND PROCEDURAL BACKGROUND**

In May 2023, the voters of Sevierville approved retail package stores within the City. (Smith Aff. ¶ 3). In October 2023, the City of Sevierville Board of Mayor and Aldermen ("BMA") enacted Ordinance No. O-2023-015 (the "Ordinance"), and on November 20, 2023, it adopted Resolution R-2023-014 establishing the application and selection criteria and process: (1) one store per zone in five zones; (2) applications accepted only between December 11 and December 29, 2023; (3) no application deemed complete until all required information was submitted and the fee paid; (4) a lottery to establish the numeric order in which applications would be reviewed; and (5) a provision that once an applicant in a zone was approved, no other applicant in that zone would be considered. (McClurg Aff. ¶ 4; Smith Aff. ¶ 4). The published application instructions required, among other things, that "proof of right to possess the premises" and government-issued

identification be submitted within the December 11, 2023 to December 29, 2023 application window. (McClurg Aff. ¶ 6; Smith Aff. ¶ 6). Additional items, including a personal financial statement, a credit check, previous two years of tax returns, and previous three months of bank statements, were required to be submitted no later than January 15, 2024. (Id.). Fee simple ownership was not required, only a right to possess. (Doc. 10, ¶ 13, Page ID # 97–98).

The lottery was conducted publicly on January 8, 2024. In Zone 3, KARS, LLC drew position No. 1 and Plaintiff drew position No. 5 of five. (McClurg Aff. ¶¶ 3, 7; Smith Aff. ¶ 7). Consistent with the Resolution's sequential-review design, City staff reviewed the first-drawn application. KARS's application was complete and qualified, so the remaining applications (including Plaintiff's) were never formally reviewed. (McClurg Aff. ¶¶ 5, 8; Smith Aff. ¶¶ 5, 8). KARS documented its right to possess the premises through a ground lease, a letter of intent, and a subsequently recorded Memorandum of Leased Premises. (Doc. 10, ¶ 14, Page ID # 98–99). The BMA approved issuance of the Certificate of Compliance to KARS on February 12, 2024. (McClurg Aff. ¶ 9; Smith Aff. ¶ 9).

Section 8-315(4) of the Ordinance provides that a certificate holder "must, unless an extension is granted by the Board of Mayor and Aldermen, within twelve months open a retail package store in the city or said certificate will be revoked by the passage of this amount of time[.]" (McClurg Aff. ¶ 10; Smith Aff. ¶ 10). The extension authority exists precisely for circumstances outside a certificate holder's control like construction delays, or, as here, third-party interference with the holder's right of possession requiring litigation to resolve. (McClurg Aff. ¶ 11; Smith Aff. ¶ 11).

That is what happened. After third parties acted to interfere with KARS's possessory rights, KARS filed suit in Sevier County Chancery Court on May 25, 2024 to vindicate those rights. (Doc.

10, ¶¶ 15, 17, 19, Page ID # 99–101). On January 8, 2025, which was before the twelve-month period expired on February 12, 2025, KARS requested an extension, advising the City of the pending litigation. The BMA granted a one-year extension to February 12, 2026 on January 17, 2025. (McClurg Aff. ¶ 12; Smith Aff. ¶ 12). The Chancery Court litigation ultimately led to a resolution in KARS's favor when a General Warranty Deed conveyed the property to Robert Henderson Development 1, LLC, an entity sharing common ownership with KARS, securing KARS's continued right of possession. (McClurg Aff. ¶ 13; Smith Aff. ¶ 13; Doc. 10, ¶ 14.d, Page ID # 99). Because the litigation had consumed much of the first extension period, KARS requested a second extension on July 11, 2025, which the BMA granted on August 4, 2025, extending the deadline to open the retail package store to February 12, 2027. (McClurg Aff. ¶ 13; Smith Aff. ¶ 13). Construction is now lawfully underway with a valid Certificate and City-approved plans. (Doc. 20, Page ID # 214-215).

Publicity surrounding the circumstances that led to the litigation prompted the City to review the qualifications of the remaining Zone 3 applicants. That review revealed that Applicants Nos. 2, 3, and 4 would not have qualified because their proposed sites did not meet distance requirements from a church and/or school and that Plaintiff, Applicant No. 5, would not have qualified because her application was incomplete when the application deadlines passed. (McClurg Aff. ¶ 14; Smith Aff. ¶ 14). On January 17, 2025, the BMA also adopted Resolution R-2025-002, a clarifying amendment addressing the administrative procedure applicable if a certificate is ever revoked by passage of time or abandoned. It did not repeal Resolution R-2023-014 and had no effect on any Zone 3 applicant. (McClurg Aff. ¶ 15; Smith Aff. ¶ 15).

