Robert F. Croskery 040689
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE (KNOXVILLE)

| | |
|---|---|
| **JESSICA STRODE**<br>**Plaintiff,** | : **CASE NO. 3:25-cv-00611-KAC-DCP** |
| **v.** | : **PLAINTIFF'S REPLY BRIEF SUPPORTING HER MOTION** |
| | : **FOR PRELIMINARY AND PERMANENT INJUNCTIVE** |
| **CITY OF SEVIERVILLE,**<br>**Defendant** | : **RELIEF** |

Plaintiff, Jessica Strode, by and through the undersigned counsel, hereby presents her REPLY BRIEF in support of her Motion asking this Court to enjoin Defendant City of Sevierville from licensing or permitting the opening of any other liquor store in district 3 of the City of Sevierville in accordance with Rule 65 of the Federal Rules of Civil Procedure. See accompanying Memorandum.

Respectfully submitted,

/s/ *Robert F. Croskery*
Robert F. Croskery (Tenn Bar #040689)
Attorney for Plaintiff
Croskery Law Offices
The Highland Towers, No. 2200
Cincinnati, Ohio 45202
(513)232-5297
rcroskery@croskerylaw.com

## MEMORANDUM

## I. INTRODUCTION

Defendant's response seeks to recast this action as a dispute over municipal procedure governed exclusively by Tennessee's writ of certiorari. That argument fails because Plaintiff is seeking to vindicate federally protected rights under the Due Process and Equal Protection Clauses in which this Court is the proper forum. Specifically, the City violated Jessica Strode's constitutionally protected rights by abandoning the objective, mandatory regulatory framework the City enacted pursuant to the authority granted by the voters for the award of a retail package store certificate.

Because its arguments are based upon a faulty premise, Defendant's response actually supports, rather than undermining, Plaintiff's request for preliminary relief. Indeed, Defendant's response and attached affidavits confirm the Plaintiff's version of the central factual dispute—the City abandoned the mandatory regulatory framework it created to the Plaintiff's detriment. This case does not ask this Court to substitute its judgment for that of the City or to decide who should receive a retail package store certificate. Rather, it asks whether the Fourteenth Amendment permits the City to abandon the mandatory regulatory framework it enacted and administer the licensing process through arbitrary departures from that framework.

Because Plaintiff has demonstrated a strong likelihood of success on her federal constitutional claims, continues to suffer irreparable injury from the denial of the opportunity guaranteed by the City's own regulatory framework, faces injuries that cannot be adequately remedied by money damages alone, and because the public interest is always served by requiring government officials to comply with the Constitution and their own duly enacted laws, Defendant's response provides no basis for denying the requested preliminary injunction. For

these reasons, Defendant's response confirms that this action presents a federal constitutional controversy properly before this Court and that each of the Rule 65 factors continues to weigh strongly in favor of preliminary injunctive relief.

## II. DEFENDANT'S AFFIDAVITS CONFIRM MATERIAL FACTS SUPPORTING PLAINTIFF'S CLAIMS

Defendant's affidavits materially narrow the factual disputes before the Court. Although the parties disagree about the legal consequences of the City's conduct, Defendant's own evidence confirms the sequential nature of the application process, the absence of any contemporaneous review of Plaintiff's application, and the retrospective nature of the City's later assessment of the remaining applicants.

### A. The City employed a sequential review process.

Defendant acknowledges that Resolution R-2023-014 established a lottery to determine the numerical order in which applications would be reviewed and provided that, once an applicant within a zone was approved, no other applicant in that zone would be considered. McClurg Aff. ¶ 4; Smith Aff. ¶ 4. City staff therefore reviewed the first-drawn application before considering any subsequent applicant. McClurg Aff. ¶ 5; Smith Aff. ¶ 5. Because Applicant No. 1 was deemed complete and qualified, the remaining applications were not formally reviewed. McClurg Aff. ¶ 8; Smith Aff. ¶ 8.

### B. Plaintiff was Applicant No. 5, and her application was not reviewed during the original selection process.

The January 8, 2024 lottery placed KARS, LLC in position No. 1 and Plaintiff Jessica Strode in position No. 5. McClurg Aff. ¶¶ 3, 7; Smith Aff. ¶ 7. Because the City determined that Applicant No. 1 was complete and qualified, Plaintiff's application was never formally reviewed

during the original selection process. McClurg Aff. ¶¶ 5, 8; Smith Aff. ¶¶ 5, 8.

