ADAMS AND REESE LLP

Attorneys at Law
Alabama
Colorado
Florida
Georgia
Louisiana
Mississippi
North Carolina
South Carolina
**Tennessee**
Texas
Washington, DC

**Eric Evans**
Counsel
Direct 615.259.1011
E-Fax: 615.687.1508
eric.evans@arlaw.com

December 29, 2023

City Recorders Office
c/o Ms. Lynn McClurg — City Recorder
120 Gary Wade Boulevard
Sevierville, Tennessee 37862

Re: *Retail Package Store Application — Letter of Intent Securing Property — 750 Dolly Parton Parkway, Sevierville, TN 37862*

Ms. McClurg:

This letter along with the documents enclosed herewith, shall serve as evidence of retail package store applicant, KARS, LLC d/b/a The Bottle Shop, a Tennessee limited liability company ("Applicant"), securing the requisite right to possess the real property located at 750 Dolly Parton Parkway, Sevierville, Tennessee 37862 ("Property"), if it is approved by the City of Sevierville and the Tennessee Alcoholic Beverage Commission for a retail package store license. Enclosed are the following documents:

- Ground Lease Agreement dated April 1, 2019 by and between Rocky Top Ford Lincoln, LLC, a Tennessee limited liability company ("RTFL") as the Lessee, and Whaley Properties, Inc. as the Lessor ("Lease"), and;

- Letter of Intent dated December 27, 2023, by and between RTFL and Applicant in which RTFL will grant Applicant a leasehold estate in the Property upon the City of Sevierville approving Applicant for a retail package store license ("LOI").

Per the Lease, RTFL is the current tenant at the Property and, under Section 22, has the unfettered right to purchase WPI's ownership interest prior to — at the earliest — April 1, 2024, the un-extended termination date ("Purchase Option"). The LOI between RTFL and the Applicant identifies that if the Applicant is approved for a retail package store license by the City of Sevierville and the Tennessee Alcoholic Beverage Commission, that RTFL will execute its Purchase Option and enter into a lease agreement with the Applicant.

If you have any questions or need any further information, please do not hesitate to reach out at your convenience to the number and email address above.

Respectfully,

**ADAMS AND REESE LLP**

Enclosures

Eric G. Evans (TN BPR: 34224)

EXHIBIT
2
(Answer to Amended Complaint)

Via Email ONLY
Ms. Stacy Champagne
Managing-Member, KARS, LLC
stacychampagnetn@gmail.com

RE: LETTER OF INTENT — COMMERCIAL LEASE OF 750 DOLLY PARTON PARKWAY, SEVIERVILLE, TENNESSEE 37862

Dear Ms. Champagne,

It is with great pleasure that we at Rocky Top Ford Lincoln, LLC, a Tennessee limited liability company ("Rocky Top Ford Lincoln," "We," "Our," or "Us") extend this Letter of Intent ("Letter") to KARS, LLC d/b/a The Bottle Shop, a Tennessee limited liability company ("KARS," "You," or "Your")) a for your review and execution regarding a commercial lease for the real property commonly known as 750 Dolly Parton Parkway, Sevierville, Tennessee 37862 ("Property"). The full terms of any lease agreement will be set forth in a separate document. In exchange of mutual consideration, the sufficiency of which is hereby acknowledged, the following provisions of this letter shall be binding upon the parties to the extent allowed under applicable law:

1. Purchase Option. Under Section 22 of Our Ground Lease Agreement with Whaley Property, Inc. ("WPI"), dated and effective April 1, 2019 ("Lease") We have an option to purchase the Property ("Purchase Option"). We represent to You that, in the event You are approved by the City of Sevierville and the Tennessee Alcoholic Beverage Commission for a retail package store license, we will: (1) exercise this Purchase Option, and (2) enter into a commercial lease agreement with You for your operation of a retail package store at the Property, which will be negotiated in good-faith. We represent to You that, as of the date of this Letter and through the period of time needed for our effectuation of the Purchase Option, that we have full right and authority to exercise the same.

2. Lease Exclusivity. We understand that Your application for a retail package store license is contingent upon securing property at which You will operate. Accordingly, We agree that We will not enter into any lease agreement or letter of intent with any other potential retail package store license at the Property while your application is pending. Similarly, You agree that You will not enter into any lease agreement or letter of intent with any other entity or individual regarding a retail package store license application in Sevierville, Tennessee during the pendency of the application process.

3. Authority. We represent to You, and You represent to Us, that the signatories below have full authority to execute and bind our respective entities to the terms of this Letter.

If Your find the terms and conditions of this Letter to be acceptable and an accurate reflection regarding both Our and Your intent as to the Property, please indicate by signing in the space provided below and returning a copy to us via hardcopy or email.

