**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE, KNOXVILLE DIVISION**

| | | |
|---|---|---|
| **JESSICA STRODE**, | : | **Case No. 3:25-CV-00611-KAC-DCP** |
| Plaintiff, | : | **PLAINTIFF'S RENEWED MOTION FOR A PRELIMINARY INJUNCTION** |
| v. | : | **AGAINST CITY OF SEVIERVILLE AND KARS, LLC** |
| : | : | |
| **CITY OF SEVIERVILLE, TENNESSEE**, | : | |
| and | : | |
| **KARS, LLC** | : | |
| Defendants | | |

## INTRODUCTION

1. Plaintiff hereby renews her motion for preliminary injunction following the Court's September 8, 2026 Order (Doc. No. 31) denying her original motion without prejudice and permitting renewal following discovery. Plaintiff has since taken the partial deposition of City Administrator Dustin Smith, filed a Verified First Amended Complaint joining KARS, LLC as a defendant, and obtained the City's Answer and supporting exhibits. The renewed motion presents the factual record developed since the Court's earlier ruling and seeks preservation of the status quo pending adjudication of Plaintiff's claims. This Motion seeks a preliminary injunction prohibiting KARS, LLC from opening or operating its proposed retail package liquor store at 750 Dolly Parton Parkway, Sevierville, Tennessee, during the pendency of this litigation; and prohibiting the City of Sevierville, within its authority, from authorizing or permitting the store to commence operations under the Certificate of Compliance issued to KARS, LLC.

## FACTUAL BACKGROUND

A. The City's Regulatory Framework and the Lottery

2. The City of Sevierville adopted Ordinance O-2023-015, establishing the local requirements for the issuance of Certificates of Compliance for retail package liquor stores. Section 8-315(4) requires a certificate holder to open its store within twelve months of issuance unless the Board of Mayor and Aldermen grants an extension, and prescribes revocation for failure to comply with its requirements. (Verified First Amended Complaint, Doc. 33, ¶¶ 13–14.)

3. The City also adopted Resolution R-2023-014, establishing procedures for considering applications, including a lottery to determine the order in which competing applications would be reviewed. The lottery established an order of priority among applicants competing for a limited number of retail package store opportunities. (Id., ¶¶ 15–18.)

**4.** Five applicants participated in the lottery for Zone 3. Defendant KARS, LLC was selected first. Plaintiff Jessica Strode was selected fifth. The City reviewed KARS's application and issued it a Certificate of Compliance, but did not formally review the remaining applications at that time. (Verified First Amended Complaint, Doc. 33, ¶¶ 17–21; Deposition of Dustin Smith, October 14, 2026, Doc. 40-1, PageID ## 582, 584.)

3.

5. Applicants Nos. 2, 3, and 4 were subsequently determined by the City to have proposed locations that failed to satisfy applicable distance requirements. Accordingly, if KARS's opportunity were eliminated, Plaintiff was the next applicant in lottery order whose proposed location had not been disqualified on geographical grounds. (Verified First Amended Complaint, ¶¶ 41–43.)

**B. KARS's Original Property Arrangements and the Expiration of Its Purchase Option**

6. KARS did not own its proposed premises at 750 Dolly Parton Parkway when it applied for a Certificate of Compliance. Its claimed ability to obtain possession depended upon arrangements involving Rocky Top Ford Lincoln, LLC, including a ground lease, an option to purchase, and a letter of intent concerning a proposed lease to KARS. (Id., ¶¶ 25–27; City's Answer, Doc. 39, ¶ 26 and Ex. 2.)

7. The City issued KARS a Certificate of Compliance on February 12, 2024. A Memorandum of Leased Premises in the City's possession dated February 16, 2024 identified Whaley Properties, Inc. as owner, Rocky Top Ford Lincoln, LLC as landlord, and KARS as tenant. (Verified First Amended Complaint, ¶¶ 31–34; City's Answer, Ex. 3.)

8. The purchase option expired on April 1, 2024, without the contemplated purchase having closed. KARS subsequently acknowledged that fact in litigation

filed in the Chancery Court for Sevier County, Tennessee. (Verified First Amended Complaint, ¶¶ 27–30; Exhibit 4 thereto, KARS, LLC v. Ogle, No. 24-5-106.)