## STANDARD OF REVIEW

The Plaintiff has moved this Court for entry of preliminary and permanent injunctions pursuant to Fed. R. Civ. P. 65. In evaluating a motion for a preliminary injunction, this Court should balance the following four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014). The evaluation and weighing of these four factors is committed to the sound discretion of the trial court. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007).

"The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits." *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 848 (6th Cir. 2017). In justifying the need for preliminary injunctive relief, the movant "is not required to prove his case in full" because a complete opportunity to develop the record has not yet occurred. *Id.* at 848-49 (quoting *Certified Restoration*, 511 F.3d at 542). Regardless, "a preliminary injunction is an extraordinary and drastic remedy … that should 'only be awarded upon a clear showing that the [movant] is entitled to such relief[.]'" *Id.* (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)) (cleaned up).

## LAW AND ARGUMENT

### I. The Plaintiff does not have a strong likelihood of succeeding on the merits.

The Plaintiff has not met the weighty burden of establishing a strong likelihood of success on the merits. As set out above, the Plaintiff must make a "clear showing" that she is likely to succeed on the merits. *E.g., Shirinian v. Plowman*, No. 3:25-CV-528-KAC-JEM, 2025 WL

3680503, at *2 (E.D. Tenn. Dec. 18, 2025). The Plaintiff's Motion does not meet that threshold for multiple reasons.

**A. The Plaintiff has failed to join a required party, and injunctive relief cannot be granted without that party being joined to this litigation.**

The Motion fails for a reason the City raised in its Answer months ago. Plaintiff has never joined KARS, LLC, the party whose rights her requested injunction would extinguish. (Doc. 10, ¶ 62, Page ID # 111). Plaintiff asks this Court to prohibit the City from "issuing, recognizing, or permitting the operation of any retail package store certificate of compliance within District 3[.]" (Doc. 20, Page ID # 209). The only such certificate is KARS's. Her Complaint asks the Court to declare KARS's Certificate "void." (Doc. 1, Page ID # 9). The centerpiece of her irreparable-harm argument is her desire to halt KARS's construction. (Doc. 20, Page ID # 214, 222-23).

Under the Sixth Circuit's three-step framework, *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004); *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001), KARS is a required party twice over. Disposing of this action in KARS's absence would "as a practical matter impair or impede" its ability to protect its interests (its Certificate, its leasehold and now-secured site rights, and its construction investment). Impairing those interests is the direct object of the relief sought. Fed. R. Civ. P. 19(a)(1)(B)(i); *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 110 (1968). An injunction entered in KARS's absence would expose the City to a substantial risk of inconsistent obligations. The Plaintiff asks this Court to order the City to refuse recognition of a Certificate that remains valid and enforceable as between the City and KARS, which would not be bound by the judgment. Fed. R. Civ. P. 19(a)(1)(B)(ii); Fed. R. Civ. P. 65(d)(2); *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 110 (1969). Nor is the City an adequate proxy. KARS's private contract, leasehold, and investment interests, and its knowledge of the facts surrounding its own site control and the litigation in Sevier County

Chancery Court, are distinctly its own. The burden of joining a party whose rights a plaintiff seeks to adjudicate should rest on the plaintiff, not on the absent party to intervene. Plaintiff has known KARS's identity from the outset. Her Complaint names it, attaches its lease, and quotes the Sevier County Chancery Court pleadings, and the City's Answer expressly pleaded her failure to join it. Because KARS can readily be joined (this is a federal-question case, and KARS is a Tennessee LLC subject to service in this District), Rule 19(a)(2) directs that it "must" be made a party before relief aimed at its Certificate may be entertained. At an absolute minimum, no preliminary injunction should issue against the interests of a business that has had no notice and no opportunity to be heard. Fed. R. Civ. P. 65(a)(1), (d)(2).

**B. The Plaintiff does not have a valid procedural due process claim.**

The Plaintiff's procedural due process claim fails for at least three reasons: (1) she had no protected life, liberty or property interest; (2) an allegation of conduct that violates state law does not support a federal due process claim; and (3) the Plaintiff had an adequate remedy under state law that she failed to pursue. The City will address each deficiency individually below.