**C. The City reviewed Applicants Nos. 2 through 5 only retrospectively.**[1]

Defendant's affidavits further acknowledge that the City later reviewed the qualifications of the remaining Zone 3 applicants after publicity arose concerning the circumstances leading to Applicant No. 1's litigation. McClurg Aff. ¶ 14; Smith Aff. ¶ 14. That retrospective review allegedly determined that Applicants Nos. 2, 3, and 4 would not have qualified because of distance restrictions and that Plaintiff would not have qualified because her application was incomplete when the applicable deadlines passed. Id.

**D. The City's affidavits distinguish between separate application deadlines.**

Defendant acknowledges that proof of the right to possess the premises and government-issued identification were required during the December 11–29, 2023 application period. McClurg Aff. ¶ 6; Smith Aff. ¶ 6. Other materials—including a personal financial statement, credit check, two years of tax returns, and three months of bank statements—were due by January 15, 2024. Id.

**E. Resolution R-2025-002 amended rather than repealed the original resolution.**

Defendant acknowledges that the BMA adopted Resolution R-2025-002 on January 17, 2025, as what it characterizes as a "clarifying amendment" addressing the procedure applicable if a certificate were revoked by passage of time or abandoned. McClurg Aff. ¶ 15; Smith Aff. ¶ 15.

---

1 Plaintiff has located a contemporaneous newspaper article, published months before this litigation, attributing to Deputy Administrator Dustin Smith the statement that, if the first site were eliminated, "the opportunity to build a liquor store would pass down to Jessica Strode." Plaintiff does not intend to offer the article for the truth of the matters asserted therein. Rather, because Defendant has now submitted affidavits from City officials concerning the administration of the licensing process, Plaintiff intends, by separate motion, to seek limited discovery concerning those contemporaneous public statements before any evidentiary hearing takes place.

Defendant further admits that the amendment did not repeal Resolution R-2023-014. Id. Plaintiff submits that the enactment of a "clarifying amendment" after the controversy arose confirms that the original resolution remained relevant to the administration of the Zone 3 process and that the City perceived a need to alter or clarify the procedure governing succession.

### F. Summary of Factual Allegations by City That Relate to the Legal Issues of the Injunction

Defendant's affidavits confirm that the City adopted a sequential process, reviewed only Applicant No. 1 during the original selection proceeding, did not contemporaneously review Plaintiff's application, and later evaluated the remaining applicants retrospectively after controversy arose concerning Applicant No. 1. The principal dispute is thus not what process the City employed, but whether its subsequent administration of that process was consistent with the mandatory regulatory framework it enacted and with Plaintiff's rights under the Fourteenth Amendment.

## III. PLAINTIFF HAS DEMONSTRATED A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS.

### A. Defendant Mischaracterizes Plaintiff's Federal Claims as Tennessee Law Violations

Defendant attacks claims that Plaintiff does not make. Plaintiff does not contend that every municipal violation of a Tennessee municipal ordinance constitutes a federal constitutional violation. Nor does she ask this Court merely to correct an error of Tennessee municipal law. Instead, Plaintiff alleges that the City enacted objective and mandatory standards governing the award, revocation, extension, and succession of retail package store certificates; that those standards materially constrained the City's administrative discretion once the prescribed conditions occurred; and that the City thereafter abandoned that framework in a manner that

deprived Plaintiff of federally protected constitutional rights, which is why this Court is the correct forum for adjudicating the dispute.

The distinction is fundamental. A governmental entity does not violate the Fourteenth Amendment merely because an official misconstrues state or municipal law. But state and local law may create the property interest protected by the Constitution when it establishes objective criteria that meaningfully limit governmental discretion. ***Board of Regents v. Roth***, 408 U.S. 564, 577 (1972). The Constitution did not create Plaintiff's entitlement; the City did when it elected to replace unfettered discretion with mandatory, objective standards. Once such an entitlement exists, the question whether government deprived the claimant of that interest without constitutionally adequate procedures is a federal question under the Due Process Clause.