Sincerely,

ROCKY TOP FORD LINCOLN, LLC
a Tennessee limited liability company

By: H. Richard Llewellyn
Its: President

AGREED TO BY:

KARS, LLC d/b/a THE BOTTLE SHOP
a Tennessee limited liability company

By: Stacy Champagne
Its: Managing-Member

# GROUND LEASE AGREEMENT

This Ground Lease Agreement (this "**Lease**") is made and entered into as of April 1, 2019 (the "**Effective Date**") by and among **Whaley Properties, Inc.**, a Tennessee corporation, (the "**Lessor**"); **Rocky Top Ford Lincoln, LLC**, a Tennessee limited liability company, (the "**Lessee**"); and **H. Richard Llewellyn, Jr.** (the "**Guarantor**").

## BACKGROUND STATEMENT

A. The Lessor owns certain real property located in the Fifth Civil District of Sevier County, Tennessee, having an address of 750 Dolly Parton Parkway, Sevierville, TN 37862, being designated by the Sevier County Property Assessor as Tax Parcel 029.00 (Ctrl Map 049L, Group A) and Tax Parcel 011.00 (Ctrl Map 049L, Group A), being more particularly bounded and described on **Exhibit A** attached hereto and incorporated herein by this reference (the "**Leased Premises**").

B. The Lessor desires to lease the Leased Premises to the Lessee, and the Lessee desires to lease the same from the Lessor.

NOW, THEREFORE, in consideration of One Dollar ($1.00) and other good and valuable consideration and the further consideration of the payment of the rents as hereinafter set forth and the performance of the covenants and conditions to be performed by the respective parties hereto, the Lessor does hereby let and lease to the Lessee the Leased Premises upon the terms and conditions as set forth in this Lease:

## AGREEMENT

1. **Initial Term of Lease**. This Lease shall be for an initial term of five years commencing on the Effective Date and ending on the day before the fifth anniversary of the Effective Date, unless sooner terminated or extended as provided in this Lease (the "**Initial Term**").

2. **Option Terms**. Provided that (i) this Lease is still in effect and (ii) no state of facts then exist which constitute an Event of Default, or which, with the passing of time or the giving of notice, would constitute an Event of Default, the Lessee shall have an option to extend this Lease for two additional terms of five years each (each an "**Option Term**") beginning on the expiration of the Initial Term or the prior Option Term, as may be applicable, upon the terms and conditions herein contained. The Lessee may only exercise an Option Term by giving the Lessor written notice of such extension on or prior to a date which is not less than 180 days before the expiration of the expiring term. The

Initial Term and the exercised Option Term, or Option Terms, if any, are referred to collectively hereinafter as the "**Term.**"

3. **One Hundred Percent Net Lease**. It is hereby declared to be the intention of the Lessor and the Lessee that the rent payable to the Lessor shall be 100% net to the Lessor and that all costs, expenses, and obligations of every kind relating to the Leased Premises which may arise or become due during the Term of this Lease shall be paid by the Lessee, and that the Lessor shall be indemnified by the Lessee against all such costs, expenses, and obligations. Notwithstanding anything to contrary contained herein, nothing in this Lease is intended to limit the foregoing general understanding to the effect that this is intended to be a 100% net lease.

4. **Rent**. The Lessee shall pay to the Lessor rental payments as follows: During the Initial Term, the Lessee shall pay, and the Lessor shall accept as annual rental for the Leased Premises, the sum of $158,175.00 (7.5% of the current appraised value), payable, in advance, in equal monthly installments of $13,181.25 each, with the first monthly installment due and payable on the Effective Date and subsequent monthly installments due and payable on the same date each following month until the expiration of the Initial Term. In the event that the Lessee exercises the first Option Term, the Lessee shall pay, and the Lessor shall accept as annual rental for the Leased Premises, the sum of $179,265.00 (8.5% of the current appraised value), payable, in advance, in equal monthly installments of $14,938.75 each, with the first monthly installment due and payable on the fifth anniversary of the Effective Date and subsequent monthly installments due and payable on the same date each following month until the expiration of the first Option Term. In the event that the Lessee exercises the second Option Term, the Lessee shall pay, and the Lessor shall accept as annual rental for the Leased Premises, the sum of $200,355.00 (9.5% of the current appraised value), payable, in advance, in equal monthly installments of $16,696.25 each, with the first monthly installment due and payable on the tenth anniversary of the Effective Date and subsequent monthly installments due and payable on the same date each following month until the expiration of the second Option Term. Monthly rental installments, and additional rent due under this Lease, not paid within 15 days following the due date shall be assessed a one-time late charge of 5% for the respective delinquent installment/amount and shall accrue interest at the rate of 15% per annum from the date due until paid; provided that in no event shall the Lessee be obligated to pay any portion of said interest that is in excess of applicable usury law. In the event this Lease is terminated pursuant to either party's termination rights set forth herein prior to a full month's end, any such Lease payment previously paid shall be prorated for the portion of the month prior to termination, and the Lessor shall return the balance of the rental payment to the Lessee.