9. By April 2024, Ronald and Betty Ogle had acquired the property. Ronald Ogle publicly opposed the proposed liquor store and contemplated using the property for another attraction. City Administrator Dustin Smith acknowledged those circumstances during his deposition. (Smith Dep., pp. 22–25, Doc. 40-1, PageID ## 568–571.)

10. On May 25, 2024, KARS and related entities commenced litigation against the Ogles and others in Sevier County Chancery Court, asserting claims concerning their rights in the property. The pleading acknowledged the failure to complete the purchase within the option period and sought judicial relief concerning the parties' disputed rights. (Verified First Amended Complaint, Ex. 4; City's Answer, Doc. 39, Ex. 4.)

11. Thus, after April 1, 2024, KARS could no longer rely upon an unexpired purchase option as an existing right to acquire ownership. Its asserted continuing rights were contested, and the relief sought in Chancery Court to obtain the right to possess the property was only equitable relief as concerning the real estate. No judgment establishing KARS's asserted entitlement to acquire the property has been identified in the present record.

**C. KARS's Requests for Extensions and the City's Response**

12. KARS did not open its proposed retail package store within the original twelve-month period following issuance of its Certificate of Compliance.

13. On January 8, 2025, KARS member Stacy Champagne contacted City Administrator Dustin Smith requesting additional time and referring to pending litigation concerning the property. The City's Answer identifies that communication as the basis for KARS's first extension request. (City's Answer, Doc. 39, ¶ 36 and Ex. 6.)

14. Although the mere existence of litigation was disclosed, the written materials produced by the City do not establish that KARS furnished the Chancery Court complaint to the Board. Nor do they expressly disclose that the purchase option had expired without exercise. Nor do they explain the nature of the equitable relief upon which its ability to acquire the property depended.

15. Nor does the presently identified record establish that the City reviewed the Chancery Court pleading, obtained a legal evaluation of KARS's asserted property rights, or made a determination concerning the effect of the expired purchase option before granting the requested extension.

16. On January 17, 2025, the Board granted KARS an extension through February 12, 2026. At that time, the property had not been conveyed to KARS or its

affiliated development company, and, in fact, was owned by the Ogles, one of whom actually expressed opposition to a liquor store on the property, while the litigation concerning the property remained unresolved. (City's Answer, ¶ 37 and Ex. 6; para. 19 infra.)

17. KARS subsequently requested another extension on July 11, 2025. On July 23, 2025, Betty Ogle conveyed the property to Robert Henderson Development 1, LLC, an entity sharing common owners with KARS. The Board granted the second extension on August 4, 2025, extending the deadline for opening the store to February 12, 2027. (City's Answer, ¶¶ 39–40 and Exs. 5 and 7.)

18. Accordingly, the City granted KARS repeated extensions of its original opportunity notwithstanding the expiration of the purchase option, the intervening ownership dispute, and KARS's inability to open the store within the original period.

**D. The City's Contemporaneous Understanding of Plaintiff's Position**

19. In an article published April 27–28, 2024, in *The Mountain Press*, City Administrator Dustin Smith addressed the possibility that KARS's proposed site might be eliminated. Smith stated that, in that event, the opportunity to build a liquor store would pass to Jessica Strode. (Smith Dep., pp. 28–40; Doc. 28-1, PageID ## 339–340).

20. Smith's statement reflected the City's contemporaneous understanding that Plaintiff occupied the next potentially eligible position in the lottery after the geographically disqualified applicants. At the time of that statement, the City had not conducted a formal review of Plaintiff's application. (Smith Dep., pp. 35–38, Doc. 40-1, PageID ## 581–584.)

21. During his October 14, 2026 deposition, Smith confirmed that the City had not reviewed Plaintiff's application when he made the statement concerning her position in the lottery. (Smith Dep., p. 38, lines 8–18, Doc. 40-1, PageID # 584.)