1. <u>The Plaintiff has no protected life, liberty or property interest.</u>

The Sixth Circuit has explained[1] that "[t]he Due Process Clause of the Fourteenth Amendment prohibits States from depriving 'any person of life, liberty, or property, without due process of law.'" *Jaber v. Wayne State Univ. Bd. of Governors*, 487 F. App'x 995, 996 (6th Cir. 2012) (quoting U.S. Const. amend. XIV, § 1). To prove a procedural due process violation, a plaintiff must establish a constitutionally protected property or liberty interest and show that the state deprived the plaintiff of such interest without appropriate procedures. *Rogers v. Tennessee*

---

[1] This general statement of the law is adopted from *Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1078-1079 (S.D. Ohio 2017).

*Bd. of Regents*, 273 F. App'x 458, 462 (6th Cir. 2008) (citing *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 762 (6th Cir. 2005)). "Property interests, of course, are not created by the Constitution." *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *see also Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 82 (1978). "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...'" *Roth*, 408 U.S. at 577. "An abstract need or unilateral expectation does not suffice to create a property interest; rather, a plaintiff must have a legitimate claim of entitlement." *Ogle v. Sevier Cnty. Reg'l Plan. Comm'n*, No. 3:09-CV-00537, 2019 WL 1276195, at *7 (E.D. Tenn. Mar. 20, 2019) (citing *Richardson v. Township of Brady*, 218 F.3d 508, 517 (6th Cir. 2000)).

In the Sixth Circuit, no protected interest exists where the governmental decisionmaker retains discretion over the benefit. *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409-10 (6th Cir. 2002); *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855-57 (6th Cir. 2012). Notably, *EJS Properties*, which is the case Plaintiff herself cites as establishing her property interest (Doc. 20, Page ID # 221), held that the plaintiff there had *no* protected property interest, precisely because the city retained discretion.

Plaintiff's asserted entitlement fails at every link in the chain. *First*, her theory requires that KARS's Certificate was automatically revoked. It was not. Section 8-315(4) revokes a certificate by passage of time only "unless an extension is granted by the Board of Mayor and Aldermen," and the BMA granted an extension on January 17, 2025, on a request made January 8, 2025 – before the twelve-month period expired on February 12, 2025. (McClurg Aff. ¶ 12; Smith Aff. ¶ 12). The Ordinance's text thus commits the very decision at issue to the BMA's discretion, and discretion defeats entitlement. *Med Corp.*, 296 F.3d at 409-10. Plaintiff's invocation of *Lind v.*

*Beaman Dodge, Inc.*, 356 S.W.3d 889 (Tenn. 2011), for the mandatory force of "shall" (Doc. 20, Page ID # 219) proves the City's point. The operative command in Section 8-315(4) is expressly conditioned on the absence of a Board extension, and the condition never occurred. *Second*, even if the Certificate had lapsed, Plaintiff was fifth in the review order, behind three applicants whose applications had never been reviewed. Her claim of entitlement assumes the outcome of three intervening discretionary reviews. *Third*, and independently dispositive, Plaintiff herself was never a qualified applicant. Her application was incomplete when the application window closed on December 29, 2023 and the required supplemental information was not submitted by January 15, 2024. She lacked proof of a right to possess the premises, government-issued identification, a personal financial statement, a credit check, tax returns, and bank statements. (McClurg Aff. ¶¶ 6, 14; Smith Aff. ¶¶ 6, 14). Under the Resolution, "[n]o applications are considered complete until all required information has been submitted." (McClurg Aff. ¶ 4; Smith Aff. ¶ 4). A person who never satisfied the objective eligibility requirements she invokes cannot claim a legitimate entitlement under them. For the same reason, her alleged injury is not traceable to the City's treatment of KARS, but to her own incomplete application, depriving her of standing to pursue these claims. (Doc. 10, ¶ 53, Page ID # 108).

2. <u>The Fourteenth Amendment does not provide a remedy for alleged conduct that violates state law.</u>

Even taken at face value, Plaintiff's core theory that the City "fail[ed] to administer and apply the very rules it adopted" (Doc. 20, Page ID # 210) alleges a violation of municipal law, not the Constitution. Section 1983 redresses deprivations of federal rights; it "does not cover official conduct that allegedly violates state law." *Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989) (rejecting a due process claim premised on officials' failure to follow state certificate-of-need procedures); *Neinast v. Bd. of Trustees of Columbus Metro. Libr.*, 346

F.3d 585, 597 (6th Cir. 2003) (claims that "turn[] upon a question of state law … fall[] outside the scope of § 1983."). The Sixth Circuit held that claims alleging a state actor's noncompliance with state law and procedure would sound under state rather than federal law and could not be remedied under § 1983. *Huron Valley*, 887 F.3d at 716; *see also Graham v. Chicowski*, No. 18-2049, 2019 WL 4381841, at *5 (6th Cir. May 3, 2019) ("to the extent that Graham's due process claim was based on the defendants' alleged failure to follow the applicable state-law procedures in reclassifying him or processing his grievances, he failed to state a claim for relief under § 1983.")