That deprivation of Jessica Strode's property interest absent due process is precisely Plaintiff's theory. The City exercised broad legislative discretion when it enacted Ordinance O-2023-015 and Resolution R-2023-014. Those enactments established the number and location of available certificates, the order in which applications would be reviewed, objective eligibility requirements, the circumstances under which a certificate would be revoked or extended, and the order in which subsequent applicants would be considered. Plaintiff does not challenge the City's authority to enact those provisions or ask this Court to substitute its policy judgment for that of the City. She challenges the City's subsequent administration of the mandatory regulatory framework it chose to enact.

Defendant's own affidavits confirm the distinction. The City acknowledges that the lottery established a numerical order of review, that only Applicant No. 1 was reviewed during the original selection process, and that the remaining applicants were evaluated only retrospectively. Defendant nevertheless argues as though the City retained the same broad discretion during

administration that it possessed when enacting the governing ordinance and resolutions. It did not. Once the City exercised its legislative discretion by adopting objective standards, its subsequent administration of those standards became constrained by the framework it enacted. Legislative discretion to enact rules is different from administrative authority to implement them. Plaintiff therefore does not seek relief merely because the City violated municipal law. She seeks relief because the City's abandonment of mandatory, objective standards deprived her of a claimed property interest without notice, hearing, or meaningful review and subjected her to treatment materially different from that afforded Applicant No. 1. Those claims arise directly under the Due Process and Equal Protection Clauses and are actionable under 42 U.S.C. § 1983.

**B. Tennessee Certiorari Does Not Supplant Federal Constitutional Claims.**

Defendant next argues that Plaintiff's exclusive remedy is a petition for common-law writ of certiorari in Tennessee state court. That argument rests upon the same flawed premise discussed above—that Plaintiff seeks only review of an allegedly erroneous municipal decision under Tennessee law. She does not.

Plaintiff brought this action pursuant to 42 U.S.C. § 1983 alleging violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Federal courts possess original jurisdiction over such claims pursuant to 28 U.S.C. §§ 1331 and 1343 regardless of whether the challenged governmental conduct also implicates state or municipal law.

The existence of a state-law remedy does not extinguish an otherwise valid federal constitutional claim. Nor may a state procedural mechanism displace the federal remedy Congress created through § 1983.

Defendant's authorities all suffer from the same defect. Each addresses the proper scope of

judicial review of municipal action under state law. None addresses the separate question presented here: whether a municipality that has enacted objective standards governing administrative action may arbitrarily depart from those standards in a manner that deprives an individual of a constitutionally protected property interest actionable under 42 U.S.C. § 1983. The City's authorities therefore fail not because Plaintiff disagrees with the legal principles they announce, but because each addresses a fundamentally different question than the one presented in this case.

Defendant's reliance on *Vereecke v. Huron Valley School District*, 609 F.3d 392 (6th Cir. 2010), is misplaced. *Vereecke* addressed municipal liability principles under § 1983 and did not involve a municipality's arbitrary departure from mandatory administrative standards creating a constitutionally protected property interest.

Accordingly, Defendant cites no authority holding that Tennessee's writ of certiorari provides the exclusive remedy for an individual alleging the deprivation of a constitutionally protected property interest under the Due Process and Equal Protection Clauses. Plaintiff's claims arise independently under 42 U.S.C. § 1983. Whether Tennessee also afforded certiorari review of some aspect of the City's administrative conduct does not deprive this Court of jurisdiction or eliminate Plaintiff's federal constitutional claims.

Moreover, Defendant's certiorari argument assumes, without analysis, that Plaintiff possessed an available and exclusive certiorari remedy. It never identifies the final administrative decision from which Plaintiff supposedly was required to seek review or explains when the sixty-day period for seeking such review allegedly commenced. Plaintiff's claims arise not from a single adjudicative order denying her application, but from the City's alleged abandonment of the mandatory succession framework established by its own enactments. Indeed, the City's present

assertion that Plaintiff herself was supposedly unqualified appears for the first time in affidavits submitted in this litigation rather than in any identified administrative decision. Whether Tennessee certiorari would have afforded review under those circumstances is, at minimum, considerably less clear than Defendant suggests.