5. **Use**. The Leased Premises shall be used by the Lessee as an automotive retail outlet, which shall include, but is not limited to the following uses: parking, car display, and business offices, and for no other use unrelated to an automotive retail outlet without the

Lessor's prior written consent, which shall not be unreasonably withheld, conditioned or delayed.

6. **Improvements to the Leased Premises.**

6.1 The Lessor hereby represents to the Lessee, to the extent of the Lessor's actual knowledge, that:

(A) The roof on the improvements located on the Leased Premises is in good condition with no known holes or leaks;

(B) All exterior lights located on the Leased Premises are in good condition and functioning properly;

(C) The HVAC and air compressor systems located on the Leased Premises have been regularly serviced, are functioning properly and are in good working order; and

(D) All equipment located on the Leased Premises, but not purchased by Lessee, is in good condition and proper working order for the use of each piece of equipment.

If any of the aforementioned representations proves to be false as of the Effective Date, the Lessor shall, at Lessor's sole cost and expense, repair or replace those items that are malfunctioning or broken within thirty (30) days of receipt of notice from the Lessee of the same.

6.2 **SUBJECT TO SECTION 6.1 ABOVE, THE LEASED PREMISES ARE LEASED TO THE LESSEE, AND THE LESSEE ACCEPTS THE SAME, IN THEIR "AS IS" CONDITION WITHOUT REPRESENTATION OR WARRANTY BY THE LESSOR AS TO THE CONDITION OF THE LEASED PREMISES.** The Lessor shall have no obligation to build or make any improvements on the Leased Premises whatsoever. It is specifically agreed and understood that the Lessee is under no obligation to further improve the Leased Premises; however, all improvements made by the Lessee, to the Leased Premises shall be at the Lessee's sole expense. Any permanent improvements built by the Lessee, or otherwise, on the Leased Premises shall, upon the expiration or lawful termination of the Term, become the Lessor's property.

6.3 The Lessee shall have the right to make minor improvements to the Leased Premises without the consent of the Lessor, such minor improvements may include, but are not limited to, temporary modifications or additions to the design of improvements, improvements to sidewalks, driveways, and landscaping presently located on the Leased Premises. The Lessor shall have the right to

approve or reject the design of any new construction on the Leased Premises or any permanent modifications or additions to the design of improvements presently located on the Leased Premises. The Lessee agrees that for any improvements requiring the Lessor's consent, no work shall commence until the Lessor has approved the designs, plans, and specifications for such construction, modification, or addition in writing, such approval shall not be unreasonably withheld, conditioned or delayed. The Lessee shall not demolish or remove any improvements placed on the Leased Premises unless the Lessee has obtained the Lessor's prior written approval for such demolition or removal, such approval shall not be unreasonably withheld, conditioned or delayed. In connection with all required approvals, the Lessee shall submit to the Lessor a written request for approval, together with (i) the plans and specifications for any improvement, remodeling, modification, or addition and (ii) evidence of the Lessee's ability to pay the cost of the same. If within 30 days after the Lessee submits such request and the required supporting documentation to the Lessor for approval and the Lessor has not given the Lessee notice of the Lessor's rejection of such request stating the reason for such rejection, such request shall be considered approved by the Lessor.

6.4 The Lessee shall be responsible for, and agrees to obtain, all building permits, other permits, utility services, and certificates of occupancy required in connection with the use and occupancy of any buildings or other improvements to be constructed on the Leased Premises.

6.5 The Lessor does hereby give notice that the Lessee shall never, under any circumstances, have the power to subject the present or residual estate of the Lessor in the Leased Premises or any improvements thereon to any mechanics' or materialmen's lien or liens of any kind. All persons who may hereafter during the Term of this Lease furnish work, labor, services, or materials to the Leased Premises upon the request or order of the Lessee or any persons claiming under, by, or through the Lessee, must look wholly to the interest of the Lessee, and not to that of the Lessor.

6.6 The Lessee shall indemnify and save harmless the Lessor against any and all claims, demands or obligations which may be had against the Lessor by reason of any construction on, or alteration of, the Leased Premises, and the Lessee shall cause to be written at its sole expense a general liability policy for not less than $1,000,000.00 which shall name the Lessee and the Lessor as an additional insureds as their respective interests may appear. A duplicate copy or a certificate of such policy shall be delivered by the Lessee to the Lessor promptly upon the writing of such policy and upon each renewal date, together with adequate evidence of the fact that the premiums therefore are paid.