22. Smith further acknowledged that the City subsequently examined Plaintiff's application after litigation arose and that the retrospective examination might not have employed the same review process used for KARS. (Smith Dep., pp. 38–40, Doc. 40-1, PageID ## 584–586.)

23. The City now contends that Plaintiff's application was incomplete because certain supporting documents were missing. Smith acknowledged, however, that Plaintiff was never informed of those alleged deficiencies during the original application process. He explained that the City did not undertake a formal review or disqualification process for the remaining applicants because it believed there was no need to do so. (Smith Dep., p. 40, lines 1–24, Doc. 40-1, PageID # 586.)

24. Smith also testified that the application process involved separate deadlines,

including a later deadline for financial documentation after the lottery selection. (Smith Dep., Doc. 40-1, PageID ## 587–588.)

25. Plaintiff disputes the City's retrospective determination that she was ineligible. She maintains that the City was required to administer the lottery and succession procedures established by its original enactments and to afford her the consideration contemplated by those procedures when KARS failed to satisfy the applicable conditions.

**E. Subsequent Proceedings and the Need for Preliminary Relief**

26. Plaintiff commenced this action challenging the City's administration of the lottery and its continued recognition of KARS's Certificate of Compliance. The Court denied Plaintiff's original motion for preliminary injunction without prejudice on September 8, 2026, expressly permitting renewal following discovery. (Doc. 31.)

27. Plaintiff thereafter filed her Verified First Amended Complaint, joining KARS as a defendant. The City filed its Answer on October 16, 2026, attaching additional documents concerning KARS's property arrangements, the Chancery litigation, and the extensions granted by the Board. (Docs. 33, 39.)

28. On October 14, 2026, Plaintiff took the partial deposition of City Administrator Dustin Smith. By agreement of the parties, the examination was

limited to Smith's April 2024 public statements, the circumstances underlying those statements, and the City's contemporaneous understanding of its procedures. The deposition remains open for continuation following KARS's appearance. (Doc. 37; Smith Dep., Doc. 40-1, PageID ## 547–597.)

29. Meanwhile, KARS is proceeding toward opening and operating its proposed retail package liquor store at 750 Dolly Parton Parkway. As alleged in the Verified First Amended Complaint, KARS has undertaken construction and intends to commence operations under the disputed Certificate of Compliance. Unless preliminary relief is granted, KARS may complete construction and begin operations before the legality of the City's actions can be adjudicated. (Doc. 33, ¶¶ 40, 107–108.) Thus, the prospect that KARS will commence operations before this litigation can be adjudicated is immediate rather than speculative.

30. Plaintiff seeks to preserve the existing condition—that the proposed store has not commenced operations—until the Court can adjudicate the parties' competing rights. Without preliminary relief, KARS may commence operations before Plaintiff's claims can be resolved, substantially impairing the practical value of the exclusive licensing opportunity she seeks to vindicate.

## ARGUMENT AND AUTHORITIES

### A. Standard for Preliminary Injunctive Relief

31. A preliminary injunction is an extraordinary remedy intended to preserve the Court's ability to afford meaningful relief following adjudication on the merits. In determining whether preliminary relief is appropriate, the Court considers four factors: (1) whether Plaintiff has demonstrated a likelihood of success on the merits; (2) whether Plaintiff will suffer irreparable injury absent an injunction; (3) whether issuance of an injunction will cause substantial harm to others; and (4) whether the public interest favors the requested relief. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007); *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

32. These factors are considered together, although Plaintiff must demonstrate more than a mere possibility of irreparable harm. *Winter*, 555 U.S. at 22. The Court need not finally resolve disputed issues of fact or law at this preliminary stage, but must determine whether the record justifies preserving the parties' positions pending a decision on the merits.

33. Here, Plaintiff does not request that the Court immediately award her a Certificate of Compliance, compel the issuance of a state liquor license, or authorize her to open a retail package store. Rather, she seeks to prevent KARS from commencing operations under the contested Certificate of Compliance until the Court determines whether the City lawfully administered its lottery procedures

and extensions.

34. This distinction is important. The requested injunction would preserve the existing condition: KARS has not opened its store. Denial of preliminary relief, by contrast, would permit KARS to commence commercial operations while the legality of its continued entitlement to the certificate remains under judicial review.