This Court has followed *Huron Valley* in prior decisions. In *King v. Lawson*, No. 3:14-CV-500-TAV-HBG, 2015 WL 5089148, at *3 (E.D. Tenn. Aug. 27, 2015), the plaintiff argued that police officers of the City of Clinton, Tennessee had failed to comply with Tennessee's civil forfeiture statute in seizing and listing her vehicle for public sale. This Court found that the plaintiff had not stated a valid procedural due process claim. "§ 1983 is limited to deprivations of federal statutory and constitutional rights, and does not cover official conduct that allegedly violates state law." *Id.* at *3. And, as discussed below, this Court also recognized that the plaintiff failed to plead and prove the absence of adequate remedies under state law. *Id.*; *see also Neinast v. Bd. of Trustees of Columbus Metro. Library*, 190 F. Supp. 2d 1040, 1047-1048 (S.D. Ohio 2002) aff'd, 346 F.3d 585 (6th Cir. 2003); *Graham v. Tennessee Secondary Sch. Athletic Ass'n*, No. 1:95-CV-044, 1995 WL 115890, at *3 (E.D. Tenn. Feb. 20, 1995) ("Section 1983 does not apply to official conduct that allegedly violates only state law.").

This Court reaffirmed the applicability of *Huron Valley* yet again in *Elevation Outdoor Advert., LLC v. City of Pigeon Forge, Tennessee*, No. 3:22-CV-105-TAV-JEM, 2023 WL 2058651, at *7 (E.D. Tenn. Feb. 16, 2023), which is squarely on point. In that case, plaintiff alleged that the defendant City of Pigeon Forge had failed to comply with Tenn. Code Ann. § 13-7-203 in its

enactment of an amendment of its zoning ordinance which prohibited the construction of certain billboards that plaintiff had executed leases for and in which it had made financial investment. This Court found that the alleged failure to enact a zoning ordinance in compliance with Tennessee's state zoning laws could not be the basis of a procedural due process action. *Id.* at *7. The Plaintiff's claim in the present action is based on a similar theory. She claims that the City did not comply with applicable provisions of its own municipal ordinances. The Plaintiff has not stated a valid procedural due process claim.

3. <u>The Plaintiff had an adequate remedy under state law that she failed to pursue.</u>

The decisions Plaintiff attacks, the BMA's approval of KARS's Certificate of Compliance and its grant of two extensions under Section 8-315(4), were administrative, quasi-judicial applications of existing law to a particular applicant, not legislative acts. Common law certiorari is the appropriate remedy to review the decision of an administrative official or body making a quasi-judicial or administrative decision. *State ex rel. Moore & Assocs., Inc. v. West*, 246 S.W.3d 569, 575 (Tenn. Ct. App. 2005). Common law certiorari is "the appropriate (and exclusive) vehicle for judicial review" of administrative decisions by local governmental entities. *See State v. Farris*, No. W2017-00438-COA-R3-CV, 2018 WL 1225746 (Tenn. Ct. App. Mar. 9, 2018). Common law certiorari is an adequate remedy provided by Tennessee law. *See Project Reflect, Inc. v. Metro. Nashville Bd. of Pub. Educ.*, 947 F. Supp. 2d 868, 877 n.3 (M.D. Tenn. 2013).

Plaintiff had this state law remedy, but did not avail herself of it.[2] She has therefore not

---

[2] It should be noted that the common law writ of certiorari is governed by a 60-day statute of limitations in Tennessee. Tenn. Code Ann. § 27-9-102; *Bd. of Prof'l Responsibility v. Cawood*, 330 S.W.3d 608, 609 (Tenn. 2010). Plaintiff, who by her own account knew of the facts underlying her claims at least as early as September and October 2025 (Doc. 20, Page ID # 214; Doc. 1, ¶¶ 12, 27, Page ID # 3, 6), never sought certiorari review, and the time to do so has long expired. The two extensions were reviewed and approved respectively on January 17, 2025 and August 4, 2025 by the BMA acting in its administrative capacity at a public meeting.

pled or proven the inadequacy of remedies under state law. *Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 713 (6th Cir. 1989); *King v. Lawson*, No. 3:14-CV-500-TAV-HBG, 2015 WL 5089148, at *3 (E.D. Tenn. Aug. 27, 2015) (dismissing claim in part due to failure to take advantage of state procedures to contest civil forfeiture decision). While a plaintiff need not show full exhaustion of state remedies, "it still must prove as an element of the claim that state procedural remedies are inadequate." *Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 447 (6th Cir. 2008). "If satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury, which is why the plaintiff must attack the state's corrective procedure as well as the substantive wrong." *Id.* (cleaned up); *see also Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 588 (6th Cir. 2004) (affirming dismissal of due process claim and finding administrative and state court remedies were sufficient).