The Court need not resolve that question at this stage. It is sufficient that Defendant has cited no authority establishing that Tennessee's writ of certiorari displaced Plaintiff's independent federal remedy under 42 U.S.C. § 1983 or required her to pursue certiorari before seeking relief for the constitutional violations alleged in the Complaint.

**C. Once the City Exercised Its Legislative Discretion by Enacting Objective Standards, Its Administrative Discretion Became Constrained.**

The City's position incorrectly assumes that the Board retained unfettered discretion throughout the licensing process. That assumption overlooks the critical distinction between legislative discretion to enact policy and administrative responsibility to implement mandatory standards already enacted. Plaintiff does not challenge the City's legislative judgment in creating retail package store districts, limiting the number of certificates, establishing eligibility requirements, or adopting a lottery to determine the order of review. Those policy decisions were committed to the Board's legislative discretion. The constitutional violation occurred after the fact, when the City abandoned the mandatory regulatory framework it had chosen to enact. The City cannot simultaneously rely upon its ordinances as the source of its authority while disregarding the mandatory limitations those same enactments imposed upon the exercise of that authority.

This distinction is firmly rooted in Tennessee law. Tennessee courts have long recognized that ordinances, like statutes, must be construed as a whole so as to give effect to every provision

and that courts should avoid interpretations rendering mandatory language superfluous. Likewise, administrative bodies possess only the authority granted by law and must administer enacted ordinances according to their terms rather than according to ad hoc policy preferences. See, e.g., ***Waste Connections of Tennessee, Inc. v. Metropolitan Government of Nashville & Davidson County***, 2013 Tenn. App. LEXIS 212 (recognizing that, after legislative enactment, the municipal body acts in an administrative capacity). *See* ***Bellamy v. Cracker Barrel Old Country Store, Inc.****,* 302 S.W.3d 278, 281 (Tenn. 2009) ("When 'shall' is used in a statute or rule, the requirement is mandatory."); ***Bolin v. Tenn. Farmers Mut. Ins. Co.***, 614 S.W.2d 566, 569 (Tenn. 1981) ("The general rule is that the word 'shall' ordinarily is construed to be mandatory rather than merely directory.") The City cannot invoke broad legislative discretion to justify disregarding the mandatory standards it previously enacted.

Here, the City exercised precisely that legislative discretion. Ordinance O-2023-015 and Resolution R-2023-014 established objective eligibility requirements, created a lottery establishing the order of review, specified the circumstances under which certificates would be revoked or extended, and established the procedure governing the consideration of subsequent applicants. Defendant's own affidavits confirm that the City implemented those enactments through a sequential review process in which only Applicant No. 1 was evaluated during the original proceedings.

Having elected to govern the licensing process through objective standards, the City could not thereafter invoke generalized discretion to disregard the very rules it enacted. To hold otherwise would allow a municipality to create mandatory eligibility requirements, mandatory deadlines, mandatory succession provisions, and mandatory review procedures while reserving the unfettered authority to ignore them whenever adherence became inconvenient. Such a

construction would deprive the ordinance of any meaningful limiting effect and would render its mandatory provisions effectively precatory.

Defendant addresses the meaning of the underlying ordinance by characterizing Resolution R-2025-002 as a "clarifying amendment." That characterization does not resolve the issue. If Resolution R-2025-002 merely clarified the meaning of Ordinance O-2023-015, then Plaintiff's claimed entitlement necessarily arose under the ordinance as originally enacted. If that is so, Resolution R-2025-002 adds nothing to the analysis. If, however, Resolution R-2025-002 substantively altered the legal consequences flowing from events already governed by Ordinance O-2023-015, Defendant cites no authority permitting the City to apply that later enactment retrospectively. Tennessee law generally presumes legislative enactments operate prospectively and disfavors retrospective impairment of accrued substantive rights. *See*, *e.g.*, ***Doe v. Sundquist***, 2 S.W.3d 919, 923–24 (Tenn. 1999). The Court need not resolve that issue at this stage because Plaintiff's federal constitutional claims arise from the City's alleged departure from the mandatory framework established by Ordinance O-2023-015 itself.