**B. Plaintiff Has Demonstrated a Likelihood of Success on the Merits**

**1. The City Was Required to Administer Its Regulatory Framework According to Its Terms.**

35. The City exercised its legislative authority by adopting Ordinance O-2023-015 and Resolution R-2023-014. Those enactments established the conditions governing the issuance and continued recognition of Certificates of Compliance, including a lottery determining the order in which competing applicants would receive consideration.

36. The City's authority to grant extensions does not eliminate its obligation to exercise that authority within the governing framework. Although Section 8-315(4) permits the Board to extend the time for opening a store, the existence of that discretion does not authorize the City to disregard other applicable requirements or the procedures governing competing applicants.

37. KARS received its Certificate of Compliance on February 12, 2024. Its purchase option expired without closing on April 1, 2024, and litigation concerning

its claimed property rights followed. By January 17, 2025, when the City granted the first extension, KARS's ability to acquire the premises remained the subject of unresolved litigation. At that time, Ron Ogle retained an ownership interest in the property and had expressly opposed its use as a liquor store. (Smith Dep., pp. 20–25, 27–30, Doc. 40-1, PageID ## 566–571, 573–576; Doc. 28-1, PageID ## 339–340.) Thus, the City was aware that KARS's claimed right to develop the proposed location was contested, yet the presently identified record does not establish that the City investigated the legal sufficiency of those rights before granting the extension.

38. The written record of KARS's first extension request disclosed the mere existence of litigation but did not expressly disclose that the purchase option had expired without exercise, explain the legal consequences of that expiration, or establish that the Board reviewed the Chancery Court pleading before granting additional time.

39. Plaintiff does not contend that the mere existence of litigation automatically disqualified KARS. Rather, Plaintiff contends that the City was required to determine whether KARS continued to satisfy the conditions imposed by its governing enactments before extending its opportunity to operate a store, particularly where the rights supporting its proposed location had become

contested. KARS acknowledged that its purchase option had expired without exercise and sought equitable relief concerning its disputed property rights. That circumstance raised a substantial question whether KARS continued to possess the property rights required by the City's regulatory framework when the first extension was granted. If such an examination established that KARS no longer satisfied the property-rights requirements applicable to its Certificate of Compliance, the City could not properly preserve an otherwise invalid authorization merely by extending the deadline for opening the store. Simple fairness and impartial administration of the objective requirements should have resulted in the cancellation of the Certificate in accordance with the resolution, rather than an extension.

40. The City's subsequent grant of a second extension, after an affiliated entity acquired the property in July 2025, does not necessarily resolve the legality of the first extension. The first decision must be evaluated in light of the circumstances and governing requirements applicable when that decision was made.

41. Plaintiff accordingly presents a substantial question whether the City lawfully continued KARS's Certificate of Compliance and whether, under the original ordinance and lottery resolution, the City was required instead to proceed to consideration of the remaining applicants in their established order.

**2. The City's Retrospective Treatment of Plaintiff's Application Raises an Independent Question Concerning Consistent Administration of the Lottery.**

42. The City initially reviewed only KARS's application. City Administrator Smith acknowledged that Plaintiff's application had not been formally reviewed when he publicly identified her in April 2024 as the applicant who would receive the opportunity if KARS's proposed location were eliminated. (Smith Dep., pp. 35–38, Doc. 40-1, PageID ## 581–584.)

43. The City subsequently asserted that Plaintiff's application was incomplete because certain supporting documents had not been supplied. Smith acknowledged that the City had not notified Plaintiff of those deficiencies and that its later review might not have followed the same process used in reviewing KARS.

44. The City may contend that its application instructions placed responsibility upon every applicant to submit a complete application, regardless of whether a deficiency notice was issued.

45. Plaintiff does not dispute that applicants were required to comply with applicable submission requirements. The material question is whether the City could decline to review Plaintiff's application when submitted, provide no notice of alleged deficiencies, and then rely upon those deficiencies in a subsequent review conducted under a potentially different process to defeat the position she acquired in the lottery.