The common-law writ of certiorari afforded judicial review of the BMA's administrative decisions, and the writ of supersedeas was available to stay the administrative action pending that review. This provided the Plaintiff with a complete remedy that she elected not to pursue. Federal courts in Tennessee have held exactly that: certiorari review with supersedeas is an adequate state remedy defeating a procedural due process claim. *Project Reflect*, 947 F. Supp. 2d at 876-77; *Adams v. Galloway*, No. 04-2605-B/AN, 2006 WL 1645252, at *1 (W.D. Tenn. June 8, 2006). The Plaintiff's procedural due process claim therefore should fail as a matter of law.

**C. The Plaintiff does not have a valid substantive due process claim.**

Substantive due process protects against only the most egregious official conduct, action that "shocks the conscience" or rises to the level of being "arbitrary and capricious", and the Supreme Court has repeatedly cautioned against expanding it. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–49 (1998); *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014). A substantive due

process claim is not a substitute for the analysis under a more specific constitutional provision. *Id.* at 843. The Plaintiff makes no meaningful distinction between substantive and procedural due process in her Complaint or in her underlying motion. The substantive due process claim fails for all of the same reasons as the procedural due process claim. There is no protected life, liberty or property interest. In fact, substantive due process requires *greater* state created rights than procedural due process. *See Range*, 763 F.3d at 588 n.6 ("Most state-created rights that qualify for procedural due process protections do not rise to the level of substantive due process protection."). There is no fundamental right to a retail package store certificate, and absent a protected property interest (Section I.A.1 above), an arbitrary-and-capricious substantive due process theory has nothing to attach to. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 861-62 (6th Cir. 2012). What the record shows is a municipality granting extensions expressly authorized by its ordinance to a certificate holder whose possession of its site was under attack in court. This was conduct that was not merely rational but responsible. Federal courts reviewing state and local administrative action under substantive due process apply an extremely narrow standard, *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1220-22 (6th Cir. 1992), and nothing here meets that high standard.

**D. The Plaintiff does not have a valid "class of one" equal protection claim.**

"The Equal Protection Clause prohibits a state from denying to any person within its jurisdiction the equal protection of the laws. The threshold element of an equal protection claim is disparate treatment of similarly situated individuals." *Blevins v. Marion Cnty.*, No. 1:18-CV-53, 2020 WL 3036359, at *8 (E.D. Tenn. June 5, 2020) (internal citations and quotation marks omitted) (quoting *Dixon v. Univ. of Toledo*, 702 F.3d 269, 278 (6th Cir. 2012)). A class-of-one plaintiff must show that she was intentionally treated differently from others *similarly situated* and that there is no rational basis for the difference. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Disparate treatment survives rational-basis review unless the plaintiff negates every conceivable basis that might support it. *TriHealth, Inc. v. Bd. of Comm'rs, Butler Cnty.*, 430 F.3d 783, 788–90 (6th Cir. 2005).

Plaintiff and KARS were not similarly situated in any respect that matters. KARS drew position No. 1 in the lottery. Plaintiff drew No. 5. KARS's application was reviewed and determined to be complete and qualified. Plaintiff's application was incomplete at the deadline and, under the Resolution's sequential-review design, was never reviewed at all. (McClurg Aff. ¶¶ 7, 8, 14; Smith Aff. ¶¶ 7, 8, 14). KARS held an issued Certificate. Plaintiff held an expectancy contingent on the disqualification of four applicants ahead of her. A certificate holder facing third-party interference with its site is simply not comparable to an unreviewed, unqualified fifth-position applicant. Nor was there anything irrational about the City's conduct. Reviewing applications in lottery order, ceasing review once a qualified applicant was approved, and granting extensions to a certificate holder embroiled in title litigation not of its own making each rests on an obvious and legitimate rationale. Plaintiff's assertion that the City "strictly enforc[ed] rules against Applicants 2–4" (Doc. 1, ¶ 42, Page ID # 8) is false as a matter of record. Applicants 2, 3 and 4 were never "enforced against" at all. Their applications, like Plaintiff's, were simply never reviewed, and the later determination that they would not have qualified was made in a retrospective review that reached the identical conclusion as to Plaintiff herself. (McClurg Aff. ¶ 14; Smith Aff. ¶ 14).