Because the City's administrative discretion became constrained by the objective standards it enacted, Plaintiff possessed considerably more than a unilateral expectation that the governing rules would be followed. She possessed a legitimate, constitutionally protected claim of entitlement to have her application administered in accordance with the mandatory regulatory framework adopted by the City. That is precisely the type of interest recognized in ***Board of Regents v. Roth*****,** 408 U.S. 564, 577 as deserving constitutional protection.

**D. Plaintiff Possesses a Constitutionally Protected Property Interest.**

Defendant repeatedly argues that Plaintiff possessed no protected property interest because the City retained discretion throughout the licensing process. That contention overlooks the

distinction discussed above. The relevant question is not whether the City possessed legislative discretion to enact the governing framework, but whether, after exercising that discretion by adopting objective standards, Plaintiff acquired a legitimate claim of entitlement to have those standards administered according to their terms.

The Supreme Court has long recognized that property interests protected by the Due Process Clause "are not created by the Constitution." Rather, they arise from "existing rules or understandings that stem from an independent source such as state law" and secure "certain benefits" through "claims of entitlement." ***Board of Regents v. Roth***, 408 U.S. 564, 577 (1972). Whether such an entitlement exists depends upon the extent to which governing law meaningfully limits official discretion. Where objective standards constrain governmental decision-making, applicants possess considerably more than a unilateral expectation; they possess an entitlement protected by the Fourteenth Amendment.

The Sixth Circuit has consistently applied that principle. In ***Med Corp., Inc. v. City of Lima***, the court explained that a plaintiff "cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." 296 F.3d 404, 409 (6th Cir. 2002). Likewise, in ***EJS Properties, LLC v. City of Toledo***, 698 F.3d 845, 856–57 (6th Cir. 2012), the Sixth Circuit rejected a claimed property interest because the governing ordinance employed permissive language and left the ultimate decision to the city's discretion. . Similarly, in ***Triomphe Investors v. City of Northwood***, 49 F.3d 198, 203–04 (6th Cir. 1995), the court found no protected property interest because the applicable ordinance reserved substantial discretion to municipal officials notwithstanding the applicant's compliance with minimum requirements. Those decisions do not undermine Plaintiff's position—they establish the governing analytical framework, and Plaintiff's allegations satisfy it.

Each asks the same question: **Did the governing law leave the governmental decision wholly discretionary, or did it materially constrain official discretion through objective standards?** In each of the foregoing cases, the answer was the former. Here, Plaintiff alleges precisely the opposite.

The City exercised its legislative discretion by adopting an ordinance and resolution that established objective eligibility requirements, created a lottery establishing the order of review, prescribed mandatory deadlines, defined when certificates would expire or be extended, and governed the succession process if the original applicant failed to qualify or retain the certificate. Defendant's own affidavits confirm that the City initially administered that framework through a sequential review process in which only Applicant No. 1 was evaluated during the original proceedings.

Plaintiff therefore does not claim an unconditional right to receive a retail package store certificate. Nor does she contend that the City's original legislative decisions were constitutionally compelled. Rather, she claims the considerably narrower—and constitutionally significant—right to have the City administer its legislatively enacted licensing framework according to the mandatory standards it chose to adopt. That claim is not a unilateral expectation. It is a claim of entitlement arising from objective governmental rules that materially constrained administrative discretion.

The City asks this Court to characterize Plaintiff's asserted property interest at too high a level of generality. The relevant question is not whether Plaintiff possessed an abstract right to own or operate a liquor store. The relevant question is whether she possessed a protected interest in the fair administration of a mandatory governmental selection process after the City itself elected to replace unfettered discretion with objective standards. Under *Roth* and the Sixth

Circuit's decisions in *Med Corp.*, *Triomphe*, and *EJS Properties*, that is the proper constitutional inquiry.

Because Plaintiff has demonstrated a substantial likelihood of establishing a constitutionally protected property interest, Defendant's repeated assertion that this case presents only an alleged violation of municipal law necessarily fails. The Complaint alleges the deprivation of a federally protected entitlement through arbitrary governmental action under color of state law. Those allegations state a classic claim under 42 U.S.C. § 1983.