46. This question is particularly significant because the City afforded KARS repeated opportunities to preserve its position despite the unresolved controversy concerning its proposed premises, while declining to afford Plaintiff an opportunity to address the deficiencies subsequently asserted against her.

47. Plaintiff contends that these circumstances demonstrate a substantial likelihood of establishing that the City failed to administer its regulatory procedures consistently and in accordance with the requirements governing the lottery and succession process.

**3. Plaintiff's Claim for Mandamus and Related Declaratory Relief Supports Judicial Enforcement of Mandatory Duties.**

48. Plaintiff also seeks relief requiring the City to perform duties imposed by its governing enactments. Mandamus may be available to compel performance of a clear, ministerial duty, but not to dictate the manner in which an official exercises discretion lawfully entrusted to that official.

49. Plaintiff does not ask the Court, through mandamus, to substitute its judgment for the Board's on a discretionary extension decision. Rather, Plaintiff seeks enforcement of those duties that the ordinance and resolution made mandatory, including adherence to the prescribed application and succession procedures when the conditions requiring consideration of another applicant have been satisfied.

50. The distinction between mandatory duties and discretionary authority is central

to Plaintiff's claim. To the extent the City possessed discretion to grant extensions, that discretion must be distinguished from any separate duty to determine whether the certificate holder remained eligible and to follow the prescribed procedure when an applicant's opportunity terminated.

51. Plaintiff submits that the record developed since the Court's September 8, 2026 Order warrants preliminary preservation of the existing condition while the Court determines the scope of those duties and whether the City's actions complied with them.

**C. Plaintiff Will Suffer Irreparable Harm Without Preliminary Relief**

52. Plaintiff seeks to protect an opportunity created by the City's regulatory enactments and allocated through a competitive lottery. The opportunity is not simply to operate a business somewhere in Sevierville, but to receive consideration for a particular, geographically limited retail package liquor store authorization under the procedures the City established.

53. Plaintiff acknowledges that loss of prospective business profits, standing alone, ordinarily constitutes economic injury for which monetary damages may provide an adequate remedy. Her asserted injury, however, extends beyond lost profits. She seeks to vindicate her position in a regulatory selection process governing a limited number of available authorizations.

54. KARS has not yet opened its proposed store. If it commences operations before this litigation is resolved, the contested authorization will have been put into commercial use, and KARS will have established an operating business in reliance upon it. The practical difficulty of restoring the parties to their present positions will thereby inevitably substantially increase.

55. The opening of the store would also complicate the ultimate relief Plaintiff seeks. A judgment determining that the City improperly continued KARS's authorization could require the Court to confront the consequences of an established, operating business, rather than simply determine the validity of an authorization before operations commenced.

56. Plaintiff cannot adequately protect her asserted position by independently opening a competing store. The City's regulatory framework limits the available opportunities, and Plaintiff's claim arises from the allocation of one of those opportunities through the City's lottery process.

57. Monetary damages would not necessarily restore Plaintiff's position in that process or provide the particular regulatory opportunity she contends the City was obligated to afford her. Nor would an award of anticipated profits necessarily compensate for the loss of an opportunity whose ultimate economic value remains uncertain.

58. Plaintiff therefore submits that permitting KARS to commence operations during this litigation threatens injury that cannot adequately be remedied by a later monetary award and risks substantially impairing the effectiveness of any final equitable relief.

59. The requested injunction is directed narrowly at that risk. Plaintiff does not ask the Court to award her KARS's certificate or to authorize her own store pending trial. She asks only that KARS not commence operations under the contested certificate while the Court determines the parties' rights.

**D. The Balance of Harms Favors Preliminary Relief**

60. Plaintiff recognizes that KARS has invested substantial resources in developing its proposed retail package liquor store and that an injunction delaying its opening may impose financial consequences. Those consequences must be weighed against the injury Plaintiff faces if the store commences operations before the legality of KARS's continued authorization is determined.

61. The requested injunction would not require demolition, transfer of property, or surrender of any existing business operations. KARS has not yet opened the store. The relief would temporarily prohibit commencement of operations while preserving the Court's ability to adjudicate the parties' competing claims.