### E. The Plaintiff's "equitable estoppel" claim pled under Tennessee law is not a valid, independent cause of action.

Count IV of the Complaint pleads "equitable estoppel" as a freestanding cause of action against the City, alleging that the City made "representations" through its Ordinance upon which Plaintiff relied to her detriment. (Doc. 1, ¶¶ 44–49, Page ID # 9). The claim fails as a matter of

Tennessee law at every level. Equitable estoppel is not an independent cause of action. Further, the doctrine applies against a municipality only in "very exceptional circumstances" not remotely present here, and the Plaintiff cannot establish its elements in any event.

*First*, equitable estoppel is a shield, not a sword. Under Tennessee law, equitable estoppel "is not a cause of action, and standing alone it will not entitle the party to affirmative relief"; the doctrine "is available to protect a right but not to create one." *Laundries, Inc. v. Coinmach Corp.*, No. M2011-01336-COA-R3-CV, 2012 WL 982968, at *7 (Tenn. Ct. App. Mar. 20, 2012) (rejecting a party's attempt to plead equitable estoppel "as a claim entitling it to relief"). Estoppel operates defensively to preclude a party from asserting a position, such as a limitations defense or the statute of frauds. Even where it applies, the invoking party "must continue with its case and prove the elements of a cause of action." *Deal v. Tatum*, No. M2015-01078-COA-R3-CV, 2016 WL 373265, at *8 (Tenn. Ct. App. Jan. 29, 2016). Plaintiff has no right for estoppel to protect. She asks the doctrine to *create* an entitlement to a certificate of compliance she never qualified for. Tennessee law does not permit that use of the doctrine, and Count IV should be rejected on that basis alone.

*Second*, Plaintiff sues a municipality, and "[p]ublic agencies are not subject to equitable estoppel or estoppel in pais to the same extent as private parties and very exceptional circumstances are required to invoke the doctrine against the State and its governmental subdivisions." *Bledsoe County v. McReynolds*, 703 S.W.2d 123, 124 (Tenn. 1985); *Paduch v. City of Johnson City*, 896 S.W.2d 767, 772 (Tenn. 1995). The "exceptional circumstances" are those in which "the public body took affirmative action that clearly induced a private party to act to his or her detriment, as distinguished from silence, non-action or acquiescence." *Bledsoe County*, 703 S.W.2d at 125. The Tennessee Court of Appeals has further limited the doctrine to circumstances in which "the agency

induced the party to give up property or a right in exchange for a promise." *Shahan v. Franklin County*, No. M2002-00725-COA-R3-CV, 2003 WL 23093836, at *3-4 (Tenn. Ct. App. Dec. 30, 2003) (citing *Thompson v. Dep't of Codes Admin.*, 20 S.W.3d 654, 664 (Tenn. Ct. App. 1999)). In *Paduch* itself, the Tennessee Supreme Court reversed a judgment against a city sought by plaintiffs who had spent their own money paving a street in hopes of obtaining a building permit, holding that such facts "do not present the exceptional circumstances required to invoke equitable estoppel against a public agency." *Paduch*, 896 S.W.2d at 772. Plaintiff's alleged reliance expenditures including training courses, forming an LLC, soliciting quotes, and interviewing employees in hopes of obtaining a certificate (Doc. 1, ¶ 25, Page ID # 5) are legally insufficient.

*Third*, the pleaded facts negate the elements of the doctrine. A party invoking equitable estoppel bears the burden of proving, as to the party to be estopped: "(1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts." *Osborne v. Mountain Life Ins. Co.*, 130 S.W.3d 769, 774 (Tenn. 2004). Estoppel is not favored in Tennessee, and the invoking party bears the burden of proving the elements. *Mott v. Luethke*, 633 S.W.3d 585, 597 (Tenn. Ct. App. 2021)

Plaintiff can prove none of them. The only "representations" she identifies were made "through the ordinance" and "through its Ordinance." (Doc. 1, ¶¶ 45–46, Page ID # 9). A duly enacted ordinance is a general legislative enactment, not a false representation of existing fact made to a particular applicant. The Plaintiff's characterization of what the Ordinance "represented" is wrong on its face, because Section 8-315(4) expressly authorized the very extensions she now