**E. Defendant's Remaining Arguments Lack Merit.**

**1. The City's belated assertion that Plaintiff's application was incomplete does not defeat her constitutional claims.**

Defendant repeatedly argues that Plaintiff ultimately would not have qualified because her application allegedly lacked required financial documentation. That argument misses the point. Plaintiff does not claim entitlement to a certificate regardless of her qualifications. Rather, she claims entitlement to have the City administer its mandatory licensing process according to the framework it enacted. Had the City administered its licensing process according to the mandatory framework Plaintiff alleges it enacted, Plaintiff would have received the same opportunity to satisfy any applicable requirements that every sequential applicant was entitled to receive under that framework. Defendant cannot rely upon its own departure from the process as the basis for defeating Plaintiff's constitutional claims. As the other applicants were disqualified because of "distance issues" (presumably proximity to churches and schools), Jessica Strode was the only viable candidate remaining.

Indeed, Defendant's own affidavits acknowledge that Plaintiff's application was never

reviewed during the original selection process because Applicant No. 1 was deemed qualified. Only after controversy arose concerning Applicant No. 1 did the City conduct a retrospective review of Applicants Nos. 2 through 5 and conclude that Plaintiff allegedly would not have qualified.

Whether Defendant's retrospective conclusions are factually or legally correct presents a merits issue that cannot justify abandoning the mandatory process itself. Government cannot avoid constitutional scrutiny by reconstructing, after the fact, what it believes would have occurred had it followed the required procedures.

**2. Plaintiff plainly possesses standing.**

Defendant also challenges Plaintiff's standing. That argument fares no better. Plaintiff alleges a concrete, particularized injury: the loss of the opportunity to advance through the City's mandatory licensing process after the City allegedly abandoned the objective framework it enacted. That injury is directly traceable to Defendant's conduct and would be redressed by the injunctive relief requested, namely preservation of the status quo until the Court determines whether Defendant's actions comported with the Fourteenth Amendment.

This is not a generalized grievance shared by the public at large. It is an injury unique to the applicant whom the City itself placed fifth in the lottery and whose opportunity to advance depends entirely upon faithful administration of the governing ordinance and resolution.

**3. Defendant's remaining arguments improperly attempt to resolve disputed factual questions.**

Many of Defendant's remaining arguments ultimately depend upon accepting the City's version of disputed facts and drawing inferences in Defendant's favor. That is not the purpose of a preliminary injunction proceeding. At this stage, the Court asks whether Plaintiff has

demonstrated a substantial likelihood of success on the merits and whether the Rule 65 factors favor preserving the status quo pending final adjudication. Plaintiff has done so.

Indeed, Defendant's own affidavits substantially narrow the factual disputes by confirming the sequential nature of the original review process, the absence of any contemporaneous review of Plaintiff's application, and the City's later retrospective evaluation of the remaining applicants. The dispute is not over what the City did. Defendant's affidavits establish its actions. The dispute is over the constitutional significance of those admitted facts.

## IV. THE REMAINING PRELIMINARY INJUNCTION FACTORS CONTINUE TO FAVOR PLAINTIFF.

Defendant devotes comparatively little attention to the remaining Rule 65 factors. Once the City's conduct is viewed through the proper constitutional lens, each remaining factor strongly favors preservation of the status quo pending final adjudication.

### A. Plaintiff Continues to Suffer Irreparable Harm.

The deprivation of constitutional rights, even for minimal periods of time, ordinarily constitutes irreparable injury supporting preliminary injunctive relief. That principle applies with particular force where governmental action threatens to permanently deprive a plaintiff of a unique opportunity created by law.

Here, Plaintiff's injury extends far beyond delay. If Defendant proceeds to issue or recognize a retail package store certificate contrary to the mandatory regulatory framework Plaintiff challenges, the opportunity afforded Plaintiff under the City's enacted process will be permanently lost. No later monetary award can recreate the lost opportunity to compete for the only available certificate in Zone 3 or restore the status quo that existed before Defendant allegedly abandoned its governing framework.

Nor can Defendant avoid irreparable harm by arguing that Plaintiff ultimately may prove unsuccessful. The injury is not simply the loss of a liquor license. It is the loss of the constitutional right to have the City's mandatory licensing process administered according to the objective standards it enacted. Accordingly, Plaintiff has demonstrated precisely the type of irreparable injury Rule 65 exists to prevent.