62. KARS undertook its construction and development activities while the City's

extensions and Plaintiff's challenge to the underlying authorization were matters of record. Although KARS's investment is entitled to consideration, expenditures undertaken in reliance upon a contested authorization do not, standing alone, resolve the balance of equities in its favor.

63. Plaintiff, by contrast, cannot independently obtain the particular opportunity she claims under the City's lottery procedures while KARS continues to occupy that position. Allowing KARS to commence operations would further entrench the disputed allocation and increase the practical difficulty of affording meaningful relief if Plaintiff prevails.

64. The balance of harms therefore favors preserving the present condition for the limited period necessary to resolve the parties' rights. Plaintiff submits that the potential injury to her asserted regulatory opportunity outweighs the harm resulting from temporarily postponing the opening of a store that has not yet commenced operations.

**E. The Public Interest Favors Consistent Administration of the City's Licensing Procedures**

65. The public has a substantial interest in the fair, consistent, and lawful administration of municipal licensing requirements. That interest is particularly important where a municipality has established a competitive selection process governing a limited number of commercial opportunities, as happened in this

instance. Public trust depends on impartial administration of established procedures, free of favoritism and open to close scrutiny.

66. The City was entitled to establish its lottery procedures and to prescribe conditions governing the issuance and continued validity of Certificates of Compliance. Having done so, it was obligated to administer those requirements according to applicable law, without arbitrary distinctions among competing applicants.

67. Plaintiff does not seek an injunction preventing the lawful sale of alcoholic beverages generally or interfering with the City's authority to regulate such sales. She seeks only temporary relief concerning one proposed store whose continued authorization is the subject of this litigation.

68. A narrowly tailored injunction would permit the Court to resolve the legality of the challenged decisions before commercial operations begin. That approach serves the public interest in orderly judicial review and the consistent application of municipal regulations.

69. Accordingly, Plaintiff submits that the public-interest factor, considered together with the likelihood of success, threatened irreparable harm, and balance of equities, supports issuance of preliminary relief.

**CONCLUSION AND REQUEST FOR RELIEF**

70. For the foregoing reasons, Plaintiff respectfully requests that this Court grant her Renewed Motion for Preliminary Injunction and, following such hearing as the Court deems appropriate, enter an Order:

(a) Enjoining Defendant KARS, LLC, pending final adjudication of this action or further Order of the Court, from opening or operating a retail package liquor store at 750 Dolly Parton Parkway, Sevierville, Tennessee, pursuant to the Certificate of Compliance issued by the City of Sevierville;

(b) Enjoining Defendant City of Sevierville, to the extent of its lawful authority, from taking further action to authorize or permit commencement of retail package liquor store operations at that location pursuant to the disputed Certificate of Compliance during the same period;

(c) Setting this matter for an expedited hearing in light of the evidence that the proposed store may be ready to open within weeks; and

(d) Granting such other and further relief as the Court deems just and appropriate.

71. Plaintiff further requests that the Court determine appropriate security under Federal Rule of Civil Procedure 65(c), taking into account the nature and scope of the requested relief and the circumstances of the parties. Plaintiff respectfully submits that security in the amount of $10,000 would be appropriate under Rule 65(c), considering the limited scope of the requested injunction, the public interests

implicated, and the fact that KARS has not yet commenced business operations.

Respectfully submitted,

/s/ *Robert F. Croskery*
Robert F. Croskery (Tenn Bar #040689)
Attorney for Plaintiff
Croskery Law Offices
The Highland Towers, No. 2200
Cincinnati, Ohio 45202
(513)232-5297
rcroskery@croskerylaw.com

**CERTIFICATE OF SERVICE**

I hereby confirm that the foregoing document was served upon all parties that have entered an appearance by placing it on the Court's electronic server for service to all parties on the date time-stamped herein; and, in addition, was served upon KARS, LLC's statutory agent by email to rob.pinson@arlaw.com.

Respectfully submitted,

/s/ *Robert F. Croskery*
Robert F. Croskery
Attorney for Plaintiff