labels violations. (McClurg Aff. ¶¶ 10–12; Smith Aff. ¶¶ 10–12). Nor can the Plaintiff establish reasonable reliance or want of knowledge. Every enactment and every BMA action she challenges was public, and a party is charged with knowledge of the published terms of the law she invokes including the extension provision. Her claimed reliance expenditures, by her own pleading, were undertaken after she came to believe in the fall of 2025 that she was the "next qualified applicant" (Doc. 1, ¶¶ 12, 23–25, Page ID # 3, 5). The September 25, 2025 e-mail on which she relies did not state that she was a qualified applicant (Doc. 10, ¶ 12, Page ID # 97), and, in fact, she was not. Her application was incomplete when the application window closed in December 2023 and she did not submit the required information by the deadlines. (McClurg Aff. ¶ 14; Smith Aff. ¶ 14). Finally, what Plaintiff actually alleges against the City is silence. She claims she "was not timely informed" of her supposed status. (Doc. 1, ¶ 23, Page ID # 5). Silence, non-action, and acquiescence cannot support estoppel against a governmental entity as a matter of law. *Bledsoe County*, 703 S.W.2d at 125.

*Fourth*, even if the doctrine somehow applied, it would afford Plaintiff nothing. Estoppel could at most preclude the City from asserting a position. It could not compel the issuance of a certificate of compliance to an applicant who never satisfied the published application requirements, and it cannot manufacture the property interest that Plaintiff's constitutional claims independently lack. Any damages theory embedded in Count IV is governed and barred by the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101, *et seq.* (Doc. 10, ¶¶ 58-59, Page ID # 110), and the underlying administrative decisions Count IV seeks to unwind were reviewable exclusively by writ of certiorari on a timetable Plaintiff allowed to lapse. Count IV therefore supplies no likelihood of success on the merits and no legal or equitable basis for the injunctive relief the Plaintiff seeks.

### F. Counts V and VI are remedies, not independent causes of action, and do not state a claim for relief.

Finally, Count V (Declaratory Relief) and Count VI (Preliminary and Permanent Injunction) are not independent claims. They are remedies. These claims therefore do not independently support a claim for preliminary injunctive relief and are derivative of the individual causes of action addressed above. The Plaintiff has not established a strong likelihood of success on the merits of any of her claims.

## II. The Plaintiff would not suffer irreparable harm in the absence of preliminary injunctive relief.

Irreparable harm must be "both certain and immediate," not "speculative or theoretical." *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019). Plaintiff's theory of harm is that KARS's ongoing construction will make eventual relief "more difficult to implement." (Doc. 20, Page ID # 222). That is not a cognizable irreparable injury. If Plaintiff someday proved that KARS's Certificate should be voided and that she was entitled to consideration, the Court could (presuming KARS has been joined to the action) order exactly that relief whether KARS's building is half-built, complete, or open. Plaintiff's own brief concedes the point. She argues that any hardship to KARS from continued construction "arises from the decision to proceed" during the pendency of this action. (Doc. 20, Page ID # 223). If Plaintiff's characterization is true, that KARS builds at its own risk, then by definition the construction cannot insulate the Certificate from later judicial relief. Plaintiff's underlying injury, the claimed loss of a business opportunity, is economic, and economic loss is generally not irreparable because it is compensable in damages. *Sampson v. Murray*, 415 U.S. 61, 90 (1974); *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). Plaintiff's own Complaint prays for compensatory damages for this very injury (Doc. 1, Page ID # 10), an implicit concession that a damages remedy exists. Further, Plaintiff's own

timeline refutes urgency. She knew the material facts by September and October 2025 at the latest[3], filed suit on December 18, 2025, and then waited nearly seven more months before seeking preliminary relief in July 2026. A plaintiff's delay in seeking an injunction weighs heavily against a finding of irreparable harm. *Benisek v. Lamone*, 585 U.S. 155, 159 (2018). Plaintiff has not shown irreparable harm.

### III. Issuance of injunctive relief would cause substantial harm to non-party KARS, LLC.

The third factor asks whether an injunction would cause substantial harm to others. *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). The harm to others is not incidental. The requested order would freeze an active construction project and bar the opening of a business operated under a facially valid Certificate of Compliance by KARS, LLC, which drew first position in a public lottery, submitted a complete and qualified application, litigated for more than a year to protect its site from third-party interference, and obtained both of its extensions openly from the City's elected board before any deadline lapsed. (McClurg Aff. ¶¶ 8-13; Smith Aff. ¶¶ 8-13). Against that concrete, immediate, and substantial harm to a party not even before the Court, Plaintiff offers the speculative interest of an applicant who was fifth in line and unqualified at the deadline. Plaintiff's suggestion that KARS's hardship should be discounted because KARS chose to proceed during this litigation (Doc. 20, Page ID # 223-224) inverts the equities. KARS is entitled to rely on a valid governmental authorization unless and until a court with jurisdiction over it rules otherwise, and Plaintiff's decision not to join or notify KARS is not a reason to penalize it. KARS's status as a required party to this action under Rule 19(a) further

[3] Moreover, because all the actions complained of, i.e., the issuance of the Certificate and the two extensions, were conducted in the public domain and in open meetings, this placed the Plaintiff on inquiry notice at a much earlier date.

emphasizes the equities here. The Court certainly should not (and, respectfully, lacks the personal jurisdiction to) enjoin KARS from further proceeding with the development.