**B. The Balance of Equities Favors Preserving the Status Quo.**

Plaintiff seeks only preservation of the status quo while this Court determines whether Defendant's actions comported with the Constitution. The requested injunction does not require the City to issue Plaintiff a certificate, revoke an existing certificate, or permanently resolve the parties' dispute. It merely prevents Defendant from taking actions that may render the Court's ultimate judgment ineffective.

By contrast, denial of injunctive relief would substantially prejudice Plaintiff. Once another new retail package store begins operations, unwinding those actions becomes significantly more difficult and the constitutional injury may become impossible to remedy fully.

Defendant identifies no comparable hardship from temporarily maintaining the existing status pending judicial review. Government suffers no legally cognizable injury from being required to comply with the Constitution and with the mandatory regulatory framework it enacted for itself.

**C. The Public Interest Strongly Supports Preliminary Relief.**

The public interest is always served by ensuring that governmental entities comply with the Constitution and faithfully administer the laws they enact. Citizens necessarily place confidence in objective governmental processes. That confidence is undermined if municipalities may disregard mandatory standards after they become inconvenient.

Conversely, granting preliminary relief does not interfere with legitimate municipal

policymaking. Plaintiff does not challenge the City's authority to regulate retail package stores or to establish the procedures governing their selection. She asks only that the City comply with the objective standards it chose to enact until this Court determines whether its conduct satisfies the requirements of the Fourteenth Amendment.

The public has no legitimate interest in allowing governmental officials to disregard mandatory legal standards while constitutional litigation remains pending. It has a substantial interest in transparent, even-handed, and constitutionally compliant administration of public laws. Accordingly, the public interest strongly favors issuance of the requested injunction.

Each Rule 65 factor points in the same direction. Plaintiff has demonstrated a substantial likelihood of success on the merits, irreparable constitutional injury absent interim relief, a balance of equities favoring preservation of the status quo, and a compelling public interest in requiring governmental compliance with constitutional and statutory mandates. Preliminary injunctive relief is therefore appropriate.

**V. Rule 19 Does Not Preclude Preliminary Relief.**

Defendant suggests that preliminary injunctive relief cannot be granted because other persons allegedly possess interests in the retail package store certificate. That argument overstates both Plaintiff's requested relief and Rule 19 itself.

Plaintiff does not presently ask this Court to award her a retail package store certificate or to enter a final judgment adjudicating the ultimate rights of every person who may claim an interest in the licensing process. Rather, Plaintiff seeks a preliminary injunction preserving the status quo while this Court determines whether Defendant's conduct violated the Fourteenth Amendment.

The requested relief is directed solely to Defendant City of Sevierville and seeks only to prevent further administrative action that could impair this Court's ability to afford meaningful

relief. Rule 19 requires joinder only when complete relief cannot be accorded among the existing parties or when the absent person's interests are such that disposition in the person's absence would impair those interests or expose existing parties to inconsistent obligations. Neither circumstance exists here.

First, complete preliminary relief may be afforded between Plaintiff and the City. The Court can determine whether Defendant should be temporarily enjoined from issuing or recognizing a retail package store certificate in Zone 3 pending resolution of Plaintiff's constitutional claims without adjudicating the ultimate rights of any absent applicant. Second, the requested injunction does not determine ownership of a certificate, revoke an existing certificate, or permanently adjudicate anyone's legal rights. It merely preserves the existing controversy until the Court can determine whether Defendant's administration of the licensing process complied with federal constitutional requirements. To the extent the Court later concludes that additional parties should be joined before final judgment, Rule 19 provides an orderly mechanism for accomplishing that objective. The speculative possibility that additional parties may ultimately become appropriate participants in the litigation provides no basis for denying interim equitable relief necessary to preserve the Court's jurisdiction and ability to render effective relief.

Accordingly, Rule 19 presents no obstacle to issuance of the requested preliminary injunction.

## VI. CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant her Motion for Preliminary Injunction and award such further relief as the Court deems just and proper.

**CERTIFICATE OF SERVICE**

I hereby confirm that the foregoing document was served upon all parties by placing it on the Court's electronic server for service to all parties on the date time-stamped herein.

Respectfully submitted,

/s/ *Robert F. Croskery*
Robert F. Croskery
Attorney for Plaintiff