## IV. The public interest would not be served by issuance of injunctive relief.

The public interest is served by the faithful administration of the process the City actually adopted (a public lottery, sequential review, and Board-approved extensions) not by judicial displacement of that process at the behest of an applicant who never qualified under it. The voters of Sevierville approved retail package stores in May 2023. The requested injunction would indefinitely delay implementation of that mandate in Zone 3. The public interest is also served by respecting Tennessee's chosen scheme for reviewing municipal administrative decisions rather than rewarding its circumvention. Decisions regarding interpretation and implementation of state and municipal law are best left to Tennessee courts and local elected bodies to decide, and federal intervention here is not warranted. Plaintiff's appeal to "the integrity of the system" (Doc. 20, Page ID # 224) has it backwards. The integrity of the system is preserved when review of administrative decisions occurs through the channels, and within the deadlines, that the law prescribes. The public interest does not favor preliminary injunctive relief.

## V. The Plaintiff would be required to post a substantial bond under Fed. R. Civ. P. 65(c).

Should the Court nonetheless consider preliminary relief, Rule 65(c) permits an injunction only upon the movant's posting of security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Halting an active commercial construction project would generate immediate and mounting losses, including idle contractors, demobilization and remobilization costs, financing carry, and delayed opening of a business already twice delayed by third-party interference. The City respectfully submits that any injunction would require security commensurate with those

losses, and that the amount be established on an evidentiary record after KARS, whose losses they would be, has been joined and heard.

### VI. It is unclear whether the Plaintiff seeks permanent injunctive relief at this stage. For the reasons set out herein, the Plaintiff is not entitled to permanent injunctive relief.

Though Plaintiff's motion appears to seek both preliminary and permanent injunctive relief based upon its style, the body is less clear. On the opening page (Doc. 20, Page ID # 209), it seeks preliminary injunctive relief and "following trial on the merits, [] entry of a permanent injunction consistent with the relief requested in the Complaint." Similarly, the conclusion (Doc. 20, Page ID # 225) seeks entry of "a preliminary injunction preserving the status quo pending final adjudication, and thereafter enter a permanent injunction together with such other relief as the Court deems just and proper." (*see also* Doc. 20, Page ID # 211 [requesting entry of a permanent injunction following trial]). It appears that the Plaintiff is only seeking a preliminary injunction at this stage, and nothing in the briefing appears to seek relief under Rule 56 or the entry of partial summary judgment that would be necessary to enable permanent injunctive relief. To the extent the Plaintiff is seeking permanent injunctive relief, that request should be denied for all the reasons set out herein, as the Plaintiff is not entitled to judgment as a matter of law on any of her claims.

## CONCLUSION

The Plaintiff has not shown an entitlement to either preliminary or permanent injunctive relief. The Plaintiff's Motion for Preliminary and Permanent Injunctive Relief should be denied, and an appropriate order should be entered.

Respectfully submitted this 22nd day of July, 2026.

CITY OF SEVIERVILLE, TENNESSEE

By: /s/John T. Batson, Jr., BPR No. 009890

JOHN T. BATSON, JR, BPR NO. 009890
BRIAN R. BIBB, BPR NO. 031024
Attorneys for Defendant
Watson, Roach, Batson & Lauderback, P.L.C.
P.O. Box 131
Knoxville, TN 37901-0131
(865) 637-1700
jbatson@watsonroach.com
bbibb@watsonroach.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system:

Robert F. Croskery
Croskery Law Offices
The Highland Towers No. 2200
1017 Celestial Street
Cincinnati, OH 45202
rcroskery@croskerylaw.com

Dated this 22nd day of July, 2026.

/s/John T. Batson, Jr., BPR No. 009890
JOHN T. BATSON, JR, BPR NO. 009890
BRIAN R. BIBB, BPR NO. 031024
Attorneys for Defendant
Watson, Roach, Batson & Lauderback, P.L.C.
P.O. Box 131
Knoxville, TN 37901-0131
(865) 637-1700
jbatson@watsonroach.com
bbibb@watsonroach.com